**KEVIN H. KONO**, OSB #023528
kevinkono@dwt.com
**CHRIS SWIFT**, OSB #154291
chrisswift@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 SW Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
Telephone:  (503) 241-2300
Facsimile:  (503) 778-5299

**FREDERICK B. BURNSIDE**, OSB #096617
fredburnside@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Telephone:  (206) 757-8016
Facsimile:  (206) 757-7700

      Attorneys for Defendant
      Mission Rock Residential LLC

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **GRETA IVIE; HEIDI JOHNSTONE; KAREN KEENAN; DONA ACTIS; SUSAN PURVINE; COY LAY; JAMES MILLER; SANDRA WILLIAMS; TERI STEVENS; RONALD MASON; ELIZABETH SMITH; SARA SANFORD,**<br><br>          **PLAINTIFFS**,<br><br>  v.<br><br>**MISSION ROCK RESIDENTIAL LLC** dba **WOODSPRING APARTMENTS,**<br><br>          **DEFENDANT**. | Case No. 3:21-cv-01122-SB<br><br>**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>**Oral Argument Requested** |

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

# TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.     STATEMENT OF FACTS ........................................................................................... 3

      A.      Plaintiffs' Woodspring Apartment Lease(s). ........................................................ 3

      B.      Plaintiffs' Allegations. ......................................................................................... 4

      C.      The Low-Income Housing Tax Credit Program. .................................................. 7

      D.      Public Record Notice of Woodspring Apartments' Affordable Housing Status and Its Termination. ................................................................................................ 8

      E.      Plaintiffs' Renewed Leases. ................................................................................. 9

III.    STANDARD AND SCOPE OF REVIEW ...................................................................... 9

IV.     ARGUMENT ............................................................................................................. 11

      A.      The UTPA Does Not Apply to Conduct Covered by ORS chapter 90, Including the Conduct Alleged Here. ................................................................................. 11

            1.      Plaintiffs fail to state a claim based on their "fixed-income" allegations because those allegations challenge the rent that Mission Rock may charge, which is conduct covered by ORS chapter 90. ............................ 11

            2.      Plaintiffs fail to state a claim based on their "seniors" allegations because those allegations involve conduct covered by ORS chapter 90. ............... 14

      B.      Plaintiffs Fail to State a Claim Under Any of the Cited UTPA Provisions. .......... 15

            1.      The Court should dismiss Plaintiffs' claim because it sounds in fraud, but Plaintiffs fail to plead their claim with the specificity required under Rule 9(b). ..................................................................................................... 15

            2.      Plaintiffs fail to state a claim under any of the UTPA sections cited. ...... 20

            3.      Plaintiffs fail to allege they suffered an actual ascertainable loss. .......... 29

V.      CONCLUSION ........................................................................................................ 32

4850-5398-5023v.8 0113870-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................9, 20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................9, 10, 21, 23

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) ...............................................................................18

*Colquitt v. Mfrs. & Traders Tr. Co.*,
   2016 WL 1276095 (D. Or. Apr 1, 2016) ..............................................................21

*Crawford v. Marion Cnty. Election Bd.*,
   553 U.S. 181 (2008)...............................................................................................10

*Fleshman v. Wells Fargo Bank, N.A.*,
   27 F. Supp. 3d 1127 (D. Or. 2014) ......................................................................21

*Havas v. Thornton*,
   609 F.2d 372 (9th Cir. 1979) ...............................................................................10

*In re iPhone 4s Consumer Litig.*,
   637 F. App'x 414 (9th Cir. 2016) ........................................................................10

*Kamm v. ITEX Corp.*,
   568 F.3d 752 (9th Cir. 2009) ...............................................................................29

*Kearney v. Equilon Enters., LLC*,
   65 F. Supp. 3d 1033 (D. Or. 2014) ......................................................................16

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ...................................................................10, 16, 18

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ...........................................................................3, 10

*McKie v. v. Sears Prot. Co.*,
   2011 WL 1587112 (D. Or. Feb. 22, 2011), *report and recommendation
   adopted sub nom. McKie v. Sears Prot. Co.*, 2011 WL 1587103 (D. Or. Apr.
   26, 2011) .......................................................................................................... 17-18

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008) ....................................................................................10

*Oti Kaga v. South Dakota Housing Dev. Authority*,
188 F. Supp. 2d 1148 (D.S.D. 2002), *aff'd,* 342 F.3d 871 (8th Cir. 2003)..............................7

*Parada v. MJ's Labor Servs., Inc.*,
2019 WL 4145224 (D. Or. Aug. 30, 2019)...............................................................................27

*Puri v. Khalsa*,
674 F. App'x 679 (9th Cir. 2017) ..........................................................................................16

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006) ..................................................................................................10

*Shaw v. Hahn*,
56 F.3d 1128 (9th Cir. 1995) ..................................................................................................10

*Silva v. Unique Beverage Co., LLC*,
2017 WL 2642286 (D. Or. June 15, 2017) .............................................................................17

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003). .............................................................................................3, 11

*Vess v. Ciba–Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ..........................................................................................10, 16

*Vinci v. Hyundai Motor Am.*,
2018 WL 6136828 (C. D. Cal. Apr. 10, 2018) .......................................................................16

*Voltage Pictures, LLC v. Revitch*,
2015 WL 404599 (D. Or. Jan. 23, 2015) ...............................................................................17

**State Cases**

*Caldwell v. Pop's Homes, Inc.*,
54 Or. App. 104, 634 P.2d 471 (1981)....................................................................................17

*Carter v. Md. Mgmt. Co.*,
377 Md. 596 (2003) ..................................................................................................................7

*Denson v. Ron Tonkin Gran Turismo, Inc.*,
279 Or. 85, 566 P.2d 1177 (1977) .........................................................................................27

*Horton v. Nelson*,
252 Or. App. 611, 288 P.3d 967 (2012)..............................................................................21, 28

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax
4850-5398-5023v.8 0113870-000002

*Nordbye v. BRCP/GM Ellington*,
    246 Or. App. 209, 266 P.3d 92 (2011)........................................................................7

*Paul v. Providence Health Sys.-Oregon*,
    351 Or. 587, 273 P.3d 106 (2012) .....................................................................29, 30

*Pearson v. Philip Morris, Inc.*,
    358 Or. 88, 361 P.3d 3 (2015) .............................................................17, 21, 31, 32

*Rathgeber v. James Hemenway, Inc.*,
    335 Or. 404, 69 P.3d 710 (2003) ...........................................................................21

*Sanders v. Francis*,
    277 Or. 593, 561 P.2d 1003 (1977) .......................................................................27

*State v. McNally*,
    361 Or. 314, 392 P.3d 721 (2017) .........................................................................27

*Strawn v. Farmers Ins. Co. of Or.*,
    350 Or. 336, 258 P.3d 1199 (2011), *adh'd to on recons*, 350 Or. 521, 256 P.3d
    100 (2011) ................................................................................................................17

*Wieber v. FedEx Ground Package Sys., Inc.*,
    231 Or. App. 469, 220 P.3d 68 (2009)....................................................................17

**Federal Statutes**

28 U.S.C. § 1447(c) ..............................................................................................................29

Internal Revenue Code § 42..............................................................................................7, 8

Internal Revenue Code § 42(h)(6) .........................................................................................7

Internal Revenue Code § 42(l)................................................................................................7

Internal Revenue Code § 42(n)...............................................................................................7

**State Statutes**

2021 Or. Laws Chapter 252 ..................................................................................................12

ORS 90.100(39) .....................................................................................................................12

ORS 90.115.............................................................................................................................12

ORS 90.220(1) ........................................................................................................................12

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

4850-5398-5023v.8 0113870-000002

ORS 90.262 .................................................................................................................12

ORS 90.323 .................................................................................................................12

ORS 90.323(3)(c) .........................................................................................................12

ORS 90.323(6) .............................................................................................................12

ORS 90.323(7)(b) .........................................................................................................12

ORS 90.360 .................................................................................................................12

ORS 90.390 .................................................................................................................15

ORS 90.390(1) .............................................................................................................14

ORS 90.417 .................................................................................................................12

ORS 90.417(1) .............................................................................................................12

ORS 646.605(6)(b)(A) ..................................................................................................11

ORS 646.605(10) .........................................................................................................21

ORS 646.608 ....................................................................................................11, 21, 30

ORS 646.608(1)(i) ..................................................................................................27, 28

ORS 646.608(1)(b) ...........................................................................................15, 24, 25

ORS 646.608(1)(e) ...........................................................................................15, 25, 26

ORS 646.608(1)(g) ...........................................................................................15, 26, 27

ORS 646.608(1)(t) .................................................................................................15, 29

ORS 646.638(1) .....................................................................................................21, 30

ORS 659A.145 .............................................................................................................14

ORS 659A.421 ...................................................................................................14, 15, 25

ORS 659A.421(7)(a) .....................................................................................................14

ORS 659A.421(7)(b) .........................................................................................15, 23, 24, 25

ORS 659A.421(7)(b)(B) ................................................................................................14

4850-5398-5023v.8 0113870-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

ORS 659A.421(7)(b)(C) ................................................................................ 14, 20, 25

ORS 659A.421(7)(b)(C)(i) ....................................................................................... 24

ORS chapter 90 ........................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 8 ................................................................................................. 1, 9

Fed. R. Civ. P. 8(a)(2) ............................................................................................. 9

Fed. R. Civ. P. 9 ................................................................................................... 10

Fed. R. Civ. P. 9(b) ...................................................................................... *passim*

Fed. R. Civ. P. 12 ................................................................................................... 9

Fed. R. Civ. P. 12(b)(6) ........................................................................... 1, 9, 10, 20

Fed. R. Civ. P. 23 ................................................................................................. 32

LR 7-1 ..................................................................................................................... 1

**Regulations**

Treas. Reg. § 1.42–1 T ........................................................................................... 7

Treas. Reg. § 1.42–5 ............................................................................................... 7

**Other Authorities**

Congressional Research Service, *An Introduction to the Low-Income Housing Tax Credit* (RS22389) ........................................................................................... 7

*Webster's Third New Int'l Dictionary* (unabridged ed. 1993) ......................... 26, 27, 29

4850-5398-5023v.8 0113870-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

## LR 7-1 CERTIFICATE OF COMPLIANCE

Defendant Mission Rock Residential LLC's ("Mission Rock") counsel conferred by telephone with Plaintiffs' counsel regarding this motion, but the parties did not reach agreement.

