**Kelly D. Jones, OSB No. 074217**
The Law Office of Kelly D. Jones
819 SE Morrison St., Suite 255
Portland, Oregon 97214
kellydonovanjones@gmail.com
Direct 503-846-4329

Of Pro Bono Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

|  |  |
|---|---|
| **GRETA IVIE**<br>**HEIDI JOHNSTONE**<br>**KAREN KEENAN**<br>**DONA ACTIS**<br>**SUSAN PURVINE**<br>**COY LAY**<br>**JAMES MILLER**<br>**SANDRA WILLIAMS**<br>**TERI STEVENS**<br>**RONALD MASON**<br>**ELIZABETH SMITH**<br>**SARA SANFORD**, | Case No. 3:21-cv-01122-SB<br><br>**PLAINTIFFS'**<br>**RESPONSE TO**<br>**DEFENDANT'S**<br>**MOTION TO DISMISS**<br><br><br>Oral Argument Requested |
| Plaintiffs, |  |
| v. |  |
| **MISSION ROCK RESIDENTIAL**<br>**LLC**, |  |
| Defendants. |  |

**RESPONSE TO MOTION TO DISMISS – Page 1 of 58**

## <u>TABLE OF CONTENTS</u>

FACTUAL AND PROCEDURAL BACKGROUND..................10

ARGUMENTS IN OPPOSITION .........................................13

    1.    The content of plaintiffs' leases and the exhibits in defendant's motion for judicial notice (exhibits) should not be incorporated into this 12(b)(6) motion to dismiss. ....................................15

        1.1    The contents of the leases and the exhibits do not form the basis of plaintiffs' claims. ..................................15

        1.2    The complaint does not allege the content of the leases or exhibits .........................17

    2.    Defendant's repeated mischaracterizations of plaintiffs' allegations and claims should be rejected...............................................................17

    3.    Defendant's conduct as alleged in the complaint is not conduct covered by ORS Chapter 90 ...............................................22

    4.    Plaintiffs have sufficiently pled viable claims under the UTPA ...................................28

        4.1    FRCP 9(b) does not apply to plaintiffs' UTPA claims .........................29

        4.2    Even *if* FRCP 9(b) applies here, plaintiffs' UTPA claims are adequately pled ......................................34

        4.3    Plaintiffs state viable claims under each UTPA count ..................................37

    5.    Plaintiffs adequately allege ascertainable loss resulting from defendant's UTPA violations ......................................................43

5.1    Plaintiffs adequately allege a "diminished value" loss ...…….…..…..,…....……………44

5.2    Plaintiffs also adequately allege a "refund of purchase price" loss ..……………52

**RESPONSE TO MOTION TO DISMISS – Page 3 of 58**

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Andriesian v. Cosmetic Dermatology, Inc.*,
     No. 3:14-cv-01600-ST, 2015 WL 1638729, 2015 U.S. Dist. LEXIS
     50502 (D. Or. Mar. 3, 2015) ............................................................... 41

*Concha v. London*,
     62 F.3d 1493 (9th Cir. 1995) ............................................................ 35

*Coto Settlement v. Eisenberg*,
     593 F.3d 1031 (9th Cir. 2010) .......................................................... 17

*Ecological Rights Found. v. Pac. Gas & Elec. Co.*,
     713 F.3d 502 (9th Cir. 2013) ............................................................ 15

*Gilberto v. Walgreen Co.*,
     No. 3:18-cv-01003-AC, 2019 U.S. Dist. LEXIS 230285 (D. Or. Nov.
     20, 2019) ........................................................................................... 42

*In re Intel Corp. CPU Mktg., Sales, Practices & Prods. Liab. Litig.*,
     No. 3:18-md-2828-SI, 2020 WL 1495304, 2020 U.S. Dist. LEXIS
     53829 (D. Or. Mar. 27, 2020) ............................................... 44, 50, 52

*In re Silicon Graphics Inc. Sec. Litig.*,
     183 F.3d 970 (9th Cir. 1999) ............................................................ 15

*Johnson v. Nissan N. Am., Inc.*,
     272 F. Supp. 3d 1168 (N.D. Cal. 2017) ............................................ 30

*Kearney v. Equilon Enters., LLC*,
     65 F. Supp. 3d 1033 (D. Or. 2014) ........................................ 29, 30, 32

*Kearns v. Ford Motor Co.*,
     567 F.3d 1120 (9th Cir. 2009) ...................................................... 29, 30

*Khoja v. Orexigen Therapeutics, Inc.*,
     899 F.3d 988 (9th Cir. 2018) ...................................................... 13, 15

*Knievel v. ESPN*,
     393 F.3d 1068 (9th Cir. 2005) .......................................................... 15

*Marder v. Lopez*,
     450 F.3d 445 (9th Cir. 2006) ............................................................ 16

*McKie v. Sears Prot. Co.* (*McKie II*),
     No. 10-1531-PK, 2011 WL 1587103, 2011 U.S. Dist. LEXIS 44848 (D.
     Or. Apr. 26, 2011) ............................................................................. 32

*McKie v. Sears Prot. Co* (*McKie I*),
    No. CV 10-1531-PK, 2011 WL 1587112, 2011 U.S. Dist. LEXIS 47967
    (D. Or. Feb. 22, 2011) ........................................................................ 31

*Mendoza v. Lithia Motors, Inc.*,
    No. 6:16-cv-01264-AA, 2017 WL 125018, 2017 U.S. Dist. LEXIS 4716
    (D. Or. Jan. 11, 2017) ........................................................................ 34

*Miller v. Winco Foods*,
    No. 3:19-cv-02094-AC, 2020 WL 6685697, 2020 U.S. Dist. LEXIS
    212534 (D. Or. Sept. 3, 2020) ........................................................... 19

*Moore v. Kayport Package Express, Inc.*,
    885 F.2d 531 (9th Cir. 1989) ....................................................... 35, 36

*Nguyen v. Cree, Inc.*,
    No. 3:18-cv-02097-SB, 2019 WL 7879879, 2019 U.S. Dist. LEXIS
    220007 (D. Or. Nov. 6, 2019) ........................................................... 37

*Page v. Roundpoint Mortg. Servicing Corp.*,
    No. 6:16-cv-00888-AA, 2019 WL 591447, 2019 U.S. Dist. LEXIS
    23466 (D. Or. Feb. 12, 2019) ............................................................ 19

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir. 1998) ............................................................ 15

*Rollins v. Wink Labs*,
    No. 3:20-cv-01220-YY, 2021 WL 1976082, 2021 U.S. Dist. LEXIS
    96986 (D. Or. Feb. 22, 2021) ............................................................ 46

*Rubenstein v. Neiman Marcus Grp. Ltd. Liab. Co.*,
    687 F. App'x 564 (9th Cir. 2017) ...................................................... 36

*Silva v. Unique Bev. Co. (Silva II)*,
    No. 3:17-cv-00391-HZ, 2017 U.S. Dist. LEXIS 179362 (D. Or. Oct. 30,
    2017)............................................................................33, 46, 51, 56

*Silva v. Unique Bev. Co.* (*Silva I*),
    No. 3:17-cv-00391-HZ, 2017 WL 2642286, 2017 U.S. Dist. LEXIS
    93625 (D. Or. June 15, 2017) ................................................. 32, 33, 34

*Solano v. Kroger Co.*, No. 3:18-cv-01488-AC, 2020 WL 3248221, 2020
    U.S. Dist. LEXIS 107447 (D. Or. June 12, 2020) ............................. 36

*Solano v. Kroger Co.*,
    No. 3:18-cv-01488-AC, 2020 WL 7028473, 2020 U.S. Dist. LEXIS
    223143 (D. Or. Nov. 30, 2020) ......................................................... 44

*St. Vincent de Paul Soc'y of Lane Cnty. v. Culpepper*,
    No. 6:17-cv-01221-AA 2018 U.S. Dist. LEXIS 687 (D. Or. Jan. 2,
    2018)................................................................................................... 24

**RESPONSE TO MOTION TO DISMISS – Page 5 of 58**

*Sviridyuk v. BAC Home Loan Servicing, LP,*
  No. 3:11-cv-01107-SI, 2012 U.S. Dist. LEXIS 6677 (D. Or. Jan. 20,
  2012 ................................................................................................ 16

*United States v. Ritchie,*
  342 F.3d 903 (9th Cir. 2003) ............................................................ 15

*Vess v. Ciba-Geigy Corp. USA,*
  317 F.3d 1097 (9th Cir. 2003) .......................................................... 32

*Walters v. Vitamin Shoppe Indus.,*
  701 F. App'x 667 (9th Cir. 2017) ................................................. 53, 56

*Williams v. Gerber Prods. Co.,*
  552 F.3d 934 (9th Cir. 2008) ............................................................ 37

*Willis v. Debt Care, USA, Inc.,*
  No. 3:11-cv-430-ST, 2011 WL 7121288, 2011 U.S. Dist. LEXIS
  153008 (D. Or. Oct. 24, 2011) ......................................................... 32

*Wilson v. Hewlett–Packard Co.,*
  668 F.3d 1136 (9th Cir. 2012) .......................................................... 13

**State Cases**

*Belt v. Matson,*
  120 Or. 313 (1927) .......................................................................... 21

*Caldwell v. Pop's Homes, Inc.,*
  54 Or. App. 104 (1981)........................................................ 40, 41, 42

*Daniel N. Gordon, Prof'l Corp. v. Rosenblum,*
  276 Or. App. 797 (2016)................................................................... 44