## MOTION

Mission Rock respectfully moves for an order dismissing with prejudice Plaintiffs' Second Amended Complaint ("SAC" or "Complaint") under Rules 12(b)(6), 8, and 9(b) for failure to state a claim. This motion is supported by the following memorandum of law and the concurrently filed Request for Judicial Notice ("RJN") and attached Exhibits.

## MEMORANDUM OF LAW

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Mission Rock is a property management company that manages the Woodspring Apartments, where Plaintiffs live. Woodspring Apartments has since 1991 participated in a federal affordable housing statutory scheme allowing for tax credits (that went to the original developer—not Mission Rock or the current ownership) in return for keeping rent at below market rates for thirty years. SAC ¶ 12. Plaintiffs do ***not*** allege Mission Rock failed to comply with the federal affordable housing statutory scheme. Indeed, the applicability of that statutory scheme—and the expiration of the affordable housing status effective January 1, 2021—have been a matter of public record for decades. And the January 2021 letter regarding expiration of the federal program—on which Plaintiffs rely for claimed notice—provides that Mission Rock cannot (and will not) raise the rent for then-existing tenants for three more years (i.e., at the expiration of the federal program), just as the program requires. *Id.* ¶ 26. At bottom, Plaintiffs' lawsuit challenges the federal statutory policy that contemplates termination of affordable housing restrictions under the program at issue after thirty years (with a three-year tail). Their claimed Oregon Unlawful Trade Practices Act ("UTPA") violations are not the proper vehicle for that challenge. Mission Rock is simply complying with federal law.

Page 1 - DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

Separately—although Plaintiffs conflate the issues with their references to "fixed-income seniors"—Plaintiffs allege Mission Rock mispresented that every resident would be a "senior." But Plaintiffs do not allege Mission Rock failed to meet the requirements for "housing for older persons." Again, Mission Rock is complying with the applicable law.

Even though the Woodspring Apartments presently qualifies as "housing for older persons" under federal and state law, Plaintiffs allege Mission Rock fraudulently induced them to enter into *one-year* leases in two different ways. First, Plaintiffs allege Mission Rock failed to tell them far enough in advance that rents could someday increase to market rates—in some instances, Mission Rock would have been required to tell them *eight years* before, and the *three years'* advance notice that was admittedly provided and that the law requires is equally insufficient. And second, Plaintiffs allege fraudulent inducement by renting a small number of apartments to people younger than 55 even though there was a sign stating "seniors-only," a sign stating "a 55 and Better Community," and an undated online advertisement referring to "senior apartments." SAC ¶¶ 3, 11, 17. Plaintiffs attempt to manufacture a new kind of hybrid "fixed-income senior" housing category and allege Mission Rock violated various UTPA provisions based on their own, newly minted protected class. They claim that Mission Rock improperly advertised Woodspring Apartments to "fixed-income seniors" despite knowing that "the property would not continue to be an apartment complex exclusively for fixed-income seniors," was not "a certified complex for fixed-income seniors" or "exclusively for fixed-income seniors," and that "rents would increase substantially and non-seniors would be solicited to live" there.[1] *Id.* ¶¶ 278, 30-35.

---

[1] Plaintiffs replaced nearly every use of the term "low-income" in the original complaint with "fixed-income" in the SAC. The significance of this alteration is unclear, especially since Paragraph 13 of the SAC treats the terms as synonymous. *See* SAC ¶ 13 (asserting letter "expressly represented Woodspring Apartments was…a fixed-income property," where the letter actually stated, "We are still a low-income property"). Regardless, Plaintiffs fail to define "fixed-income property" or identify a single representation using that term.

Page 2 - DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Plaintiffs' UTPA claim fails because:

**First**, the UTPA does not apply to conduct covered by the Oregon Residential Landlord Tenant Act, including the alleged rent and age restriction policies on which Plaintiffs base their claims.  Mission Rock thus could not have violated the UTPA.

**Second**, even if the UTPA did apply, Plaintiffs fail to allege facts with sufficient particularity to state a claim under Rule 9(b)'s heightened pleading standard.

**Third**, Plaintiffs fail to identify representations or omissions that were actually false, much less prohibited by the specific UTPA provisions on which Plaintiffs' claim relies.

## II.    STATEMENT OF FACTS

### A.    Plaintiffs' Woodspring Apartment Lease(s).

Plaintiffs allege that between 2015 and 2020 they each entered residential property leases to rent units at the Woodspring Apartments.  SAC ¶¶ 14-25.[2]  Each Plaintiff entered a one-year lease in 2020, nine of the Plaintiffs have entered new one-year leases in 2021, and one has entered a month-to-month rental agreement.[3]  *See, e.g.*, Ex. 1.

Nothing in these leases states that occupancy is limited to those aged 55 or older.  *Id.* The leases also contain an integration clause, confirming that Woodspring Apartments is making no representations outside the lease: "**ENTIRE AGREEMENT.**  This Rental Agreement, together with all Addendums, constitutes the entire agreement of the parties and shall supersede and replace all prior agreements, representations, and/or warranties."  *Id.* at 11, § 66.  Likewise,

---

[2] When deciding a motion to dismiss, the Court may consider documents on which the plaintiff's complaint necessarily relies without converting the motion to dismiss into a summary judgment motion.  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Plaintiffs' claim arises from their Woodspring Apartments leases.  Rather than burden the Court by attaching copies of every lengthy lease to this motion, Mission Rock includes an exemplar as Exhibit 1.

[3] Dona Actis began a month-to-month tenancy starting on October 1, 2021.  Sandra Williams' and James Miller's current leases will expire on December 31, 2021.  Coy Lay moved out on or about November 15, 2021.

Page 3 - DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

the leases *expressly* contemplate future changes to rental conditions, and have a provision

explaining how such changes may occur:

> **14. RENT INCREASES AND CHANGES TO RENTAL AGREEMENT.** If
> this Rental Agreement consists of a fixed term lease, then no rent increases shall
> occur before the initial lease term expires, without the express written consent of
> Resident. … ***Nothing contained herein shall prohibit Landlord from serving
> any notice of rent increase or rule change during a lease term, so long as said
> rent increase or rule change only takes effect after expiration of the lease term.
> Nothing set forth herein shall limit Landlord's right to increase rent in
> accordance with any applicable law***.

Ex. 1 at 4, § 14 (emphasis added).  The leases notified Plaintiffs of potential changes in rent.

The leases also have an addendum that confirms that Woodspring Apartments was

"participating in a government regulated affordable housing program." *Id.* at 13.  The addendum

requires disclosure of renter income status so as to allow participation in the affordable housing

program.  *Id.*  This addendum expressly contemplates that some renters are students and requires

that the renter disclose to Woodspring Apartments any change in student status.[4]  *Id.*

## B.    Plaintiffs' Allegations.

Each Plaintiff alleges that, at various times ranging from October 2015 to July 2020,

Mission Rock "specifically represented…both in writing and verbally [sic] that Woodspring

Apartments had the quality and style of being an apartment complex community exclusively for

seniors living on a fixed income" or "for fixed-income seniors."  SAC ¶¶ 14-25.  Plaintiffs do not

(and cannot) identify any misrepresentations regarding rental rates (or "fixed-income" status).

As to senior status, the only specific representation they reference is "a sign…stating 'seniors-

only' and '55 or better' on the Woodspring Apartments premises."  *Id.*  The sign pictured in the

SAC, however, does not match this allegation—it says only the name of the apartments and "A

55 and Better Community."  *Id.* ¶ 3.  Plaintiffs also include an image purportedly of an online

---

[4] The leases also contemplate that some residents will be under 18 years old, because the leases
contain an addendum for Community Policies, Rules, and Release, which contains a release for
injuries to family members under 18 years old.  *See* Lease Addendum for Community Policies,
Rules, and Release, Ex. 1 at 37 (Waiver, Release, Discharge, and Indemnity provision).

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

advertisement and refer generally to "Defendant's website," *id.* ¶¶ 11-12, but **no plaintiff alleges they ever saw or relied on the alleged, undated online advertisement or website**.

Plaintiffs allege that "[i]n or around August of 2015," Mission Rock represented in a letter that "Woodspring Apartments was and would remain a fixed-income property." *Id.* ¶ 13. The letter included in the Complaint actually says: "We are still a low-income property which means the maximum rents are determined by the state, not the management company or the owner (or the property manager). ***You will continue to have incremental increases each year as the state allows***, just as it has been in the past." *Id.* (emphasis added). ***No Plaintiff alleges ever seeing or relying on the letter***, which predates every Plaintiff's tenancy, and Plaintiffs do not and cannot allege this representation was false (and, indeed, the state allows rent increases consistent with the expiration of the federal housing program, as has occurred here). Further, implicit in Plaintiffs' allegation based on the 2015 letter is the notion that the letter somehow guaranteed that rents at Woodspring Apartments would *never* increase to market rates, even though the letter says no such thing.