*Feitler v. Animation Celection, Inc.,*
  170 Or. App. 702 (2000) ....................................................... 43, 49, 52

*Gordon v. Rosenblum,*
  361 Or. 352 (2017) .......................................................................... 40

*Gorzeman v. Thompson,*
  162 Or. App. 84 (1999)..................................................................... 21

*High v. Davis,*
  283 Or. 315 (1978) .......................................................................... 21

*Hinds v. Paul's Auto Werkstatt Inc.,*
  107 Or. App. 63 (1991)..................................................................... 19

*Hoffer v. Szumski,*
  129 Or. App. 7 (1994)........................................................... 24, 25, 26

*Martin v. Cahill,*
  90 Or. App. 332 (1988) ............................................................ 43

*Paul v. Providence Health Sys.-Or.,*
  237 Or. App. 584 (2010) .......................................................... 44

*Paul v. Providence Health Sys.-Or.,*
  351 Or. 587 (2012) ........................................................... 47, 48

*Pearson v. Philip Morris, Inc.,*
  358 Or. 88 (2015) .......................................................... passim

*Raudebaugh v. Action Pest Control, Inc.,*
  59 Or. App. 166 (1982) ........................................................... 34

*Scott v. W. Int'l Surplus Sales, Inc.,*
  267 Or. 512 (1973) ..................................................43, 45, 46, 52

*Simonsen v. Sandy River Auto, LLC,*
  290 Or. App. 80 (2018) ..................................................... passim

*State ex rel. Rosenblum v. Johnson & Johnson,*
  275 Or. App. 23 (2015) ........................................................... 41

*State ex rel. Redden v. Discount Fabrics, Inc.,*
  289 Or. 375 (1980) ............................................................... 31

*Weigel v. Ron Tonkin Chevrolet Co.,*
  298 Or. 127 (1984) .......................................................... 43, 46

**Federal Statutes**

I.R.C. § 42(h)(6)(B)(vi) ............................................................ 21

**State Statutes**

ORS Chapter 90 ......................................................... passim

Oregon Residential Landlord Tenant Act ...................................... 12, 25

UTPA ................................................................... passim

ORS 90.100-.493 ......................................................... 23

ORS 90.100-.850 ......................................................... 23

ORS 90.120(3) ........................................................... 23

ORS 90.323 .............................................................. 27

ORS 90.390 ............................................................................... 27, 28

ORS 90.390(2) ................................................................................ 28

ORS 90.417 ..................................................................................... 27

ORS 90.505-.850 ............................................................................ 23

ORS 90.860 ..................................................................................... 23

ORS 90.860-.875 ............................................................................ 23

ORS 105.105-.168 .......................................................................... 25

ORS 105.132 ............................................................................ 24, 25

ORS 172.104 ................................................................................... 20

ORS 193.070 ................................................................................... 21

ORS 646.605(6)(b) .................................................................... 26, 27

ORS 646.605(6)(b)(A) .................................................................... 22

ORS 646.608 ............................................................ 24, 52, 53, 56

ORS 646.608(1) .............................................................................. 39

ORS 646.608(1)(b) ................................................................ passim

ORS 646.608(1)(e) ................................................................ passim

ORS 646.608(1)(g) ................................................... 12, 41, 44, 45

ORS 646.608(1)(i) .................................................... 12, 41, 42, 44

ORS 646.608(1)(t) .................................................... 12, 42, 43, 44

ORS 646.608(2) .............................................................................. 39

ORS 646.612(1) .............................................................................. 19

ORS 646.638(1) .............................................................................. 47

**RESPONSE TO MOTION TO DISMISS – Page 8 of 58**

ORS 646.638(6) ........................................................................ 24

ORS 646.638(7) ........................................................................ 24

ORS 659A.421(7)(a) ................................................................. 27

**Rules**

FRCP 9(b) .......................................................................... passim

FRCP 12(b)(6) ................................................................. 13, 15, 16, 40

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are all seniors living on fixed incomes who moved into Woodspring Apartments (Woodspring) in Tigard, Oregon within the past five years because they were led to believe the community was a place where they could live and retire with other seniors on their fixed incomes. Doc. 15 ¶ 2.

Woodspring is owned by a $4.7 billion out-of-state investment corporation that bought the property in or around 2015 with the intent to raise rents and force out fixed-income seniors, as soon as the corporation's 30-year Low Income Housing Tax Credit (LIHTC) agreement with the government to keep the property affordable expired in 2021. *Id*. ¶ 12.

Despite defendant's knowledge of the exact date that Woodspring would cease to exist as a retirement community for low-income seniors defendant intentionally chose not to disclose this information to plaintiffs before plaintiffs made their choice to select Woodspring as their place of retirement. *Id*. Defendant omitted this inevitable transformation of the property until it announced it to plaintiffs and the other tenants in a January 1, 2021 letter (1/1/21 letter)—January 1, 2021 being the exact date the LIHTC expired. *Id*. ¶¶ 26-27. It can be reasonably inferred that defendant omitted its knowledge about this dramatic impending cost and occupancy transformation so Woodspring's

corporate owner could continue to maximize its profits for the remaining portion of the LIHTC by soliciting low-income seniors like plaintiffs who were looking for long-term residency in a retirement community with these soon-to-be-terminated features.

This critical omission was not the only way in which defendant misled low-income seniors like plaintiffs to choose Woodspring as the community in which they anticipated retiring and living out their twilight years. *Id*. ¶¶ 14-25. Defendant's continued promotion of Woodspring as an affordable, rent-restricted senior retirement community on its website; its online advertisements; and its onsite signage—which plaintiffs viewed before choosing to move into Woodspring—along with misrepresentations made directly to plaintiffs by defendant's leasing agent, all combined with the reality of Woodspring's future, known by defendant but intentionally concealed from plaintiffs, furthered plaintiffs' reasonable beliefs that Woodspring would remain a senior retirement community with rent that they could afford for the long term, when plaintiffs made their choice to move into Woodspring. *Id*. ¶¶ 3, 9, 10-12, 14-25, 27-29.

These material omissions and affirmative representations, and confusion and misunderstanding they caused, regarding the permanency of the qualities and features of Woodspring being maintained long term as an affordable, reduced-rent senior living

community when plaintiffs made their decision to move into Woodspring, violated ORS 646.608(1)(b), (e), (g), (i), and (t) of the UTPA. *Id*. ¶¶ 30-35.

As a result of defendant's unlawful conduct in violation of these UTPA provisions, plaintiffs suffered ascertainable losses because but for defendant's omissions and affirmative misrepresentations, and if plaintiffs were told the truth about Woodspring's impending transformation, plaintiffs would not have uprooted their lives and moved into Woodspring in the first place and thus would not have paid any money to defendant. *Id*.

Plaintiffs also suffered "diminished value" losses as a result of defendant's unlawful conduct in violation the UTPA, because plaintiffs ended up paying for a leasehold at Woodspring that was less valuable than what defendant falsely represented it would be worth, and because plaintiffs lost the value of the long-term benefits of the bargain that they reasonably believed they had secured when they made their choice to relocate to Woodspring based on defendant's omissions and misrepresentations. *Id*.

Defendant argues that plaintiffs' UTPA false advertising claims should be dismissed because (1) the conduct plaintiffs allege violates the UTPA is conduct covered by ORS Chapter 90—the Oregon Residential Landlord Tenant Act (ORLTA), (2) the allegations in the complaint do

**RESPONSE TO MOTION TO DISMISS – Page 12 of 58**

not comply with the specificity required by FRCP 9(b), and (3) the allegations in the complaint fail to adequately state any viable claims under the UTPA, including that plaintiffs suffered any ascertainable loss resulting from defendant's UTPA violations. Doc. 16 at 10.

## LEGAL STANDARDS

In evaluating the sufficiency of a complaint's factual allegations, a court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the nonmoving party. *Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). Courts in general may not consider material outside the pleadings when assessing the sufficiency of a complaint under FRCP 12(b)(6). *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 998 (9th Cir. 2018).

## ARGUMENTS IN OPPOSITION

Through its motion, defendant attempts to create a new strawman complaint of its choosing that it can then attack as insufficiently pled and inadequate under the law, in an effort to convince this Court that plaintiffs' claims are not viable and should be dismissed.

Had defendant actually disclosed the fact that they had no intention of maintaining Woodspring in the style, character, and quality which was advertised to plaintiffs, due to the expiration of some then unknown to the plaintiffs, federal program, or any other reason, then likely a suit under the UTPA would be untenable, and plaintiffs would

**RESPONSE TO MOTION TO DISMISS – Page 13 of 58**

likely have no reason to file a lawsuit. But that is not what happened. Nor is that what plaintiffs allege in their complaint. Plaintiffs do not argue that defendant is in violation of any federal program. Plaintiffs also do not argue that defendant has violated the terms of plaintiffs' leases. Despite defendant's attempt to muddy the waters, defendant's violations of the UTPA, as alleged in the actual complaint, pertain solely to defendant's advertising omissions and false advertisements made at the time plaintiffs were deciding to move into Woodspring.

As the complaint alleges with particularity: each and every plaintiff, upon moving in and signing their lease, held the belief that Woodspring would be a place where they could retire and live out their twilight years with other seniors on their fixed-incomes. Plaintiffs held this belief because defendant failed to disclose the material fact that it knew—in the relatively near future—Woodspring was going to cease being a retirement community devoted to seniors with fixed-incomes. Doc. 15 at 8-28. On or after January 1, 2021, upon publication and distribution of defendant's 1/21/21 letter, plaintiffs became aware that their understanding and the bases for their decisions to move into Woodspring were misplaced, because they had been misled through omission and misrepresentations into believing a false reality about their future at Woodspring, or lack thereof. *Id.* at 8-29.