Plaintiffs further allege that on January 1, 2021, a notice was posted on Plaintiffs' doors informing them "that Woodspring Apartments was required to be fixed-income housing as part of its original development, and that in exchange for tax credits under a federal program, the owners of Woodspring Apartments had agreed to keep the apartment complex rents below market rate for 30 years." SAC ¶ 27. As that notice stated, the affordable status under that program expired on December 31, 2020 (but current residents would continue with three more years of affordable housing status). SAC ¶ 26. Plaintiffs do not allege the expiration of this recorded rent restriction agreement has had any impact on their rent, but they do assert that Mission Rock "intentionally omitted this information" that the affordable status was expiring and affordable status would change several years in the future—i.e., after their leases expired—when it entered into one-year leases with Plaintiffs. SAC ¶ 27. *Compare* Exhibit 1, at 4, § 14 ("Nothing contained herein shall prohibit Landlord from serving any notice of rent increase or

4850-5398-5023v.8 0113870-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

rule change during a lease term, so long as said rent increase or rule change only takes effect after expiration of the lease term.").

Plaintiffs further allege that Mission Rock failed to disclose that "non-seniors would be solicited to live at Woodspring Apartments." SAC ¶ 35. They claim that as a result of Mission Rock's alleged misrepresentations and omissions, "plaintiffs each suffered ascertainable losses caused by entering into a residential property lease that they otherwise wouldn't have entered, had they known the truth." *Id.* ¶ 27. Specifically, Plaintiffs allege they suffered "refund of the purchase price ascertainable loss in the amount that they paid for their residential property lease" and unspecified "diminished value" ascertainable loss because they say they "would not have chosen to move into Woodspring Apartments and thus would not have paid for their residential property lease at Woodspring Apartments" but for the alleged misrepresentations. *Id.* ¶¶ 31-35. Despite their conclusory allegations, however, Plaintiffs do not allege that they have ever received anything different than affordable housing status and 55-and-over living within the statutory requirements of both. Nor do Plaintiffs allege that they could have rented different apartments with the features they seek at the same or lower price. Instead, Plaintiffs allege they:

> paid for a fixed-income residential property lease and tenancy that they believed would be within their limited budget for the remainder of their lives but instead ended up with a less valuable residential lease and tenancy because they will now have to either pay more for their future tenancy at Woodspring Apartments or find another tenancy and pay moving expenses, if they can even find another available and suitable senior tenancy within their budget in the current market.

*Id.* ¶¶ 31-35. Plaintiffs provide no support for their attempt to tie an alleged promise of life-long rents to their subjective beliefs as to "affordability" or their undisclosed (and varying) "budgets."

Plaintiffs seek unspecified damages. *Id.* ¶ 36. Although Plaintiffs no longer ask for an injunction, they predicate their unspecified damages on the idea that Mission Rock may ***never*** raise their rent without paying Plaintiffs those future amounts back in the form of "refund of the purchase price" or "diminished value." Plaintiffs also seek attorneys' fees and costs. *Id.* ¶ 30.

4850-5398-5023v.8 0113870-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main ⋅ (503) 778-5299 fax

C.      The Low-Income Housing Tax Credit Program.

Woodspring Apartments has provided affordable housing to low-income tenants for thirty years through the Low-Income Housing Tax Credit ("LIHTC") program.  Recognizing that government subsidies were necessary for building and maintaining residential rental properties at below-market rental rates, Congress enacted the LIHTC program under the Tax Reform Act of 1986.  *Carter v. Md. Mgmt. Co.*, 377 Md. 596 (2003); *see also* Mark P. Keightly, Congressional Research Service, *An Introduction to the Low-Income Housing Tax Credit* (RS22389) (Jan. 26, 2021) ("CRS Report") at 1.[5]  The LIHTC program is the largest affordable housing program in the country, providing more than $10.9 billion in subsidies annually.  CRS Report at 1.

As the Oregon Court of Appeals has explained, the "purpose of the LIHTC program is to encourage the development of low-income rental housing through the allocation of tax credits pursuant to section 42 of the Internal Revenue Code (IRC)."  *Nordbye v. BRCP/GM Ellington*, 246 Or. App. 209, 212-13, 266 P.3d 92 (2011) (citing *Oti Kaga v. South Dakota Housing Dev. Authority*, 188 F. Supp. 2d 1148, 1152 (D.S.D. 2002), *aff'd,* 342 F.3d 871 (8th Cir. 2003)). Under the LIHTC program, the federal government allocates transferable tax credits to state governments, who then award those tax credits to successful applicants and monitor compliance with program requirements.  Treas. Reg. § 1.42–1 T; Treas. Reg. § 1.42–5; IRC § 42(l), (n).  The applicants use the credits to finance the construction of new affordable housing projects, either by directly offsetting the new development's income tax liability or, more frequently, by transferring the tax credits to investors.  CRS Report at 5-6.  In exchange for ten years of tax credits, the developers enter a binding agreement to cap rent at below-market levels for thirty years (and an additional three years for existing tenants).  IRC § 42(h)(6).  Although Woodspring Apartments has fully complied with the LIHTC program requirements for this thirty-year period, Plaintiffs now seek to extend those requirements permanently under the guise of a UTPA claim.

---

[5] The CRS Report is available at: https://sgp.fas.org/crs/misc/RS22389.pdf

4850-5398-5023v.8 0113870-000002
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

**D.     Public Record Notice of Woodspring Apartments' Affordable Housing Status and Its Termination.**

As required by the LIHTC program, the original owner of the Woodspring Apartments recorded a Declaration of Land Use Restrictive Covenants for Low-Income Housing Tax Credits Project No. OR90-3176 (land use restrictive agreement or "LURA") in 1991.[6]  RJN, Ex. 1. Recorded in Washington County as Document Number 91053617, the LURA put the world on notice that Woodspring Apartments would rent 100% of the units "to individuals or families whose Income is 60% or less of the area family adjusted median gross income" and that the owner covenanted "to maintain IRC Section 42 rent and income restrictions" for the time period stated in the Declaration.  *Id.* at 1.  The LURA plainly states that the LURA's restriction "shall commence with the first day in the Project period on which any building which is part of the Project is placed in service ***and shall end on the date which is 15 years after the close of the compliance period***."  *Id.* at 6 (emphasis added).  In 2011, the State of Oregon acting by and through its Housing and Community Services Department executed a 2011 "Low-Income Housing Tax Credit Program Consent to Assignment, Transfer, Assumption and Modification Agreement; Declaration of Restrictive Covenants and Equitable Servitudes" in which the State consented to the assignment of the LURA.  RJN, Ex. 2.  That consent, recorded in Washington County as Document Number 2011-086850, identified the specific date when the LIHTC program would expire, stating the date no fewer than three times:

> Successor Owner and New Obligor intend, declare, and covenant that during the term of the Tax Credit Documents that the covenants, reservations, restrictions and equitable servitudes set forth in the Tax Credit Documents regulating and restricting the use, occupancy and transfer of the Project (1) shall be and are, until ***January 1, 2021***, covenants running with the real property of the Project and do further constitute equitable servitudes with respect to the real property in favor of the Department and any tenant of this Project or Property, do encumber the Project until ***January 1, 2021***, are binding upon these Successor Owner's successors in title and all subsequent owners and operators of the Project, (2) are not merely personal covenants of the Successor Owner and New Obligor, (3) shall bind the New Obligor and the New Obligor's successors and assigns until ***January 1, 2021***, and (4) shall inure to the benefit of the Department and any tenant of the Project, subject to subsequent agreement in writing signed by duly

---

[6] These recorded documents are attached to the concurrently filed Request for Judicial Notice.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

authorized representatives of the Department and New Obligor or its then current
successor or assign.

*Id.* at 5 (emphasis added).  The State consented to two more LURA assignments, both recorded
and both referencing the original LURA and the 2011 Consent.  RJN, Exs. 3-4.  That the
affordable housing status would expire in 2021 was a matter of public notice of which Plaintiffs
had constructive notice for three decades, and nothing in the statutory scheme required assignees
of the LURA to provide additional notice of the eventual termination of the LURA.

### E.    Plaintiffs' Renewed Leases.

Each Plaintiff's lease, by its terms, was for a period of one year.  Plaintiffs allege they
intended to renew their annual leases at Woodspring Apartments to spend their "twilight years"
there and seek damages premised on the idea that future lease terms that differ from current
terms give rise to ascertainable loss.  SAC ¶¶ 14-25, 31-35.  Plaintiffs allege they knew all
relevant facts by no later than January 1, 2021.  *Id.* ¶ 28.  Despite having full knowledge of the
Complaint's allegations, nine of the twelve Plaintiffs have entered new rental agreements after
January 1, 2021, containing all of the provisions discussed above.  *See, e.g.,* Ex. 1 at 1.

### III.    STANDARD AND SCOPE OF REVIEW

**Rules 8 & 12.**  Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to provide "'a
short and plain statement of the claim showing that [she] is entitled to relief,' in order to 'give
the defendant[s] fair notice of what the…claim is and the grounds upon which it rests.'"  *Bell Atl.*
*Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must contain sufficient factual
allegations, which, accepted as true, state a claim for relief "that is plausible on its face."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Where the
plaintiff fails to "nudge[] [her] claims across the line from conceivable to plausible, [her]
complaint must be dismissed."  *Twombly*, 550 U.S. at 570.  The Court should dismiss under Rule
12(b)(6) claims that fail to meet this standard.