Defendant's motion should be denied, because the false advertising conduct that plaintiffs allege violated the UTPA is not conduct covered by ORS Chapter 90, and each plaintiff has adequately pled each of their UTPA counts, including that they suffered ascertainable losses as a result of defendant's unlawful conduct.

**1.    The content of plaintiffs' leases and the exhibits in defendant's motion for judicial notice (exhibits) should not be incorporated into this 12(b)(6) motion to dismiss.**

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)." *Khoja,* 899 F.3d at 998. One exception to this rule is the incorporation-by-reference doctrine which allows courts "to take into account documents whose contents are alleged in a complaint . . . but which are not physically attached to the [plaintiffs'] pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (internal quotation marks omitted) (quoting *In re Silicon Graphics Inc. Sec. Litig.*,183 F.3d 970, 986 (9th Cir. 1999). A document may also be incorporated by reference into a complaint if "the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).

**1.1    The contents of the leases and the exhibits do not form the basis of plaintiffs' claims.**

Whether a document forms the basis of a complaint turns on whether the complaint "necessarily relies" on that document. *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 511 (9th Cir. 2013);

**RESPONSE TO MOTION TO DISMISS – Page 15 of 58**

*see Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) ("[A] district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies."). In turn, a complaint "necessarily relies" on a specific document if: "(1) the complaint refers to the document; (2) *the document is central to the plaintiff's claim*; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (emphasis added).

The contents of the lease agreements are in no way central to plaintiffs' claims in the complaint. While plaintiffs reference the fact that they did sign leases after the misrepresentations and omissions of defendant, the content of those leases is irrelevant. The leases could be one-sentence documents simply stating "the parties have a lease" or be the 41-page, unwieldy instrument defendant attached to its motion. The content of the leases has no impact on the validity of plaintiffs' allegations, and that content should not be considered in this motion to dismiss. The same standard as applies to plaintiffs' leases applies to the content of the exhibits. Those exhibits are not referenced anywhere in the complaint, those documents do not form the basis of plaintiffs' complaint, and the complaint does not allege the content of those exhibits. *See Sviridyuk v. BAC Home Loan Servicing, LP*, No. 3:11-cv-01107-SI, 2012 U.S. Dist. LEXIS 6677, at *5 (D. Or. Jan. 20, 2012) ("This

**RESPONSE TO MOTION TO DISMISS – Page 16 of 58**

letter . . . may constitute important evidence going to the merits of Plaintiff's claim, but it does not form the basis of Plaintiff's claim as alleged.").

### 1.2 The complaint does not allege the content of the leases or exhibits.

While plaintiffs reference their leases multiple times in the complaint, they do so only in order to demonstrate the existence of the leases and not the content thereof. "[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). Nowhere do plaintiffs allege violations of the UTPA based on the **content** of their respective leases. Also, while plaintiffs do not dispute the authenticity of the exhibits, those documents are not referenced anywhere in the complaint and should not be considered in this motion.

### 2.    Defendant's repeated mischaracterizations of plaintiffs' allegations and claims should be rejected.

As just one example of defendant's strawman arguments, defendant begins its motion by stating that "[a]t bottom, Plaintiffs' lawsuit challenges the federal statutory policy that contemplates termination of affordable housing restrictions under the program at issue after thirty years . . . ." Doc. 16 at 1. Defendant asserts various versions of this erroneous argument in its motion, in reliance on the LIHTC program and related agreement. *See, e.g., id.* at 8, 14 ("Plaintiffs'

lawsuit challenges the federal statutory policy" and "[p]laintiffs now seek to extend [the LIHTC] requirements permanently.").

In the event that the Court considers the LIHTC documents and the arguments that defendant extrapolates from them, it is clear from the face of plaintiffs' complaint that plaintiffs do not allege that the affordable housing scheme under which Woodspring has operated for the past 30 years is invalid or is itself an unlawful trade practice. Rather, plaintiffs allege that defendant misled and deceived them— through material omission of the pending termination of the LIHTC as well as affirmative representations regarding the qualities, characteristics, and style of the property as an affordable below-market-rate senior living community. As a result of defendant's omissions and false advertising, plaintiffs packed up their lives, paid money to defendant, and moved into defendant's complex with the reasonable expectation that it would be their long-term home.

Whether the terms of the LIHTC or any other government housing program specifies a date for termination of participation in that program has no bearing on whether defendant could have and should have disclosed the pending transformation of Woodspring and the termination of the very features and benefits that led plaintiffs to select Woodspring as their retirement home. The LIHTC program does not mandate that defendant cease operating Woodspring as low-income

senior housing. The UTPA provides an exception for "[c]onduct in compliance with the orders or rules of, or a statute administered by a federal, state or local governmental agency." ORS 646.612(1). "Oregon courts have interpreted [this] provision to exempt 'only *conduct* that is *mandated* by other laws.'" *Page v. Roundpoint Mortg. Servicing Corp*., No. 6:16-cv-00888-AA, 2019 WL 591447, 2019 U.S. Dist. LEXIS 23466, at *5 (D. Or. Feb. 12, 2019) (emphases in original) (quoting *Hinds v. Paul's Auto Werkstatt Inc*., 107 Or. App. 63, 67 (1991)). In *Page*, the court concluded that "RESPA did *not* require defendant to foreclose on plaintiffs' home . . .[;] [t]herefore, the conduct that plaintiffs allege gives rise to their UTPA claim is not conduct mandated by a federal statute or rules, and ORS 646.612(1) does not bar the claim." *Id*. at *7; *see also Miller v. Winco Foods*, No. 3:19-cv-02094-AC, 2020 WL 6685697, 2020 U.S. Dist. LEXIS 212534, at *12 (D. Or. Sept. 3, 2020) ("Here, the [city tax] Rule . . . merely allow[s] Large Retailers to itemize or describe the Surcharge in whatever manner they choose."); *Hinds*, 107 Or. App. at 67 ("We construe ORS 646.612(1) to exempt only conduct that is mandated by other laws." (citation omitted)).

Defendant proceeds to recategorize plaintiffs' complaint as an attempt to restrict the rent defendant can charge for the property. Doc. 16 at 18, 30-31. As discussed *supra*, plaintiffs' complaint alleges conduct in violation of the UTPA based on the omissions and false

**RESPONSE TO MOTION TO DISMISS – Page 19 of 58**

advertisements leading to plaintiffs moving into Woodspring. Plaintiffs do *not* allege that they moved thinking their rent could *never* change by any amount. They allege they signed their leases and moved in under the belief the property would remain low-income senior housing. Doc. 15 ¶¶ 14-25. A belief that defendant fostered, knew was untrue, and failed to refute. Of course, something *could* change in the future. But at the time of entering into their leases, plaintiffs believed that neither party had any knowledge that the property would soon cease to be low-income senior housing. The crux of the complaint is not that the property should be locked forever in a static state of low-income senior housing, but that when plaintiffs moved into Woodspring, they were led to believe that neither side knew with certainty that continuing low-income senior housing was not a reality. But in fact, as plaintiffs later discovered, defendant *did* know that the low-income, senior nature of the property was going to change and chose to conceal that fact from plaintiffs.

Within their statement of facts, defendant also (improperly) argues that each plaintiff knew Woodspring would soon cease to continue being low-income senior living because "[t]hat the affordable housing status would expire in 2021 was a matter of public notice of which Plaintiffs had constructive notice for three decades . . . ." Doc. 16 at 16. Defendant fails to explain what it means by "public notice." The ORS defines "public notice" in ORS 172.104:

**RESPONSE TO MOTION TO DISMISS – Page 20 of 58**

> [a]s used in the statute laws of this state, unless the context
> or a specially applicable definition requires otherwise,
> "public notice" means any legal publication which requires
> an affidavit of publication as required in ORS 193.070
> (Proof of publication), or is required by law to be published.

The LIHTC requires that the agreement between the property owner and the housing authority be "recorded pursuant to State law as a restrictive covenant." I.R.C. § 42(h)(6)(B)(vi). Nowhere does the LIHTC require publication of the agreement and nowhere does defendant claim it so published the agreement. The recording of the restrictive covenant did not put anyone on "public notice" of anything as that term is defined in Oregon.

Defendant also claims that plaintiffs had "constructive notice" by way of the recording of the restrictive covenant. Doc. 16 at 16. Again, defendant fails to explain what it means by "constructive notice." "Constructive notice encompasses both notice chargeable under the recording statute . . . and 'inquiry notice.'" *High v. Davis*, 283 Or. 315, 333 (1978); *see also Belt v. Matson,* 120 Or. 313, 321 (1927).

Inquiry notice "arises when the existence of a claimed interest in real property may be determined through investigation based on facts available to the claimant that would cause a reasonable person to make such inquiry." *Gorzeman v. Thompson*, 162 Or. App. 84, 93 (1999). Defendant can point to no facts in the complaint which would give a reasonable prospective tenant cause to believe that they should search

the county property records before moving into an apartment. Indeed, plaintiffs posit that its more likely that no Oregon tenant has ever conducted a property records search prior to moving into a new rental. To presume that plaintiffs were aware of facts which would lead a reasonable person to search county property records stretches the bounds of credulity beyond their breaking point and ignores reality. In any event, plaintiffs allege that they never knew about the program terms or the expiration of those terms before defendant's 1/1/21 letter.