This standard requires plaintiffs to provide the grounds of entitlement to relief; "labels
and conclusions" and "formulaic recitations of the elements of a cause of action will not do."

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax
4850-5398-5023v.8 0113870-000002

*Twombly*, 550 U.S. at 555.  And "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678-79.  Legal conclusions may establish the complaint's basic framework, but "they must be supported by factual allegations."  *Id.* at 679.  Finally, the court may dismiss with prejudice where amendment is futile.  *Havas v. Thornton*, 609 F.2d 372, 376 (9th Cir. 1979).

**Rule 9.**  Where plaintiffs assert claims "grounded in fraud," they must satisfy both the plausibility standard and the heightened pleading requirement of Rule 9(b).  *In re iPhone 4s Consumer Litig.*, 637 F. App'x 414, 415-16 (9th Cir. 2016) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1102-05 (9th Cir. 2003)).  "In pleading fraud or misrepresentation a plaintiff 'must state with particularity the circumstances constituting fraud or mistake.'"  *Id.* at 415 (quoting Rule 9(b)).  "To meet this standard a plaintiff must allege the 'who, what, where, when, and how' of the misconduct and explain what is false or misleading about the statement made and why it is false."  *Id.*

**Judicial Notice and Incorporation by Reference.**  Additionally, the Court may consider and take judicial notice of prior court filings and official government and publicly recorded documents on a Rule 12(b)(6) motion without converting the motion into one for summary judgment.  *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008) (judicially noticing company's "reported stock price history and other publicly available financial documents"); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (judicially noticing documents filed in a different case); *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 199 n.18 (2008) (judicially noticing facts from state website); *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995) (on Rule 12(b)(6) motion, the "court may look beyond the plaintiff's complaint to matters of public record.").  As noted in footnote two above, the Court may also consider documents on which the complaint necessarily relies, *Knievel*, 393 F.3d at 1076, or "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice," *Ritchie*, 342 F.3d at 908.

4850-5398-5023v.8 0113870-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

## IV.    ARGUMENT

### A.    The UTPA Does Not Apply to Conduct Covered by ORS chapter 90, Including the Conduct Alleged Here.

The Court should dismiss Plaintiffs' Complaint because the UTPA expressly excludes conduct covered by ORS chapter 90, the Oregon Residential Landlord Tenant Act ("ORLTA"). Here, all conduct Plaintiffs complain of falls under the ORLTA.

The UTPA prohibits "unlawful practices" in certain transactions involving "real estate, goods or services." *See* ORS 646.608 (enumerating unlawful practices). But the definition of "real estate" expressly excludes "conduct covered by ORS chapter 90 [the ORLTA]." ORS 646.605(6)(b)(A). Yet, Plaintiffs base their claim on alleged conduct tied to the terms of their leases, the rent Mission Rock allegedly plans to charge, and the type of tenant to whom Mission Rock may rent apartments. The ORLTA covers these landlord-tenant issues, which fall outside the scope of "real estate" within the meaning of the UTPA—and thus outside the UTPA's scope.

### 1.    Plaintiffs fail to state a claim based on their "fixed-income" allegations because those allegations challenge the rent that Mission Rock may charge, which is conduct covered by ORS chapter 90.

The gravamen of Plaintiffs' fixed-income-seniors claim is that Mission Rock did not disclose that it might one day raise rents to market rate. *See, e.g.*, SAC ¶ 35 (alleging Mission Rock violated by UTPA by not disclosing the alleged fact that "rents would increase substantially" in the future). Plaintiffs seek to impose a duty under the UTPA for property managers to provide notice under one-year leases that the property manager might raise rent in later years. Leaving aside that the leases *do* disclose this possibility—*see, e.g.*, Exhibit 1, at 4, § 14—Plaintiffs forget that Mission Rock also gave them three-years' advance written notice that beginning in 2024 the law would permit Mission Rock to increase rents at Woodspring beyond what is permitted annually by Oregon Housing and Community Services due to the expiration of the 30-year LIHTC program restrictions. *See supra* Section II.C; SAC ¶ 26.

But even if Mission Rock had not made these multiple disclosures, their UTPA claim fails because regulating rent and imposing rent-disclosure obligations on landlords and property

Page 11 - DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

managers are the province of the ORLTA, not the UTPA—which is why the legislature

expressly excluded conduct covered by the ORLTA from the scope of the UTPA.

ORS chapter 90 governs the rent and rental-agreement relationship between a residential

tenant and the landlord (or its agent). ORS chapter 90 "applies to, regulates and determines

rights, obligations and remedies under a rental agreement, wherever made, for a dwelling unit

located within this state." ORS 90.115. The definition of "rental agreement" under the ORLTA

expressly includes a lease. ORS 90.100(39) ("'Rental agreement' means all agreements, written

or oral, and valid rules and regulations adopted under ORS 90.262 or 90.510 (6) embodying the

terms and conditions concerning the use and occupancy of a dwelling unit and premises. *'Rental*

*agreement' includes a lease.*" (emphasis added)). Other provisions of ORS chapter 90 address

rental agreements and rent even more specifically. Under ORS 90.220(1), a "landlord and a

tenant may include in a rental agreement terms and conditions not prohibited by this chapter or

other rule of law including rent, term of the agreement and other provisions governing the rights

and obligations of the parties." ORS 90.323 sets limits on rent increases.[7] And ORS 90.360

addresses a tenant's remedies for a landlord's material noncompliance with the rental agreement.

ORS 90.417 addresses a tenant's duty regarding rent payments. *See, e.g.*, ORS 90.417(1) ("A

tenant's duty regarding rent payments is to tender to the landlord an offer of the full amount of

rent owed within the time allowed by law and by the rental agreement provisions regarding

payment. A landlord may refuse to accept a rent tender that is for less than the full amount of

rent owed or that is untimely.").

Plaintiffs base their claim on allegations relating to the "residential property lease at the

Woodspring Apartment," which they allege Mission Rock "advertised, negotiated, and sold."

SAC ¶¶ 14-25. They claim Mission Rock "intentionally omitted…information in order to induce

---

[7] All relevant provisions in ORS 90.323 apply here—and thus the UTPA's exclusion *also*
applies—notwithstanding participation in a federal, state, or local reduced rent or affordable
housing program. *See* ORS 90.323(7)(b) (excluding affordable housing from only ORS
90.323(3)(c) (capping rent increase amount) and ORS 90.323(6) (limiting rent increases after a
termination without cause)); 2021 Or. Laws Ch. 252 (H.B. No. 3113) (revised version of same).

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

them to enter residential property leases at Woodspring Apartments." *Id.* ¶ 27.  Plaintiffs allege that "[t]he residential property leases defendant advertised, negotiated, and serviced to plaintiffs were obtained primarily for plaintiffs' personal, family or household purposes." *Id.* ¶ 9. Plaintiffs' claimed violations of the UTPA expressly rest on alleged representations about "plaintiffs' residential property lease and tenancy at the Woodspring Apartments," *id.* ¶¶ 31, 32, 35, on the "diminished value" of their lease "because they paid for a fixed-income residential property lease and tenancy that they believed would be within their limited budget for the remainder of their lives but instead ended up with a less valuable residential lease and tenancy because they will now have to either pay more for their future tenancy at Woodspring Apartments or find another tenancy and pay moving expenses based on the rent that would be charged," *id.* ¶¶ 31, 32, 33, 35, or on allegations they are entitled to the "refund of the purchase price…in the amount that they paid for their residential property lease"—that is, their rent, *id.* ¶¶ 31, 32, 33, 34, 35.  Plaintiffs' Complaint rests on the lease relationship, the rent under it, and Plaintiffs' rights and expectations with respect to their tenancy—all matters falling squarely under ORS chapter 90.

The leases themselves—which the Complaint incorporates by reference—further show Plaintiffs' claims rest on conduct covered by ORS chapter 90.  The leases (of course) address rent.  *See* Ex. 1 at 1, § 6.  The leases also have an addendum for "Units Participating in Government Regulated Affordable Housing Programs," which addresses certain rights, including rights addressing rent.  *See, e.g.*, Ex. 1 at 13, § 8 (landlord has no lien for unpaid rents).

Because ORS chapter 90 covers conduct relating to rent, rent limits, rent increases, and rental agreements, the conduct alleged in the Complaint relating to the leases, "low-income" or "fixed-income" housing, and rent limits falls within "conduct covered by ORS chapter 90" and is therefore excluded from the UTPA's definition of real estate.  Plaintiffs fail to state any UTPA claim based on their "low-income" or "fixed-income" allegations because those allegations fall under ORS chapter 90, which is excluded from the UTPA's purview.

Page 13 - DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

## 2. Plaintiffs fail to state a claim based on their "seniors" allegations because those allegations involve conduct covered by ORS chapter 90.

Plaintiffs' "senior living" and "55 or better" allegations similarly fail to state any UTPA claim because they, too, attempt to impose liability for conduct covered by ORS chapter 90, which the UTPA expressly excludes. Plaintiffs allege Mission Rock advertised the apartments as "seniors-only" and "55 or better." SAC ¶ 14. They claim these advertisements violated the UTPA because the apartments "would not in fact be exclusively for fixed-income seniors." *Id.* ¶¶ 32, 33, 34, 35. This conduct is "covered by ORS chapter 90" and outside the UTPA's scope.