The purpose of recording statutes is to put future purchasers of real property on notice of prior liens and encumbrances on that property. A recording statute's purpose is not to impart to a prospective residential tenant a duty to run a title report prior to renting an apartment. If defendant had actually desired to give plaintiffs actual notice of the program and its expiration, it would have been simple for it to do so. It chose not to.

Defendant's attempts to mischaracterize, misstate, and cause confusion about plaintiffs' straightforward UTPA allegations, including by inserting its own irrelevant facts outside the complaint, are replete throughout defendant's motion and should be rejected.

**3. Defendant's conduct as alleged in the complaint is not conduct covered by ORS Chapter 90.**

The UTPA excludes from the definition of real estate "conduct covered by ORS Chapter 90." ORS 646.605(6)(b)(A). The portions of

**RESPONSE TO MOTION TO DISMISS – Page 22 of 58**

Chapter 90 relevant to this case are ORS 90.100-.493. The full range of Chapter 90 is ORS 90.100-.850. ORS 90.505-.850 apply only to manufactured dwellings and floating homes,[1] and ORS 90.860-.875 were not added to or made a part of ORS Chapter 90.[2]

This exclusion for conduct covered by Chapter 90 begs the question of what "conduct" is at issue in the complaint. As alleged in the complaint, the conduct at issue is defendant's verbal misrepresentations to plaintiffs, the signage located on the property, the letter from defendant to the residents of Woodspring declaring "[w]e are still a low-income property," the online advertisement of the property as "senior apartments," and defendant's willful omission in failing to disclose its intention to cease maintaining the property as senior, low-income living at the first opportunity it was able. Doc. 15 ¶¶ 3, 11, 13. It is these affirmative misrepresentations and omissions which comprise the "conduct" alleged in the complaint to have been in violation of the UTPA.

The exemption also necessarily relies on the sufficiency of remedies for unlawful and deceptive landlord practices. Put another way, the exemption must be construed so as to provide a remedy for

---

[1] *See* ORS 90.120(3) ("The provisions of ORS 90.505 to 90.850 apply only if: (a) the tenant owns the manufactured dwelling or floating home . . . .").

[2] See note to ORS 90.860: "90.860 to 90.875 were enacted into law by the Legislative Assembly but were not added to or made a part of ORS chapter 90 or any series therein by legislative action."

**RESPONSE TO MOTION TO DISMISS – Page 23 of 58**

landlord misconduct that is not remedied by Chapter 90. The nature of the relationship between the parties—that of landlord and tenant—does not in and of itself render any misconduct on the part of a landlord exempt from remediation under the UTPA. Indeed, the UTPA expressly contemplates claims by tenants against their landlords. ORS 646.638(6) sets a one-year statute of limitations for actions under the UTPA. But there is an exemption for counterclaims brought by tenants against their landlords. "Notwithstanding subsection (6) of this section, in any action that a seller or lessor brings against a purchaser or lessee of real estate, goods or services, the purchaser or lessee may assert any counterclaim that the purchaser or lessee has arising out of a violation of [the UTPA]." ORS 646.638(7). Landlord misconduct which would otherwise constitute a violation of the UTPA is not excluded from prosecution by an aggrieved consumer unless the legislature has provided a remedy for that misconduct under Chapter 90. The Oregon Court of Appeals has adopted this approach in permitting a residential tenant to assert a UTPA counterclaim for false advertising in a forceable entry and detainer action. *See Hoffer v. Szumski*, 129 Or. App. 7 (1994); *see also St. Vincent de Paul Soc'y of Lane Cnty. v. Culpepper*, No. 6:17-cv-01221-AA 2018 U.S. Dist. LEXIS 687, at *6 (D. Or. Jan. 2, 2018) ("Counterclaims under the UTPA are allowed under Or. Rev. Stat. Ann. § 105.132 because they are specifically permitted by statute.").

**RESPONSE TO MOTION TO DISMISS – Page 24 of 58**

In *Hoffer*, a residential tenant counterclaimed against their landlord for false advertising under the UTPA in a residential forceable entry and detainer (FED) action (ORS 105.105 to 105.168). 129 Or. App. at 9. The landlord then moved to dismiss the counterclaim as being "outside the purview of the FED action." *Id*. The trial court struck the UTPA counterclaim on jurisdictional grounds "because it did not go to the narrow question of who was entitled to possession of the premises." *Id.* at 10. ORS 105.132 states: "[n]o person named as a defendant in an [FED action] may assert a counterclaim unless the right to do so is otherwise provided by statute." The Court of Appeals overturned the trial court's dismissal holding that the UTPA "provides the authority for the filing of a UTPA counterclaim in an action for possession under the FED statutes." *Id.* at 11. Specifically, the UTPA provides that "a lessee may assert any counterclaim the . . . lessee has arising out of a violation of [the UTPA]." *Id.*

Neither of the parties in *Hoffer* raised the issue of whether the exemption of conduct covered by Chapter 90 applied to the tenant's false advertising UTPA counterclaim. As the tenant put it in their brief to the Court of Appeals, "[s]ince defendant-appellant's false advertising claim under ORS 646.608 is obviously not conduct covered by the ORLTA, it was improper for the trial court to strike it." Brief of Defendant-Appellant at 16, *Hoffer v. Szumski*, 129 Or. App. 7 (1994) (CA No.

A81702). In the appeal, the landlord restricted its argument to the sufficiency of the tenant's UTPA claim and not its appropriateness. "Defendant's Unlawful Trade Practices Act counterclaim is so defectively stated that it was subject to dismissal on this basis." Brief of Plaintiff-Respondent at 5-6, *Hoffer v. Szumski*, 129 Or. App. 7 (1994) (CA No. A81702). Or, as the Court of Appeals noted, "[landlord] does not argue that a counterclaim for a violation of the UTPA cannot be brought in an FED action; they argue only that the trial court's action should be upheld because the counterclaim failed to state a claim." *Hoffer*, 129 Or. App. at 130.

While Chapter 90 does provide remedies for certain landlord misconduct or failure to disclose, there are no prohibitions in Chapter 90 against landlord misrepresentations or false advertising. Indeed, the word "advertise" does not appear anywhere in the relevant portions of Chapter 90. Like in *Hoffer*, the conduct alleged in the complaint is obviously not conduct "covered by" Chapter 90 and therefore the exemption contained in ORS 646.605(6)(b) does not apply.

Defendant attempts to categorize plaintiffs' claims as challenges to "the rent that Mission Rock may charge," Doc. 16 at 18, and further claims that "[t]he gravamen of Plaintiffs' fixed-income-seniors claim is that Mission Rock did not disclose that it might one day raise rents to market rate," *id*. This recategorization is an attempt by defendant to

invoke the UTPA's exclusion of "conduct covered by ORS Chapter 90." ORS 646.605(6)(b).

That defendant might someday increase the rent is not the "gravamen" of the complaint. The gravamen is that defendant knew for a certainty that it intended to increase rent at the first time it was able. Doc. 15 ¶ 12. Just because ORS Chapter 90 includes certain provisions relating to payment of rent[3] and rental increases[4] does not mean any claim under the UTPA which tangentially references rent is exempt.

Defendant cites to ORS 90.390 in support of its argument that the claims as alleged in the complaint are "conduct covered by ORS Chapter 90." ORS 90.390 provides tenants with a defense against a landlord in an action for possession if the tenant can prove the landlord discriminated against them. ORS 90.390 prohibits landlord discrimination against a tenant on a number of bases, expressly not including "discrimination or restriction with respect to housing for older persons." ORS 659A.421(7)(a). First, plaintiffs' claims are not discrimination claims. This argument is yet another attempt by defendant to mischaracterize the allegations in the complaint. Second, the interplay between ORS 90.390 and 659A.421(7)(a) simply contemplates that a tenant cannot maintain a housing discrimination

---

[3] ORS 90.417.
[4] ORS 90.323.

**RESPONSE TO MOTION TO DISMISS – Page 27 of 58**

claim under ORS 90.390 where the alleged discrimination stems from housing for older people. This is a practical consideration without which any senior housing facility could be subject to a discrimination suit from non-senior tenants. But, again, the actual **conduct** alleged in the complaint is not discrimination. The conduct is defendant's omissions and false advertising leading to plaintiffs moving into Woodspring in the first place. That conduct is in no way covered by ORS 90.390, which only provides as a remedy a "defense in any discriminatory action brought by the landlord against the tenant for possession." ORS 90.390(2).

### 4. Plaintiffs have sufficiently pled viable claims under the UTPA.

As explained below, defendant's argument that Rule 9(b) applies to plaintiffs' UTPA claims should be rejected. But even if this heightened pleading standard does apply here, plaintiffs allege all of the required claims with the requisite specificity to permit defendant to respond accordingly with an answer. Much of the information defendant claims is missing from the complaint is already within its knowledge. Each of plaintiffs' five counts under the UTPA is viable and plainly stated in the complaint. Although the exact circumstances alleged here may not be mirrored in reported caselaw, that does not mean that the claims are not well grounded in the law.

Although plaintiffs' claims and allegations are not confusing, defendant's efforts to mischaracterize them are. Here again, defendant

**RESPONSE TO MOTION TO DISMISS – Page 28 of 58**

misrepresents, severs, and ignores important facts alleged in the complaint and inserts its own version of the facts in an attempt to sow confusion and create uncertainty where none exists. In specifically attacking each of plaintiffs' UTPA counts, defendant cherry-picks definitions, disregards analogous caselaw, and tries to convince the Court to find that its unlawful conduct escapes the broad scope of and remedial purpose of the UTPA to provide relief to injured Oregonians like plaintiffs.