Under ORS 90.390(1), a "landlord may not discriminate against a tenant in violation of local, state or federal law, including ORS 659A.145 and 659A.421." ORS 659A.421, in turn, prohibits discrimination on the basis of race, color, religion, sex, sexual orientation, national origin, marital status, familial status, or source of income. The statutory scheme specifically provides, however, that it "does not apply to familial status distinction, discrimination or restriction with respect to housing for older persons." ORS 659A.421(7)(a). "Housing for older persons" means, among other things, housing:

> (C) Intended and operated for occupancy by *at least one person* 55 years of age or older per unit. Housing qualifies as housing for older persons under this subparagraph if:
>
> (i) At least *80 percent* of the dwellings are occupied by *at least one person 55 years of age or older* per unit; and
>
> (ii) Policies and procedures that demonstrate an intent by the owner or manager to provide housing for persons 55 years of age or older are published and adhered to.

ORS 659A.421(7)(b)(C) (emphasis added). Thus, providing "housing for older persons"—*i.e.*, the "55 or better" housing Plaintiffs allege—is permitted only because it is covered by ORS chapter 90 (*i.e.*, ORS 90.390 by reference to ORS 659A.421).[8] Once again, Plaintiffs attempt to use the UTPA to regulate conduct the ORLTA controls. Because ORS chapter 90—and not the

---

[8] Under ORS 659A.421(7)(b)(B), "housing for older persons" also includes housing "[i]ntended for, and solely occupied by, persons 62 years of age or older." Thus, although the age cutoff Plaintiffs allege differs, ORS chapter 90 covers housing that is "exclusively" for seniors just as it covers housing for 55 and over seniors.

Page 14 - DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

4850-5398-5023v.8 0113870-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

UTPA—covers Plaintiffs' "seniors only" and "55 or better" allegations, Plaintiffs cannot state a claim under the UTPA. The UTPA does not cover (and in fact expressly excludes) "conduct covered by ORS chapter 90." Plaintiffs allege only conduct covered by ORS chapter 90. Plaintiffs thus fail to state any UTPA claim, and the Court should dismiss their Complaint.

**B.      Plaintiffs Fail to State a Claim Under Any of the Cited UTPA Provisions.**

Plaintiffs fail to state a claim under any of the UTPA provisions they cite.

First, their UTPA claim sounds in fraud, yet Plaintiffs fail to allege any UTPA violations with the specificity required under Rule 9(b).

Second, Plaintiffs' counts under ORS 646.608(1)(b) and (e) fail because they cannot identify any false representations that violate those provisions. Plaintiffs' counts under ORS 646.608(1)(g), (i), and (t) fail because those provisions do not apply to the alleged representations on which Plaintiffs' case depends.

Third, Plaintiffs fail to allege actual ascertainable loss, which is an essential element of their UTPA claims.

Thus, each of Plaintiffs' counts fails, and the Court should dismiss Plaintiffs' claim.

**1.      The Court should dismiss Plaintiffs' claim because it sounds in fraud, but Plaintiffs fail to plead their claim with the specificity required under Rule 9(b).**

Despite asserting a UTPA claim that sounds in fraud, Plaintiffs fail to plead their allegations with the particularity Rule 9(b) requires. The Court therefore should dismiss their claim. *See Kearns*, 567 F.3d at 1127 (affirming dismissal for failure to comply with Rule 9(b)).

**a.      Plaintiffs' claim sounds in fraud because it alleges a course of fraudulent conduct.**

Plaintiffs base their UTPA claim on the theory that Mission Rock induced them to enter a lease in reliance on Mission Rock's alleged fraudulent representations and omissions. This claim sounds in fraud and is therefore subject to Rule 9(b).

Page 15 - DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Regardless how a claim is denominated, all claims and averments that sound in fraud must comply with Rule 9(b)'s heightened pleading standard. *See, e.g.*, *Kearney v. Equilon Enters., LLC*, 65 F. Supp. 3d 1033, 1041-42 (D. Or. 2014) (holding Rule 9(b) applied to UTPA claims); *Kearns*, 567 F.3d at 1125 (holding Rule 9(b) applied to claims under California's Unfair Competition Law and Consumer Legal Remedies Act). Even where "fraud is not a necessary element of a claim," claims "sound in fraud" where plaintiffs allege "a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim." *Kearns*, 567 F3d at 1125; *see also Puri v. Khalsa*, 674 F. App'x 679, 690 (9th Cir. 2017) (holding unjust enrichment claim based on fraud allegations lacked specificity required by Rule 9(b)). Further, even if an entire claim does not sound in fraud, individual "allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)," and, if they fail to do so, the "allegations should be disregarded or stripped from the claim." *Vess*, 317 F.3d at 1105 (internal citations and quotation marks omitted). To determine whether a claim or allegation is based on fraud, courts look to whether the complaint pleads the "elements of fraud" under state law. *Kearns*, 567 F.3d at 1125. In Oregon,

> [t]he essential elements of a common-law fraud claim are: [1] the defendant made a material misrepresentation that was false; [2] the defendant did so knowing that the representation was false; [3] the defendant intended the plaintiff to rely on the misrepresentation; [4] the plaintiff justifiably relied on the misrepresentation; and [5] the plaintiff was damaged as a result of that reliance.

*Strawn v. Farmers Ins. Co. of Or.*, 350 Or. 336, 351-52, 258 P.3d 1199 (2011), *adh'd to on recons*, 350 Or. 521, 256 P.3d 100 (2011). "Silence or nondisclosure can be the basis for a fraud action," in addition to affirmative false representations. *Wieber v. FedEx Ground Package Sys., Inc.*, 231 Or. App. 469, 484, 220 P.3d 68 (2009), (quoting *Caldwell v. Pop's Homes, Inc.*, 54 Or. App. 104, 113, 634 P.2d 471 (1981)). Where a UTPA claim includes allegations addressing each of these elements, the claim sounds in fraud. *See, e.g.*, *Kearney*, 65 F. Supp. 3d at 1042-43 (comparing allegations to fraud elements and concluding Rule 9(b) applied to UTPA claim); *Vinci v. Hyundai Motor Am.*, 2018 WL 6136828, *12 (C. D. Cal. Apr. 10, 2018) (holding Rule

Page 16 - DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

9(b) applied to fraudulent nondisclosure UTPA claim); *Voltage Pictures, LLC v. Revitch*, 2015 WL 404599, *3 (D. Or. Jan. 23, 2015) (holding Rule 9(b) applied to UTPA claim).

Here, Plaintiffs allege each of these elements—albeit in vague and conclusory fashion. First, Plaintiffs allege Mission Rock both affirmatively misrepresented and failed to disclose certain facts. *See, e.g.*, SAC ¶¶ 14-25 (copying and pasting identical descriptions of representations allegedly made to each of the thirteen Plaintiffs over five-year period). Second, Plaintiffs allege Mission Rock "knew that the property would not continue to be an apartment complex exclusively for fixed-income seniors, and defendant intentionally omitted this information from plaintiff and the class members." *Id.* ¶ 27. Third, Plaintiffs allege Mission Rock misrepresented and omitted this information "to induce [Plaintiffs] to enter into a residential property lease at Woodspring Apartments." *Id.* Fourth, each Plaintiff alleges that he or she entered the initial lease "in reliance on defendant's affirmative representations and omissions," *id.* ¶¶ 14-25, and "would not have chosen to move into Woodspring Apartments and thus would not have paid for their residential property lease at Woodspring Apartments" but for those alleged misrepresentations, *id.* ¶¶ 31-35. *See also id.* ¶ 29 ("If it was [sic] not for defendant's misrepresentations and omission as alleged in this complaint, plaintiffs would not have paid to enter a residential lease at Woodspring Apartments and would not have moved into Woodspring Apartments[.]").[9] Fifth, Plaintiffs allege they suffered "ascertainable losses" as a result of their alleged reliance. *Id.* ¶¶ 27, 29, 31-35.

---

[9] Reliance is a necessary element of a UTPA claim where, as here, the plaintiff alleges a misrepresentation or omission caused her to make a purchase. *See Pearson v. Philip Morris, Inc.*, 358 Or. 88, 126-27, 361 P.3d 3 (2015) ("Although reliance is not, in and of itself, an element of a UTPA claim, it is a natural theory to establish the causation of the loss (*i.e.*, the 'injury' in a UTPA claim)" where the plaintiff claims to have "purchased a product believing it had a represented characteristic that it did not have. … [A]lthough plaintiffs described defendant's representation in hybrid terms—that is, part affirmative misrepresentation and part failure-to-disclose—that description did not change the causative link that their refund theory depended on."). Other UTPA claims do not require proof of reliance and therefore may not be subject to the Rule 9(b) heightened pleading standard. *See, e.g.*, *Silva v. Unique Beverage Co., LLC*, 2017 WL 2642286, *13 (D. Or. June 15, 2017) (holding Rule 9(b) did not apply because UTPA theory did not require proof of reliance); *McKie v. Sears Prot. Co.*, 2011 WL 1587112, *11 (D. Or. Feb. 22, 2011), *report and recommendation adopted sub nom. McKie v. Sears Prot.*

Page 17 - DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

Because Plaintiffs base their claim solely on these alleged misrepresentation or omissions, they allege "a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim, and they must meet Rule 9(b)'s heightened pleading standard. *Kearns*, 567 F3d at 1125.  They have not done so.

### b.    Plaintiffs fail to plead their claim with the particularity Rule 9(b) requires.

Plaintiffs' Complaint fails to satisfy Rule 9(b), and the Court therefore should dismiss it. "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the] statement, and why it is false." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks omitted).