### 4.1.    FRCP 9(b) does not apply to plaintiffs' UTPA claims.

Defendant argues that plaintiffs' complaint should be dismissed because their UTPA claim "sounds in fraud and is therefore subject to Rule 9(b)." Doc. 16 at 22. In support of its FRCP 9(b) argument, defendant relies on a Ninth Circuit's decision in *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1122 (9th Cir. 2009), and several district court opinions, including *Kearney v. Equilon Enterprises, LLC*, 65 F. Supp. 3d 1033 (D. Or. 2014). These cases are distinguishable and should not be relied upon to find FRCP 9(b) applicable to plaintiffs' UTPA claims in this case. Instead, the Court should rely on the in-district cases discussed *infra*, correctly finding that Rule 9(b) does not apply to a complaint that alleges only UTPA and no common law fraud-oriented claims.

In *Kearns*, the court was dealing with whether the heightened Rule 9(b) pleading standard applied to a putative class action complaint under California's consumer protection statutes, including a claim under the "fraud" prong of California's Unfair Competition Law. *See Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1183 (N.D. Cal. 2017) ("Because [plaintiff's claims] includes the fraud prong [of the UCL], all of these allegations are subject to Rule 9(b)'s heightened pleading requirement." (citing *Kearns*, 567 F.3d at 1125-27)). Because this case deals with on Oregon statutory claim, *Kearns* does not control, nor is it particularly helpful to the Oregon law analysis that needs to be made to determine whether Rule 9(b) applies to the UTPA.

In *Kearney*, the court was also dealing with a putative national class action case, and a class action complaint alleging a nationwide breach of contract claim and violations of multiple states' laws—not just Oregon's UTPA. *Kearney*, 65 F. Supp. 3d at 1037. There, Judge Hernández found that "[b]ased on Plaintiffs' allegations and the elements of fraud in the underlying jurisdictions" plaintiffs "alleged a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis for their claim" and thus needed to allege their claims with particularity under Rule 9(b). *Id.* at 1043 (citing *Kearns*, 567 F.3d at 1125).

**RESPONSE TO MOTION TO DISMISS – Page 30 of 58**

On the other hand, in *McKie v. Sears Protection Co.* (*McKie I*), the defendant argued, like defendant does here, that the plaintiffs' UTPA claim should be dismissed for failure to comply with Rule 9(b). No. CV 10-1531-PK, 2011 WL 1587112, 2011 U.S. Dist. LEXIS 47967, at *32 (D. Or. Feb. 22, 2011). Judge Papak noted that "[n]o federal case directly addresses whether UTPA . . . claims amount for fraud allegations required to be plead with particularity under Rule 9(b)." *Id.* at *31. Citing to the standards in the relevant Ninth Circuit decisions, and the need to examine the elements of a state law fraud claim, Judge Papak carefully reviewed key Oregon state law appellate decisions, including the Oregon Supreme Court's opinion in State *ex rel. Redden v. Discount Fabrics, Inc.*, holding that "[t]he elements of common law fraud are distinct and separate from the elements of a cause of action under the [UTPA], and a violation of the Act is much more easily shown." 289 Or. 375, 383 (1980) (internal quotation marks and citation omitted). The court found that "[i]n light of the differences between the elements of common law fraud and UTPA claims, the [plaintiffs'] UTPA claim cannot be considered tantamount to a fraud claim"; therefore, the heightened Rule 9(b) pleading standard did not apply to plaintiffs' UTPA allegations. In adopting Judge Papak's findings, Judge Haggerty held that Judge Papak's "conclusion that plaintiffs' UTPA claims need not meet the pleading requirements of Rule 9(b) [was] correct [and] sound[.]"

**RESPONSE TO MOTION TO DISMISS – Page 31 of 58**

*McKie v. Sears Prot. Co.* (*McKie II*), No. 10-1531-PK, 2011 U.S. Dist. LEXIS 44848, at *8 (D. Or. Apr. 26, 2011); *see also Willis v. Debt Care, USA, Inc.* No. 3:11-cv-430-ST, 2011 WL 7121288, 2011 U.S. Dist. LEXIS 153008, at *30 (D. Or. Oct. 24, 2011) (court found that "[a] UTPA claim need not meet the pleading requirements of FRCP 9(b)," and "[f]or the same reason, the claims for violation of the Oregon DMSP and the CROA need not meet the pleading requirements of FRCP 9(b)").

Three years after deciding *Kearney*, in *Silva v. Unique Beverage Co.* (*Silva I*), Judge Hernández revisited whether FRCP 9(b) applied, but this time only to a claim under Oregon's UTPA (and unjust enrichment). No. 3:17-cv-00391-HZ, 2017 WL 2642286, 2017 U.S. Dist. LEXIS 93625 (D. Or. June 15, 2017). The court noted that the operative complaint "contains no expressly alleged fraud claim," but also acknowledged that "Rule 9(b) applies not just to claims expressly designated as 'fraud,' but also to claims 'grounded in fraud' because the claim relies exclusively on a 'unified course of fraudulent conduct,' or when fraud is a 'necessary element' of a claim." *Id.* at *36 (quoting *Vess v. Ciba-Geigy Corp.* USA, 317 F.3d 1097, 1103 (9th Cir. 2003)). The court then discussed *McKie* and noted the relevant Oregon Supreme Court's holdings, and held "that *McKie* controls the outcome here. Although Plaintiff's UTPA claim contains fraud-like allegations, an Oregon UTPA claim and an Oregon

common law fraud claim remain distinct and as in *McKie*, Rule 9(b) does not apply." *Id.* at *39.

In a footnote in its motion, defendant asserts that in *Silva* the court held that "Rule 9(b) did not apply because UTPA theory did not require proof of reliance." Doc. 16 at 17 n.9. That is not accurate. A review of *Silva* reveals that plaintiff was in fact asserting a "refund of the purchase price" theory of ascertainable loss resulting from the defendant's misrepresentations, in addition to a "diminished value" loss—as plaintiffs do here. *See Silva I*, 2017 U.S. Dist. LEXIS 93625, at *34 ("Plaintiff appears to allege ascertainable loss under the two theories discussed in *Pearson*: diminished value and product purchase price."); *see also Silva v. Unique Bev. Co.* (*Silva II*), No. 3:17-cv-00391-HZ, 2017 U.S. Dist. LEXIS 179362, at *14 (D. Or. Oct. 30, 2017) (noting that [the plaintiff] "reasserts both a diminished value and purchase price refund theory," and finding that plaintiff sufficiently stated a "refund" loss based on plaintiff's allegations of reliance on the misrepresentations in making her purchase).

The plaintiff's UTPA allegations in *Silva* and plaintiffs' UTPA allegations here (including reliance) are materially indistinguishable, including allegations of reliance. A correct reading of *Silva* indicates that its reasoning is sound and that the Court should reach the same conclusion here: that even when a complaint asserting a UTPA claim

"contains fraud-like allegations [including reliance], an Oregon UTPA claim and an Oregon common law fraud claim remain distinct," and therefore "Rule 9(b) does not apply." *Silva I*, 2017 U.S. Dist. LEXIS 93625, at *39. This makes perfect sense, because "[h]ad the legislature intended that a consumer prove all the elements of common[-]law fraud in order to recover damages, it would have been unnecessary to create a cause of action by statute." *Raudebaugh v. Action Pest Control, Inc.*, 59 Or. App. 166, 168 (1982).

### 4.2. Even *if* FRCP 9(b) applies here, plaintiffs' UTPA claims are adequately pled.

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. *Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally*." (Emphasis added.)

To prove their UTPA claims, plaintiffs are "required to show that '(1) the defendant committed an unlawful trade practice; (2) plaintiff suffered an ascertainable loss of money or property; and (3) plaintiff's injury (ascertainable loss) was the result of the unlawful trade practice.'" *Mendoza v. Lithia Motors, Inc.*, No. 6:16-cv-01264-AA, 2017 WL 125018, 2017 U.S. Dist. LEXIS 4716, at *8 (D. Or. Jan. 11, 2017) (quoting *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 127 (2015)). Even if the heightened FRCP 9(b) pleading requirement were to be applied to

plaintiffs' claims here, plaintiffs have to prove no more than these required elements with particularity.

Despite defendant's arguments otherwise, plaintiffs do allege the required elements of their UTPA claims with sufficient particularity. Doc. 16 at 25-26. Defendant takes issue with the example online advertisement because it is undated and because plaintiffs do not allege that they viewed it. Defendant also takes issue with the 2015 letter, but as explained *infra*, the 2015 letter has other relevance. So does the example online advertisement, because although it may not have been the actual advertisement that plaintiffs viewed before moving into Woodspring, it is evidence that defendant did affirmatively advertise Woodspring as a senior retirement community—after it knew that it soon would not be.

Defendant also complains that the identity of its own agent is not identified by name in complaint, and that the exact location of defendant's onsite signage within Woodspring, or the contents of its own website, is not identified with enough particularity. This level of finite detail and information already in possession of defendant is not required and does not comply with the purpose of the Rule. "Rule 9(b) may be relaxed as to matters within the opposing party's knowledge." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). Rule 9(b) only "requires that plaintiffs specifically plead those facts

**RESPONSE TO MOTION TO DISMISS – Page 35 of 58**

surrounding alleged acts of fraud to which they can reasonably be expected to have access." *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995). Therefore, "in cases where fraud is alleged, we relax pleading requirements where the relevant facts are known only to the defendant." *Id.* In such instances, a "pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore*, 885 F.2d at 540.