Rather than identify specific representations made at specific times by specific people, however, Plaintiffs attempt to create the guise of specificity through misleading pleading. Plaintiffs refer to "advertising" and "on-site signage" in which Mission Rock "specifically represented" that the apartments were "exclusively for fixed-income seniors" at various points over five years. *See, e.g.*, SAC ¶¶ 14-25.  But the only specific advertisement Plaintiffs include is an alleged online advertisement that is undated and that no Plaintiff says they saw, let alone relied on.  *Id.* ¶ 11.  Plaintiffs similarly include a letter purportedly from "[i]n or around August of 2015" in which Mission Rock supposedly made a representation to "Woodspring Apartments' seniors" that the apartments "would remain a fixed-income property"—and it ***did*** remain a low-income property for five more years, and still is for three more years for those tenants there as of January 1, 2021).  *Id.* ¶ 13.  Again, by their own allegations, ***none*** of the Plaintiffs was actually a tenant in August of 2015 and no Plaintiff alleges they ever saw or could have relied on the purported letter.  Finally, Plaintiffs include an image of a sign saying, "A 55 or Better

---

*Co.*, 2011 WL 1587103, *1 (D. Or. Apr. 26, 2011) (holding Rule 9(b) did not apply to UTPA claim where reliance and intent to induce reliance were not necessary elements).

Page 18 - DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

Community," *id.* ¶ 3, and apparently refer to it as being the sign Plaintiffs relied on as the "on-site signage," *id.* ¶¶ 14-25. Even if this sole specific reference to "on-site signage" could suffice, the sign says nothing about "low-income" or "fixed-income."

This leaves Plaintiffs with a series of non-specific, conclusory, rote allegations that Mission Rock "through its agents, specifically represented to [each Plaintiff] both in writing and verbally [sic] that Woodspring Apartments had the quality and style of being an apartment complex community exclusively for fixed-income seniors." *Id.* Plaintiffs allege that in various specified months spanning over five years among the various Plaintiffs, Mission Rock "advertised, negotiated, and sold [each] plaintiff a residential property lease at Woodspring Apartments." *Id.* ¶¶ 14-25. They allege each entered a rental agreement, in addition to relying on the sign mentioned above, "specifically because defendant led [them] to believe that Woodspring Apartments had the quality and style of being an apartment complex exclusively for fixed-income seniors looking to retire and live out their twilight years on a fixed income in a seniors-only community." *Id.* Plaintiffs do not identify any particular "agents" who made these representations (the "who"). With the exception of the single sign that says nothing about income levels, Plaintiffs do not describe the contents of any "advertising" or "representations" on which they claim to have relied (the "what"). Again, except for a single sign alleged to have been somewhere "from defendant's Woodspring Apartments in Tigard, Oregon," *id.* ¶ 3, Plaintiffs present no allegations regarding "where" the alleged misrepresentations occurred.

Even with respect to the only specific representation Plaintiffs partially describe—the sign stating "55 or better" (and apparently a separate sign that is not included in the Complaint saying "seniors-only")—Plaintiffs fail to sufficiently allege "how" they were misled by these (or any other) representations or why these (or any other) representations were misleading or false. Nowhere do Plaintiffs allege that any sign stated exclusively "55 or better" and "seniors only" *forever*. Nor do Plaintiffs allege any "agent" of Mission Rock so stated or stated that the "fixed-

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax
4850-5398-5023v.8 0113870-000002

income" status would remain *forever*—particularly where, as here, publicly recorded documents put Plaintiffs and the world on notice that this was not the case.

Plaintiffs also allege that Mission Rock provided notice in January 2021 that the rent restriction had expired. *Id.* ¶ 26. Plaintiffs allege they "each discovered for the first time that Woodspring Apartments was required to be fixed-income housing as part of its original development, and that in exchange for tax credits under a federal program, the owners of Woodspring Apartments had agreed to keep the apartment complex rents below market for 30 years." *Id.* ¶ 27. Plaintiffs allege they "discovered for the first time that defendant had misrepresented (through both affirmative misrepresentations and through omission) that Woodspring Apartments allegedly was and would remain an apartment complex exclusively for fixed-income seniors." *Id.* ¶ 28. But Plaintiffs fail to acknowledge that the notice made clear that rent would not increase *for three more years*—just as the federal statutory scheme requires. *Id.* ¶ 26. Regarding alleged age restrictions, Plaintiffs can allege only "[a]s of the date of this complaint, defendant has begun allowing tenants who are under the age of 55 to move into Woodspring Apartments," *id.* ¶ 27, something that had *always* been the case and which Plaintiffs' own leases contemplated. *See* ORS 659A.421(7)(b)(C) (55 and over housing means *one member* of *eighty percent* of households is over 55); *supra*, § II.A & n.2. Because these allegations are no more specific than the rest of Plaintiffs' vague Complaint, they fail to show how any particular representations were false.

Plaintiffs fail to allege the "the who, what, when, where, and how of the misconduct charged," and the Court should dismiss for failure to satisfy Rule 9(b)'s pleading standard.

### 2.    Plaintiffs fail to state a claim under any of the UTPA sections cited.

Not only do Plaintiffs fail to comply with Rule 9(b), they fail to plead sufficient factual allegations to state a claim for relief "that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Court should dismiss Plaintiffs' claim for failure to state a claim under Rule 12(b)(6).

Page 20 - DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

The UTPA allows a private right of action for persons who have suffered an "ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608." ORS 646.638(1). A plaintiff must allege "specific conduct" that violates a specific provision of ORS 646.608. *Horton v. Nelson*, 252 Or. App. 611, 620, 288 P.3d 967 (2012). "To state a claim under the UTPA Plaintiffs must allege: (1) a violation of § 646.608(1), (2) causation, (3) damages, and (4) willfulness by Defendant." *Colquitt v. Mfrs. & Traders Tr. Co.*, 2016 WL 1276095, *5 (D. Or. Apr 1, 2016) (citing *Fleshman v. Wells Fargo Bank, N.A.*, 27 F. Supp. 3d 1127, 1139 (D. Or. 2014)). "A willful violation occurs when the person committing the violation knew or should have known that the conduct of the person was a violation." ORS 646.605(10). Statements do not violate the UTPA unless they constituted willful misrepresentations "at the time that they were made[.]" *Rathgeber v. James Hemenway, Inc.*, 335 Or. 404, 412-13, 69 P.3d 710 (2003) ("The problem with plaintiffs' argument is that defendants' representations violated the UTPA only if, at the time that they were made, defendants knew or should have known that their services did not have the qualities defendants represented them to have."). Finally, whether a particular statement "was a misrepresentation is determined based on an objective standard of what a reasonable consumer would understand the representation to be[.]" *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 135, 361 P.3d 3 (2015).

### a. Plaintiffs fail to state a claim based on their "senior living" or "fixed-income" allegations because Plaintiffs do not sufficiently allege any misrepresentations.

Plaintiffs' "senior living" allegations do not support a claim under any of the five UTPA provisions they cite because Plaintiffs fail to sufficiently allege any misrepresentations. The only specific representation Plaintiffs identify regarding "seniors" is that "Defendant advertised a sign to [each Plaintiff] that [they] relied on stating 'seniors-only' and '55 or better' on the

Page 21 - DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Woodspring Apartments premises."[10]  SAC ¶¶ 8.  In Plaintiffs' telling, these conversational euphemisms for "housing for older persons" committed the Woodspring Apartments to a complete and perpetual ban—regardless of the law—of all residents under the age of 55 **forever**. Setting aside the facts that this argument takes literalism to an absurd extreme and that it is inconsistent with the law, this sign reflected nothing more than that Woodspring Apartments sought to rent to "55 or better" tenants at the time Plaintiffs entered their rental agreements.  The sign did not represent that the Woodspring Apartments would forever maintain some kind of "seniors-only" policy with no possibility that anybody younger than 55 could live there, and Mission Rock did not contradict the sign when—approximately ten months after the latest alleged lease and *years* after many of the Plaintiffs rented—it allegedly "has begun allowing tenants who are under the age of 55 to move into Woodspring Apartments…." *Id.* ¶ 27.  There are no plausible factual allegations that these statements were willfully false statements *at the time they were made or at any other time*, and they therefore cannot constitute a violation of the UTPA.  Indeed, Plaintiffs ignore that the leases they signed—and then renewed, some multiple times—expressly contemplate rentals to students and families with children under 18.  *See supra*, § II.A & n.4.  And no Plaintiff alleges that there were *not* residents under the age of 55 before "the date of this complaint," SAC ¶ 27, because they know they cannot truthfully make that allegation.  Indeed, it is implausible to believe that (in a multi-floor building with no elevators) there would always be seniors wishing to rent units that require ascending or descending flights of stairs, or that it makes sense to require Woodspring to leave units vacant (and lose money) if it cannot rent every unit to someone 55 or older.  The Court need not ignore common sense under *Twombly*.

---

[10] Again, Plaintiffs allege the existence of an undated "online advertisement," SAC ¶ 11, but no Plaintiff alleges ever having seen, let alone relied on, that alleged advertisement, which only refers to "senior apartments" in any event. Plaintiffs nowhere allege the apartments are not suitable for seniors, and thus there is nothing misleading about the alleged advertisement in any event.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

More fundamentally, Plaintiffs' claim depends on adopting an interpretation that the sign literally meant that, in perpetuity, nobody under the age of 55 was permitted to rent a unit in the Woodspring Apartments. Of course, the sign actually refers to Woodspring Apartments' status as a provider of "housing for older persons," which is described above. ORS 659A.421(7)(b). The law permits consideration of a tenant's age *only* if certain requirements are met—here that 80 percent of the units have at least one resident over the age of 55. This means that housing may be "55 or better" with 20 percent of the units having *no* residents over 55 and the other 80 percent may have *some* residents under 55. Plaintiffs ignore this law and make no allegation that Mission Rock is not in full compliance. Plaintiffs cannot plausibly state a claim that an objectively reasonable consumer would conclude that a sign stating "55 or better" or even the colloquial "seniors-only" meant *every* resident would be 55 or older—particularly where they each signed a lease that contemplates younger residents and they at best vaguely refer to unspecified representations from unidentified persons at unidentified times that the apartments would be "exclusively" for "seniors." Further, all but three of the Plaintiffs have entered into a new lease knowing full well that some residents of Woodspring Apartments were under 55 (as noted, two leases have not come up for renewal since January 1, 2021). Plaintiffs cannot turn a shorthand description of 55 or older "housing for older persons" into a misrepresentation, and their claim based on this theory therefore fails.