Defendant has managed Woodspring since before all of the plaintiffs moved in. The dates and times of its own online advertisements, the contents of its website, the name of its own leasing agent, and the exact location of its own onsite signage are clearly known by, if not exclusively by, or easily discoverable by, defendant. Contrary to defendant's arguments, it has more than sufficient information to "prepare an adequate answer from the allegations." *See, e.g.*, *Rubenstein v. Neiman Marcus Grp. Ltd. Liab. Co.*, 687 F. App'x 564, 567-68 (9th Cir. 2017) (holding that the plaintiffs satisfied Rule 9(b)'s particularity requirement by pleading the "who, what, when, where, and how" of the defendant's alleged misconduct and reversing the district court's dismissal of the plaintiffs' California consumer protection claims pursuant to alleged failure to comply with Rule 9(b)); *Solano v. Kroger Co.*, No. 3:18-cv-01488-AC, 2020 WL 3248221, 2020 U.S. Dist. LEXIS

107447, at *29 (D. Or. June 12, 2020) (finding that 9(b) did not apply to the plaintiff's UTPA class allegations and "the claims and facts in this action are not so complicated that Fred Meyer is unable to fully understand the nature of the allegations and defend against them; applying Rule 9(b) here would not further the rule's purpose").

Defendant's other arguments regarding Rule 9(b) are simply more mischaracterizations of plaintiffs' allegations and claims dealt with elsewhere in this brief, and question whether the misrepresentations are objectively deceptive, which is improper and premature at this stage. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ("[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]."); *Nguyen v. Cree, Inc.*, No. 3:18-cv-02097-SB, 2019 WL 7879879, 2019 U.S. Dist. LEXIS 220007, at *22 n.7 (D. Or. Nov. 6, 2019) (accord).

### 4.3. Plaintiffs state viable claims under each UTPA count.

In a section arguing that plaintiffs have failed to allege *any* misrepresentations that could give rise to a UTPA claim, defendant spends five pages of its brief focusing on the sign declaring Woodspring a "55 and better community." *See* Doc. 16 at 27-31. But as the complaint clearly states, this particular sign is one piece of the entire picture painted for plaintiffs which led to their decisions to move into

Woodspring believing, falsely as it turned out, that it was going to be the place where they would live out their retirement with other seniors, paying rent they could afford. Defendant's online advertising is another piece of the picture. Doc. 15 ¶¶ 11, 14-25, 29. And the verbal representations made to each plaintiff by defendant's leasing agent is another. *Id*. at 14-25. But at the heart of plaintiffs' claims, and loudly ignored by defendant, is what plaintiffs did not see: defendant's willful omission that Woodspring would cease to be a low-income senior living community at the first moment it was able. *Id*. ¶¶ 27-28. As the complaint makes clear, it is *all* of these omissions and acts, *taken together*, with all reasonable inferences therefrom, that comprise the full picture of defendant's unlawful conduct that misled plaintiffs to choose Woodspring in the first place.

Defendant also focuses (again) on the 2015 letter pictured in the complaint expressly representing that Woodspring was and would remain an affordable, fixed-income property for seniors *Id*. ¶ 13. Although it is true that plaintiffs do not allege that they viewed this letter before they moved into Woodspring, given the timeline, this letter is submitted as additional evidence that Woodspring was conveying to tenants, and others who may come to know the content of this letter, that defendant was representing at that time in 2015, as it continued to do with its other advertisements and statements thereafter, that

**RESPONSE TO MOTION TO DISMISS – Page 38 of 58**

Woodspring was and was going to remain a senior housing complex with rent capped pursuant to government regulations. The letter is included in the complaint and relevant for that purpose.

Defendant states that what plaintiffs are really attempting is to force Woodspring to remain low-income senior living for eternity. This, of course, is not an allegation in the complaint. Plaintiffs knew that small rental increases would periodically occur as cost-of-living increases (which is what the rental contracts actually state). But they also believed that Woodspring would remain affordable with below-market rental rates into the future so that they could afford to retire on their fixed incomes. But what defendant knew—with absolute certainty—was that the first moment it was possible, Woodspring's time as a low-income, senior living complex would end. It is no coincidence that the very day the LIHTC covenant ended (January 1, 2021) and defendant was legally allowed to cease keeping Woodspring as low-income senior housing was also the very day defendant posted letters to each plaintiff's door informing them they were doing just that. Defendant had this all planned out for years.

Before addressing defendant's specific arguments against all five of plaintiffs' UTPA counts, it is important to point out here that a "representation under [any of the § 608(1) provisions alleged here] . . .

**RESPONSE TO MOTION TO DISMISS – Page 39 of 58**

may be any manifestation of any assertion by words or conduct, including, but not limited to, a failure to disclose a fact." ORS 646.608(2).

Defendant's arguments against plaintiffs' **§ 608(1)(b)** count continue its purposeful misdirection regarding the timing of its alleged unlawful conduct and should be readily rejected. Defendant also quibbles about the word "certification." In this count plaintiffs are referring to the likelihood of confusion or misunderstanding caused by defendant's failure to disclose that Woodspring was not going to stay affordable as a result of the income and occupancy restrictions certified by the state when they moved into Woodspring. Doc. 16 ¶ 31. Plaintiffs did not know the terms of any such certification, but they believed their rent would stay affordable long term for their retirements based on some form of government certified program, because they were not told otherwise and were misled to believe that was the case. Plaintiffs state a viable claim under § 608(1)(b). *Gordon v. Rosenblum*, 361 Or. 352, 369 (2017), exemplifies and discusses the broad scope of this particular provision.

Defendant's argument that **§ 608(1)(e)** (Doc. 15 ¶ 32) does not apply here is a regurgitation of its other erroneous contentions that have already been addressed, ignores its key unlawful omission, and is another improper attempt to have the Court litigate an objective factual issue in this Rule 12(b)(6) motion. A comparable case assessing a §

608(1)(e) claim is *Caldwell v. Pop's Homes, Inc.*, 54 Or. App. 104, 106 (1981). As explained by a later court discussing *Caldwell*: "[t]he permanency of the location of the mobile home in the park—a feature that an impending change in ownership obviously jeopardized. In other words, the essential nondisclosure in *Caldwell* related to the then-existing risk, created by the park's pending sale, that the mobile home would have to be moved from the park—a risk bearing materially on the buyer's purchasing decision." *State ex rel. Rosenblum v. Johnson & Johnson,* 275 Or. App. 23, 36 (2015). Plaintiffs state a viable claim alleging defendant's violations of § 608(1)(b).

Defendant challenges plaintiffs' **§ 608(1)(g)** count (Doc. 15 ¶ 33) based on an impermissibly restrictive definition of the word "style," which it argues only means some type of "design." Defendant also argues that this count is redundant given the § 608(1)(e) count. Defendant is incorrect. It reads this statute too narrowly, especially given the UTPA's liberal interpretive standard. *See Andriesian v. Cosmetic Dermatology, Inc.*, No. 3:14-cv-01600-ST, 2015 WL 1638729, 2015 U.S. Dist. LEXIS 50502, at *22-23 (D. Or. Mar. 3, 2015) (finding viable § 608(1)(g) claim and stating that although this count was duplicative of the companion § 608(1)(e) claim, "it is not subject to dismissal for that same reason"). Plaintiffs state a viable claim alleging defendant's violations of § 608(1)(e).

**RESPONSE TO MOTION TO DISMISS – Page 41 of 58**

As to plaintiffs' **§ 608(1)(i)** count (Doc. 15 ¶ 34), defendant again fails to understand that all of these counts also include defendant's omission (the failure to include the pending transformation of Woodspring when it promoted Woodspring to plaintiffs before they decided to move in), which is the most central and impactful unlawful conduct at issue here. Further, defendant again too-narrowly interprets the word "advertised" in this provision. *See, e.g.*, *Gilberto v. Walgreen Co.*, No. 3:18-cv-01003-AC, 2019 U.S. Dist. LEXIS 230285, at *35 (D. Or. Nov. 20, 2019) (finding that "advertising" refers to "[t]he action of drawing the public's attention to something to promote its sale." (internal quotation marks and citation omitted)). Plaintiffs state a viable claim alleging defendant's violations of § 608(1)(i).

As to plaintiffs' **§ 608(1)(t)** count (Doc. 15 ¶ 35), defendant again pushes for an impermissibly limited reading of the statutory text, focusing almost exclusively on the word "defect," whereas plaintiffs' complaint speaks to the "nonconformity" language in the statute. This count concerns defendant's failure, at the time plaintiffs were deciding whether to move to Woodspring, to disclose the fact that Woodspring was, on a date certain known to defendant, no longer going to conform with its current status and with defendant's representations about Woodspring, but was instead going to cease being an affordable senior retirement community with rent set at below-market rates. *See, e.g.,*

**RESPONSE TO MOTION TO DISMISS – Page 42 of 58**

*Caldwell*, 54 Or. App. at 110 (explaining that "[i]n this case, defendant is charged with failing to tell plaintiff that the park [in which the mobile home was located] was being sold," in reference to plaintiff's § 608(1)(e) and (t) claims, which the court held were viable and should not have been dismissed). Plaintiffs state a viable claim alleging defendant's violation of § 608(1)(t).

**5.    Plaintiffs adequately allege ascertainable loss resulting from defendant's UTPA violations.**

"'Ascertainable loss' under the UTPA is amorphous. Any loss will satisfy that requirement so long as it is 'capable of being discovered, observed, or established.'" *Feitler v. Animation Celection, Inc*., 170 Or. App. 702, 712 (2000) (citation omitted). Ascertainable loss in a private action "may be so small that the common law likely would reject it as grounds for relief, yet it will support an action under the statute." *Weigel v. Ron Tonkin Chevrolet Co*., 298 Or. 127, 136 (1984). If a private plaintiff ultimately seeks statutory damages rather than actual damages, the precise amount of the loss need not be established. *Scott v. W. Int'l Surplus Sales, Inc*., 267 Or. 512, 515-16 (1973); *see Martin v. Cahill*, 90 Or. App. 332, 335-36 (1988) (accord).