Plaintiffs also fail to identify any misrepresentations regarding Woodspring Apartments' alleged status as a "fixed-income property." SAC ¶ 13. Plaintiffs cite an August 2015 letter stating that, at that time, Woodspring Apartments was "still a low-income property which means the maximum rents are determined by the state" and explaining that tenants would "continue to have incremental increases each year as the state allows, just as it has been in the past." *Id.* Not only are these statements true, the letter says nothing about Woodspring Apartments being a "*fixed*-income property," and it makes no representations regarding the future beyond notifying tenants that rents will increase to the extent permitted by state law. Moreover, Plaintiffs do not

4850-5398-5023v.8 0113870-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

allege they relied on these statements—to the contrary, Plaintiffs allege they did not even live at Woodspring Apartments at the time the letter was sent.

This letter provides no support for Plaintiffs' claims, and Plaintiffs do not identify any other "fixed-income" representations with particularity. Plaintiffs therefore also fail to state a claim under this theory.

### b.    Plaintiffs fail to state a claim under ORS 646.608(1)(b).

Nor do any of Plaintiffs' other allegations state a claim under the specific UTPA provisions they cite. Plaintiffs first claim that Mission Rock violated ORS 646.608(1)(b), which provides: "(1) A person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person does any of the following: … (b) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of real estate, goods or services." ORS 646.608(1)(b). Plaintiffs attempt to state a claim under this provision by alleging Mission Rock caused a "likelihood of confusion or misunderstanding as to Woodspring Apartments' alleged certification as being exclusively a senior living complex," when Mission Rock knew or should have known that the complex "was not in fact a certified complex for low-income seniors." SAC ¶ 31.

Plaintiffs fail to explain what they mean by a "certified complex for low-income seniors," but—to the extent such a certification exists—Woodspring Apartments *is* a "certified complex for low-income seniors." Under Oregon law, the only potential "certification" to provide housing to "seniors" is the "housing for older persons" designation under ORS 659A.421. As described above, this status does ***not*** require that property managers exclude ***all*** individuals below the age of 55 from the community, but only that "[a]t least 80 percent of the dwellings are occupied by at least one person 55 years of age or older per unit." ORS 659A.421(7)(b)(C)(i). Plaintiffs claim that after the alleged representations, Mission Rock "has begun allowing tenants who are under the age of 55 to move into Woodspring Apartments…." SAC ¶ 27. Plaintiffs do not (and cannot) allege that Woodspring Apartments no longer qualifies as "housing for older

Page 24 - DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

persons," and they therefore cannot show that any alleged representations regarding that certification were false.[11]  To the contrary, the alleged "misrepresentations" accurately informed Plaintiffs that Woodspring Apartments provides "housing to older persons."  Likewise, at the time each Plaintiff entered into every one of his or her leases before January 1, 2021, Woodspring Apartments was subject to a recorded Land Use Restriction Agreement that required Mission Rock to charge below-market rents as part of a program jointly administered by the state and federal governments.  Woodspring Apartments therefore was "certified" to provide low-income housing at the time of the alleged omission, and Plaintiffs admit that Mission Rock notified them as soon as that "certification" expired.  SAC ¶ 26.  Plaintiffs cannot state a claim under ORS 646.608(1)(b).

### c.    Plaintiffs fail to state a claim under ORS 646.608(1)(e).

Plaintiffs' claim under ORS 646.608(1)(e) fails for similar reasons.  Where it applies, ORS 646.608(1)(e) prohibits a person from "[r]epresent[ing] that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have."  ORS 646.608(1)(e).  Plaintiffs allege Mission Rock violated this provision "by representing that plaintiffs' residential property lease and tenancy at the Woodspring Apartments had the quality and characteristic of being exclusively for fixed-income seniors, when defendant knew or should have known that Woodspring Apartments would not in fact be exclusively for fixed-income seniors."  SAC ¶ 32.

As noted above, Plaintiffs fail to identify any specific representations that were false at the time they were made or that could be reasonably construed as an absolute ban on tenants below the age of 55 (forever).  Likewise, Plaintiffs have not sufficiently pleaded facts to show that Mission Rock "[r]epresent[ed]" that the Woodspring Apartments had the "qualit[y]" of

---

[11] ORS 659A.421(7)(b)(C) also requires owners or managers to publish and adhere to "[p]olicies and procedures that demonstrate an intent…to provide housing for persons 55 years of age or older."  Plaintiffs do not allege Mission Rock ceased to publish and adhere to policies and procedures.

Page 25 - DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

being "fixed-income" housing, and Plaintiffs therefore cannot state a claim under ORS 646.608(1)(e). But even if Plaintiffs had alleged that Mission Rock represented to Plaintiffs that they were entering below-market-rate residential leases, that representation would have been true. As noted above, Plaintiffs' claim is not that Mission Rock made any false representations regarding the rental rates it charged, but that it ought to have provided more than three years' notice before the law would permit Mission Rock to raise rents to market rates at Woodspring Apartments. This theory does not support a claim under ORS 646.608(1)(e).

### d.     Plaintiffs fail to state a claim under ORS 646.608(1)(g).

Plaintiffs next attempt to assert a claim under ORS 646.608(1)(g), which applies where the defendant falsely "[r]epresents that real estate, goods or services are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model." Plaintiffs allege that Mission Rock misrepresented that Woodspring Apartments had the "style of being exclusively for fixed-income seniors." SAC ¶ 33. Plaintiffs appear to use "style" as synonymous with "quality" under ORS 646.608(1)(e). At best, Plaintiffs' claim under ORS 646.608(1)(g) is redundant and fails for the same reasons as Plaintiffs' ORS 646.608(1)(e) claim. But ORS 646.608(1)(g)'s reference to misrepresentations "that real estate or goods are of a particular style or model" is intended to prohibit false claims regarding design. *See, e.g.*, *Webster's Third New Int'l Dictionary* 1451 (unabridged ed. 1993) (defining "model" as, most relevantly, "structural design," "a specific type or design of clothing," or "a specific type or design of car,"); *id.* at 2271 (defining "style" as, most relevantly, "a quality that gives distinctive excellence to something (as artistic expression) and that consists esp. in the appropriateness and choiceness of the elements (as subject, medium, form) combined and the individualization imparted by the method of combining," "distinction of structural quality (as line, color, design, decoration)," "a particular type of architecture based on distinctive qualities of design or decoration," "a combination of shape and ornamentation distinguishing an extensive group of artifacts (as ceramics)," or "a general category based on somewhat similar characteristics (as of

Page 26 - DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

outward appearance)"); *State v. McNally*, 361 Or. 314, 321-22, 392 P.3d 721 (2017) ("[T]o understand the plain, natural and ordinary meaning of a phrase, the court frequently consults dictionary definitions of the terms, on the assumption that, if the legislature did not give the term a specialized definition, the dictionary definition reflects the meaning that the legislature would naturally have intended." (internal quotation and alteration omitted)). Because Plaintiffs do not allege any misrepresentations or omissions regarding the "style"—that is, the design—of Woodspring Apartments, ORS 646.608(1)(g) does not apply.[12]

> e.    **Plaintiffs fail to state a claim under ORS 646.608(1)(i).**

Plaintiffs also fail to sufficiently plead a false advertising claim under ORS 646.608(1)(i). That provision makes it an unlawful trade practice to "[a]dvertise[ ] real estate, goods or services with intent not to provide the real estate, goods or services as advertised, or with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity." ORS 646.608(1)(i); *see also Sanders v. Francis*, 277 Or. 593, 595, 561 P.2d 1003 (1977) (considering claim alleging defendants failed to sell product at price expressly stated in specific newspaper advertisement); *Horton v. Nelson*, 252 Or. App. 611, 621, 288 P.3d 967 (2012) (considering claim based on specific internet advertisement on which plaintiff relied and which was attached to complaint). Yet, the SAC identifies only a single express advertisement: an undated alleged online advertisement for "2 Bedroom Senior Apartments in Tigard, OR." SAC ¶ 11. This advertisement makes no representations regarding "fixed-income" or "low-income" housing, and, by its reference to "Senior Apartments," it accurately advertises

---

[12] Nor could Plaintiffs state a claim that Woodspring Apartments lacked a "particular standard, quality, or grade" in violation of ORS 646.608(1)(g). "For a representation of a standard, quality, or grade to be actionable under the UTPA, the representation must be referential, i.e., it must compare the real estate, goods, or services to an objective or independent standard." *Parada v. MJ's Labor Servs., Inc.*, 2019 WL 4145224, *5 (D. Or. Aug. 30, 2019) (citing *Denson v. Ron Tonkin Gran Turismo, Inc.*, 279 Or. 85, 91, 566 P.2d 1177 (1977)). Plaintiffs do not allege Mission Rock made any representations comparing Woodspring Apartments to an objective or independent standard.