In this case, plaintiffs sufficiently allege two forms of ascertainable loss well-rooted in the caselaw: (1) "diminished value" loss and (2) "refund of purchase price" loss. Defendant's arguments attacking plaintiffs' ascertainable loss allegations should be rejected because they

mischaracterize the loss pled by plaintiffs, are erroneous, and (akin to many of most of its arguments) ask this Court to ignore the mandate to construe the UTPA "liberally" to effectuate its purpose "to discourage deceptive trade practices and to provide a viable remedy for consumers who are damaged by such conduct" and to "view ascertainable loss broadly." *Daniel N. Gordon, Prof'l Corp. v. Rosenblum*, 276 Or. App. 797, 805-06 (2016) (internal quotation marks and citations omitted).

### 5.1. Plaintiffs adequately allege a "diminished value" loss.

"Diminished value" loss can be evidenced by "a difference in value between the product as represented by the defendant and as actually received by the plaintiff." *Paul v. Providence Health Sys.-Or.*, 237 Or. App. 584, 602 (2010). Oregon law "allows for benefit of the bargain and diminished value damages in a UTPA claim." *In re Intel Corp. CPU Mktg., Sales, Practices & Prods. Liab. Litig.*, No. 3:18-md-2828-SI, 2020 WL 1495304, 2020 U.S. Dist. LEXIS 53829, at *1 (D. Or. Mar. 27, 2020) (citing *Simonsen v. Sandy River Auto, LLC*, 290 Or. App. 80, 85-91 (2018)). "[A]lthough a plaintiff may need to establish reliance under some theories of ascertainable loss, a plaintiff need not do so under the diminished value theory." *Solano v. Kroger Co.*, No. 3:18-cv-01488-AC, 2020 WL 7028473, 2020 U.S. Dist. LEXIS 223143, at *11 (D. Or. Nov. 30, 2020).

**RESPONSE TO MOTION TO DISMISS – Page 44 of 58**

As to their "diminished value" loss, plaintiffs allege that as a result of defendant's conduct in violation of ORS 646.608(1)[(b), (e), (g), (i), and (t)] plaintiffs paid for a fixed-income residential property lease and tenancy that they believed would be within their limited budget for the remainder of their lives, but instead ended up with a less valuable residential lease and tenancy because they will now have to either pay more for their future tenancy at Woodspring Apartments or find another tenancy and pay moving expenses (if they can even find another available senior tenancy within their budget in the current market). Doc. 14-25. A quick review of the "diminished value" loss caselaw shows why plaintiffs have adequately alleged a viable loss under this theory.

In *Scott*, the plaintiff purchased a tent that included a card representing that the tent had a zippered flap and eaves. 267 Or. at 514. Plaintiff later discovered the tent did not have a zippered flap or eaves, as represented. *Id*. The plaintiff brought a UTPA claim alleging that the defendant violated ORS 646.608(1)(g). The trial court awarded the plaintiff $200 in statutory damages. *Id*. On appeal, the Oregon Supreme Court rejected the defendant's appeal explaining that under the UTPA, there was "no need to allege or prove the amount of 'ascertainable loss,'" in order to recover the $200 in statutory damages. *Id*. at 515. The court also held that ascertainable loss under the UTPA simply refers to a loss that is "capable of being discovered, observed or established." *Id*. In

explaining that the plaintiff had sufficiently pled and proven ascertainable loss under the statute, the court explained, "[t]he inference can be drawn that because the tent did not have a window with a closing flap or eaves it had a value of less than $38.86." *Id*. at 515-16. The court held that "the plaintiff did not have to prove in what amount the value of the tent was reduced because it was not as represented," but instead "merely had to prove he suffered some loss." *Id*. at 516; *see also Rollins v. Wink Labs*, No. 3:20-cv-01220-YY, 2021 WL 1976082, 2021 U.S. Dist. LEXIS 96986, at *12 (D. Or. Feb. 22, 2021) ("However, just like in *Scott*, after purchasing the product, plaintiff has learned it is not what defendants represented it to be . . . [a]nd, as in *Scott*, plaintiff has 'suffered some loss.'"); *Silva II*, 2017 U.S. Dist. LEXIS 179362, at *22 ("Under *Scott*, Plaintiff has to allege facts showing 'some loss.' She does not have to allege facts showing the specific amount of loss to withstand a motion to dismiss.").

In *Weigel*, the Oregon Supreme Court held that (1) the "difference between the price paid and some objective measure of market value" "is not the only" measure of loss, and (2) ascertainable loss in a private cause of action "should be viewed broadly." *Id*. at 133-36. Ultimately, the court held that because proof of ascertainable loss does not require evidence of "an objective loss in market value," plaintiff's testimony that there was some loss in value between the car as represented and the car

actually received, albeit in an uncertain and unqualified amount, was sufficient evidence of "some ascertainable loss of money or property" to support the jury's $200 statutory damage award. *Id*. at 137.

In *Simonsen*, the Oregon Court of Appeals upheld the verdict granting rescission to plaintiff on her UTPA claim even though the jury found that the difference between the car as represented and actually received was $0. The court held the "plaintiff must be understood to have established 'ascertainable loss' in the loss of the value of the advantageous bargain that was represented in the sale of the vehicle." 290 Or. App. at 81. The court held that the jury "concluded frankly that, in terms of *market value*, plaintiff got that for which he paid," but it "also confirmed that plaintiff received a car with undisclosed material defects—a car that was not the better bargain that defendant had represented," and it was therefore appropriate for the trial court "to imply a finding of difference between the advantageous bargain promised—something better than the market price—and the troubled car actually delivered, thereby serving to justify rescission under ORS 646.638(1)." *Id*. at 92.

Defendant argues that plaintiffs cannot establish a "diminished value" loss because plaintiffs "cannot convert potential future costs— paying increased rent in future leases or incurring moving expenses— into an ascertainable loss that has already occurred." Doc. 16 at 31. For

this argument defendant relies on the Oregon Supreme Court's decision in *Paul v. Providence Health System-Oregon*, 351 Or. 587 (2012). However, *Paul* is inapposite. In *Paul*, the court found that the costs that the plaintiffs incurred to "prevent or mitigate the possible future use or disclosure of their confidential information by a third party," resulting from the displacement of their sensitive personal information, was "not the kind of loss compensable under the UTPA, because the expenditure is not based on any present harm to plaintiffs' economic interests. There is no indication that the UTPA was intended to protect against such speculative losses as the *risk* of identity theft." *Id.* at 603 (emphasis in original).

First unlike in *Paul*, here plaintiffs have suffered more than a *risk* of future harm caused by defendant's misrepresentations and omissions, because defendant's 1/1/21 letter makes clear that plaintiffs will only "have three more years of affordable housing status rent," and "[a]fter the three years the rent will raise to market rent." Doc. 15 ¶ 26. The letter acknowledges that this is a "big change." A big "change" indeed, and the disclosure of which establishes that the evaporation of the affordable long-term tenancies represented to plaintiffs by defendant is not just a future *risk*—it is an impending reality. *Id.* ¶ 27. Second, unlike the plaintiffs in *Paul*, here plaintiffs are not seeking the inevitable increased rental or moving costs as recoverable damages, or asserting

that these costs are ascertainable losses in themselves. Instead, plaintiffs reference these potential costs as one way to show that what they received is worth less than what was represented by defendant.

The Oregon Court of Appeals decision in *Feitler* helps to illustrate this principle. In that case, the defendant sold the plaintiff drawings, falsely representing that the drawings were a complete set, when in fact he knew there were four additional drawings in the set. The plaintiff alleged that the defendant had violated ORS 646.608(1)(e) by misrepresenting the "exclusivity" of the drawings. In revering the trial court's dismissal finding no ascertainable loss, the court reiterated that ascertainable loss under the UTPA is "amorphous," and held that "[w]hatever the extreme contours of that concept, the loss here fell well within its limits. At the very least, to obtain the promised feature of exclusivity, plaintiff would have to purchase the drawings that defendant withheld," and noted the price of one of the drawings as a reference point. *Id*. at 712-13.

Here, in line with the hypothetically incurred costs of purchasing the excluded drawings in the series to show diminished value loss in *Feitler*, in order to obtain what was falsely promised to them—a long-term tenancy in a senior community that they can afford on their fixed incomes—plaintiffs will necessarily have to incur either increased rental costs at Woodspring or costs to relocate affordable replacement housing

(if they can find it). Therefore, these yet-to-be-incurred but inevitable costs are relevant as one way to show the jury that there is an observable difference in value between what plaintiffs were promised and what plaintiffs actually received and the loss in value of the benefit of their bargain as a result of defendant's omission and misrepresentations. *See also Intel Corp.*, 2020 U.S. Dist. LEXIS 53829, at *87; *Simonsen*, 290 Or. App. at 92.