Page 27 - DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

4850-5398-5023v.8 0113870-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Woodspring Apartments' status as a provider of "housing for older persons."  Further, none of the Plaintiffs alleges that they even saw—much less relied on—this advertisement.

Instead, Plaintiffs appear to rely on the allegation that "Defendant advertised a sign to [each Plaintiff] that [she or he] relied on stating 'seniors-only' and '55 or better' on the Woodspring Apartments premises."  SAC ¶¶ 14-25;[13] *see also id.* ¶ 3 (depicting sign with the words "a 55 or better community," but not "seniors-only").  Plaintiffs fail to explain how an on-site sign constitutes an "advertisement" as opposed to, for example, being informational, and their own allegations show that Mission Rock provided units "as advertised" when Plaintiffs entered their residential leases.  Plaintiffs object to changes that occurred—or may someday occur—long after they received units as allegedly advertised.  As discussed above, Plaintiffs do not allege that the sign represented that Woodspring Apartments would maintain its "housing for older persons" status in perpetuity, and they do not allege the sign said anything about being a "fixed-income property."  Because Plaintiffs fail to sufficiently allege that Mission Rock "[a]dvertise[d] real estate, goods or services with intent not to provide the real estate, goods or services as advertised," they fail to state a claim under ORS 646.608(1)(i).

### f.    Plaintiffs fail to state a claim under ORS 646.608(1)(t).

The final count of Plaintiffs' UTPA claim cites ORS 646.608(1)(t), which applies where "[c]oncurrent with tender or delivery of any real estate, goods or services [the defendant] fails to disclose any known material defect or material nonconformity."  Here too, Plaintiffs attempt to repurpose an inapplicable UTPA provision to assert a redundant claim.  As discussed above, Plaintiffs allege that Woodspring Apartments lack certain *qualities* they desire—namely, perpetual below-market rental rates and the complete exclusion forever (or at least for their

---

[13] Paragraph 3 of the SAC depicts a sign stating, "A 55 or better community" but not "seniors-only."  Paragraphs 14 through 25 refer to Plaintiffs allegedly relying on a sign containing *both* statements.  It is unclear whether Paragraphs 14 through 25 are misstating the content of the sign in Paragraph 3 or if Paragraph 3 shows an irrelevant sign on which no Plaintiffs allege they relied.

Page 28 - DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

lifetimes) of all tenants below the age of 55.  But the alleged absence of those qualities does not constitute a "material defect" in the Woodspring Apartments units Plaintiffs leased.  In fact, the law permits as many as thirty-four units at the Woodspring Apartments (20 percent) to have all residents younger than 55 and maintain its designation as an apartment complex for seniors.

A "defect" is "an irregularity in a surface or a structure that spoils the appearance or causes weakness or failure" or the "want or absence of something necessary for completeness, perfection, or adequacy in form or function."  *Webster's Third New Int'l Dictionary* 591 (unabridged ed. 1993); *see also Kamm v. ITEX Corp.*, 568 F.3d 752, 755 (9th Cir. 2009) (construing intended meaning of "defect" by consulting this definition in order to "start[ ] with the statute's plain language" (referring to 28 U.S.C. § 1447(c)).  Plaintiffs do not allege any such "defect."  Yet, even if ORS 646.608(1)(t) applied, Plaintiffs' claim would fail for the same reasons described above: there was no "defect" or "nonconformity" because Plaintiffs' leases are still subject to the low-income rent amount and there is no allegation that Woodspring Apartments fails to meet the requirements for "housing for older persons"—which do ***not*** require every tenant be over 55.  Because Plaintiffs cannot state a claim under any of the UTPA provisions they cite, the Court should dismiss their UTPA claim.

### 3.      Plaintiffs fail to allege they suffered an actual ascertainable loss.

Finally, Plaintiffs' UTPA claim also fails because they do not sufficiently allege that they have suffered any actual "ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608."  ORS 646.638(1).  To state a UTPA claim, a plaintiff must plead and prove that they have suffered an ascertainable loss.  *Paul v. Providence Health Sys.-Oregon*, 351 Or. 587, 603, 273 P.3d 106 (2012) (holding plaintiffs' UTPA claim failed because they could not show "present harm to plaintiffs' economic interests").  Each of Plaintiffs' UTPA counts alleges two theories of ascertainable loss.  Plaintiffs cannot state a claim under either theory.

Page 29 - DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

First, Plaintiffs allege they suffered "refund of the purchase price ascertainable loss in the amount that they paid for their residential property lease because but for defendant's [alleged UTPA violation] plaintiffs would not have chosen to move into Woodspring Apartments and thus would not have paid for their residential property lease at Woodspring Apartments[.]"  SAC ¶¶ 31-35.  Specifically, Plaintiffs allege that had they known the information disclosed in the January 1, 2021 letter, they would not have entered residential property leases at Woodspring Apartments.  SAC ¶ 27; *see also id.* ¶ 29 (alleging Plaintiffs "would not have paid to enter a residential lease at Woodspring Apartments" if they had known "that Woodspring Apartments would no longer be for fixed-income seniors").  This theory cannot apply to the ten Plaintiffs who entered new leases *after* receiving the January 1, 2021 letter.  *See, e.g.*, Ex. 1.[14]  Nor can it apply to any of the Plaintiffs' leases terminated before the changes described in the January 1, 2021 letter—Plaintiffs received "fixed-income senior" housing under each contract just as allegedly represented.  The same is even true for the lone Plaintiff who has chosen not to enter a new lease; throughout the entire duration of his lease, he paid below-market rent for a unit in a community that provided "housing for older persons."  He did not suffer ascertainable loss by entering that lease, and he will not pay any rent to Woodspring Apartments moving forward (and therefore cannot be entitled to a refund of rent he will not have paid).[15]  *Paul*, 351 Or. at 603 ("Plaintiffs have not stated a claim under the UTPA for the 'loss' they incurred to prevent a *future* harm.").

And the refund-of-purchase-price theory is ordinarily applied to the purchase of optional consumer goods, and Plaintiffs fail to explain how that theory could apply to necessary

---

[14] As noted above, two Plaintiffs' leases will expire on December 31, 2021 and thus are not yet subject to renewal.  Another has chosen to move out.

[15] By the end of the year, the final Plaintiff will either have chosen to renew her lease with a full understanding of the facts alleged in this Complaint or will have chosen to relocate before Woodspring Apartments becomes a market-rate, age-inclusive community.  Either way, she will not have suffered a refund-of-the-purchase-price ascertainable loss.

Page 30 - DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

expenditures like housing.  If Plaintiffs had chosen not to rent at Woodspring Apartments, they still would have incurred housing costs elsewhere.  *Cf. Pearson*, 358 Or. at 126 ("Causation is logically established if a purchaser shows that, without the misrepresentation, the purchaser *would not have bought the product* and thus should be entitled to a refund.") (emphasis added). Plaintiffs do not allege that without the alleged misrepresentations they would not have rented an apartment at all; rather, Plaintiffs' theory is that Mission Rock induced them to rent a *particular* apartment.  Plaintiffs therefore cannot assert a theory of loss that assumes that Plaintiffs would not have paid any rent but for the alleged misrepresentations.  Where Plaintiffs necessarily would have purchased a substitute if they had not rented a Woodspring Apartments unit, the refund-of-purchase-price theory is inapposite.

Second, Plaintiffs allege ascertainable loss under a "diminished value" theory:

Defendant's [alleged UTPA violations]…caus[ed] plaintiffs diminished value ascertainable loss because as a result of defendant's conduct…plaintiffs paid for a fixed-income residential property lease and tenancy that they believed would be within their limited budget for the remainder of their lives but instead ended up with a less valuable residential lease and tenancy because they will now have to either pay more for their future tenancy at Woodspring Apartments or find another tenancy and pay moving expenses, if they can even find another available and suitable senior tenancy within their budget in the current market.

SAC ¶¶ 31-35.  This theory also fails.  Plaintiffs cannot convert potential future costs—paying increased rent in future leases or incurring moving expenses—into an ascertainable loss that has already occurred.  *See Paul*, 351 Or. at 603 (holding that neither the risk of a future loss nor costs incurred to mitigate that risk are ascertainable losses for the purposes of a UTPA claim). Further, to prevail on a diminished value claim, Plaintiffs need to plead and prove they overpaid for their leases because the characteristics allegedly missing from the Woodspring Apartments had economic value.  As the Oregon Supreme Court has explained:  When the price of goods is not different based on some represented quality (say, for example, color or flavor), it simply does not logically follow that the quality has greater *economic* worth.  In terms of economic loss—which is the kind of loss required here—when there is no price difference for a good with a

4850-5398-5023v.8 0113870-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

particular feature and the same good without it, a plaintiff has not paid any extra for the represented quality that the plaintiff did not receive. *Pearson*, 358 Or. at 122. Plaintiffs fail to allege any facts to establish that housing for "fixed-income seniors" has a greater economic value than comparable housing lacking those characteristics. Plaintiffs' diminished-value theory thus fails. Because Plaintiffs do not allege ascertainable loss, they cannot state a UTPA claim.

## V.    CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Second Amended Complaint with prejudice.

DATED this 29th day of November, 2021.

**DAVIS WRIGHT TREMAINE** LLP

By  s/ Kevin H. Kono
**Kevin H. Kono**, OSB #023528
kevinkono@dwt.com
**Chris Swift**, OSB #154291
chrisswift@dwt.com

**Frederick B. Burnside**, OSB #096617
fredburnside@dwt.com
Telephone:  (206) 757-8016

Attorneys for Defendant
Mission Rock Residential LLC

Page 32 - DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

4850-5398-5023v.8 0113870-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main ⋅ (503) 778-5299 fax