Defendant also argues that plaintiffs cannot establish a "diminished value" loss because "when there is no price difference for a good with a particular feature and the same good without it, a plaintiff has not paid any extra for the represented quality that the plaintiff did not receive." Doc. 16 at 38-39 (citing *Pearson*, 358 Or. at 122). Defendant's attempt to hitch plaintiffs' claims to the claims in *Pearson* in order to attack plaintiffs' ascertainable allegations in this case misses the mark. The *Pearson* class plaintiffs alleged misrepresentations about the supposed feature of "lightness" of the defendant's supposed light cigarettes, which they alleged were not actually more inherently "light" than the defendant's non-light version. *Pearson*, 358 Or. at 119. In upholding the trial court's findings that plaintiffs did not establish their "diminished value" theory, the court explained: "[a] good that is *consumed or otherwise extinguished or depleted* in its use is not subject to the same analysis. For goods of those kinds, under a diminished value

theory, a purchaser can suffer an economic loss only in the form of having paid too much at the time of purchase. And when, as here, the good is the same price with or without a represented feature, no logical inference of economic loss arises." *Pearson*, 358 Or. at 123; *see also Silva II*, 2017 U.S. Dist. LEXIS 179362, at *15 ("*Pearson* provides that for *consumable goods*, a purchaser relying on a diminished value theory of ascertainable loss in an UTPA claim, suffers an economic loss only in the form of having paid too much at the time of purchase." (emphasis added)). This case concerns neither (1) the purchase of consumable goods *nor* (2) a good which has the same exact price with or without the misrepresented features. Therefore, the "diminished value" loss limitations described in *Pearson* are not applicable, and plaintiffs do not need to show they paid more than they should have for their tenancies compared to what they could have paid for a similar tenancy at the time of their purchase to show they suffered a loss.

Instead, plaintiffs merely need to show that as a result of defendant's omissions and misrepresentations they ended up with tenancies that are worth less than they were represented or otherwise "allege facts showing 'some loss.'" However, they do "not have to allege facts showing the specific amount of loss to withstand a motion to dismiss." *Silva II*, 2017 U.S. Dist. LEXIS 179362, at *22. Such a showing can include loss in value of the benefit of the bargain falsely represented

**RESPONSE TO MOTION TO DISMISS – Page 51 of 58**

by defendant through its omissions and misrepresentations. *See Simonsen*, 290 Or. App. at 92. Here, a loss of value, including a loss of value of the benefits of the (supposed) bargain, can readily be inferred by the jury because it is axiomatic that a long-term tenancy in a senior-only fixed-income retirement community that caps rental increases below market rate (what plaintiffs were deceived into believing they had bargained for) has more economic value than a tenancy that will have uncapped rental rates set to market value (what plaintiffs actually received).

Because plaintiffs allege that they suffered "some loss" in value between what was represented to them and what they actually received, which is "capable of being discovered, observed or established," they have sufficiently alleged a viable "diminished value" loss as a result of defendant's violations of ORS 646.608. *Scott*, 267 Or. at 516; *Feitler*, 170 Or. App. at 712; *Simonsen*, 290 Or. App. at 92; *Intel Corp.*, 2020 U.S. Dist. LEXIS 53829, at *87.

### 5.2. Plaintiffs also adequately allege a "refund of purchase price" loss.

One form of ascertainable loss articulated in the caselaw is "refund of the purchase price"[5] loss: where "a purchaser shows that, without the misrepresentation, the purchaser would not have bought

_____

[5] Plaintiffs subsequently refer to this ascertainable loss theory in shorthand as "refund" loss for ease of reference.

**RESPONSE TO MOTION TO DISMISS – Page 52 of 58**

the product and thus should be entitled to a refund." *Pearson*, 358 Or. at 126; *see also id.* at 142-43 (Walters, J., concurring) (explaining that under the UTPA, a plaintiff "who can show that he or she would not have purchased a product but for the seller's misrepresentations about that product, may seek return of the money paid for the product irrespective of its market value"); *Walters v. Vitamin Shoppe Indus.*, 701 F. App'x 667, 670 (9th Cir. 2017) (reversing district court's dismissal of the plaintiff's UTPA claim for failure to allege a cognizable ascertainable loss, holding that the plaintiff adequately pled a viable UTPA claim alleging that defendant "made representations that violate Or. Rev. Stat. § 646.608, and that he would not have purchased the product but for the alleged misrepresentations. The ascertainable loss, therefore, is the monetary value of a product that [plaintiff] would not otherwise have bought. Because [plaintiff] alleges that he relied on [defendant's] representations, he sufficiently pleaded that [defendant's] conduct caused his loss.").

Here plaintiffs' allegations that they relied on defendant's omissions and misrepresentations when making the choice to move into and pay rent at Woodspring, and that they would not have chosen to do so if defendant had not withheld the truth about Woodspring's impending transformation, are equally sufficient. Doc. 15 ¶¶ 14-25, 27, 29, 31-35.

**RESPONSE TO MOTION TO DISMISS – Page 53 of 58**

Defendant also argues that the plaintiffs who entered into new leases after receiving the 1/1/21 letter, or whose leases terminated before the 1/1/21 letter, or one of the plaintiffs who chose to relocate after the 1/2/21 letter, cannot have suffered a "refund of the purchase price" loss as a matter of law. These arguments are incorrect. *Inter alia*, defendant appears to confuse ascertainable loss with a UTPA plaintiff's election to pursue certain amounts of actual damages equating to those losses, and mischaracterizes the statements in the 1/1/21 letter as the unlawful misrepresentation at issue. Again, as is properly framed in the complaint, defendant violated the listed prohibitions of the UTPA when it intentionally failed to disclose that the rent and senior occupancy restrictions were going to change *when plaintiffs made their choice to move into* Woodspring. Plaintiffs reasonably believed they had chosen a senior and rent-restricted retirement community that would stay that way—with minimal inflationary rent increases—for the long term so they could live out their retirement years on their fixed incomes without having to relocate.

Only when plaintiffs discovered via the 1/1/21 letter did they then become aware of what defendant had known all along: the basis on which plaintiffs chose to relocate their lives to Woodspring turned out to be false. The 1/1/21 letter is *not* the unlawful misrepresentation—it the reason that plaintiffs now know that they were unlawfully misled by

defendant's omission and misrepresentation. Whether plaintiffs chose to renew (or not renew) their tenancies at Woodspring *after* learning that defendant deceived them in the 1/1/21 letter has no bearing on whether they would have chosen to move into Woodspring in the first place. The fact that plaintiffs opted to renew their tenancies at Woodspring after learning that they had been duped merely underscores that it is extremely difficult for seniors in plaintiffs' circumstances to pack up and relocate, especially given the rapidly decreasing availability of any suitable and affordable alternative housing in this area. These subsequent personal choices do not moot or rectify defendant's previous unlawful conduct, or negate plaintiffs' "refund" losses suffered as a result of defendant's UTPA violations when plaintiffs paid money to defendant for a leasehold they otherwise would have entered into. The precise amount of actual damages that each plaintiff can prove were caused by defendant's violations—if they ultimately decide to request any actual damages at all—is irrelevant to whether plaintiffs can show that they suffered a viable "refund" loss in some amount.

Defendant also attempts to create a new optional-consumer-goods-only limitation to the "refund" loss that thwarts the mandate to interpret ascertainable loss broadly; to wit, that a "refund loss" cannot exist where a plaintiff "necessarily would have purchased a substitute." Doc. 16 at 38. This fictional exception has no basis in the law—which is

the reason defendant cites none. A plaintiff need not show that they would or would not have purchased a substitute in order to show a "refund" loss; they merely need to show they "would not have purchased the product but for the alleged" UTPA violations (i.e., they acted in reliance on defendant's unlawful conduct make their purchase). *Walters*, 701 F. App'x at 670; *Silva II,* 2017 U.S. Dist. LEXIS 179362, at *28. Plaintiffs have adequately stated a viable "refund" loss supported by the caselaw because they would not have chosen to move into Woodspring, and thus paid any monies to defendant, but for defendant's willful omissions, misrepresentations, and causing confusion in violation of ORS 646.608.

## CONCLUSION

For all these reasons, defendant's motion to dismiss should be denied. In the event the motion is granted in any respect, plaintiffs should be afforded an opportunity to further amend in accordance with the Court's findings.

January 20, 2022.

**RESPECTFULLY FILED BY,**

s/ Kelly D. Jones
**Kelly D. Jones, OSB No. 074217**
Of Attorneys for Plaintiffs
The Law Office of Kelly D. Jones
819 SE Morrison St., Suite 255
Portland, Oregon 97214
kellydonovanjones@gmail.com
Direct 503-846-4329

**CERTIFICATE OF COMPLIANCE**

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 10,888 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table or authorities, signature block, exhibits and any certificates of counsel.

January 20, 2022

**RESPECTFULLY FILED,**

s/ Kelly D. Jones
**Kelly D. Jones, OSB No. 074217**
Of Attorneys for Plaintiffs
The Law Office of Kelly D. Jones
819 SE Morrison St., Suite 255
Portland, Oregon 97214
kellydonovanjones@gmail.com
Direct 503-846-4329

**RESPONSE TO MOTION TO DISMISS – Page 57 of 58**

## CERTIFICATE OF SERVICE

I caused this document to be served on all parties through the CM/ECF system.

January 20, 2022

s/ Kelly D. Jones
**Kelly D. Jones, OSB No. 074217**
Of Attorneys for Plaintiffs
The Law Office of Kelly D. Jones
819 SE Morrison St., Suite 255
Portland, Oregon 97214
kellydonovanjones@gmail.com
Direct 503-846-4329

s/ Kevin Mehrens
Kevin Mehrens, OSB No. 074589
Of Attorneys for Plaintiffs
Law Office of Kevin Mehrens
319 SW Washington, Ste. 614
Portland, OR 97204
kevin.mehrens@gmail.com
Direct 503-381-1918