**KEVIN H. KONO**, OSB #023528
kevinkono@dwt.com
**CHRIS SWIFT**, OSB #154291
chrisswift@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 SW Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
Telephone: (503) 241-2300
Facsimile: (503) 778-5299

**FREDERICK B. BURNSIDE**, OSB #096617
fredburnside@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Telephone: (206) 757-8016
Facsimile: (206) 757-7700

Attorneys for Defendant
Mission Rock Residential LLC

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| GRETA IVIE; HEIDI JOHNSTONE; KAREN KEENAN; DONA ACTIS; SUSAN PURVINE; COY LAY; JAMES MILLER; SANDRA WILLIAMS; TERI STEVENS; RONALD MASON; ELIZABETH SMITH; SARA SANFORD, <br><br> PLAINTIFFS, <br><br> v. <br><br> **MISSION ROCK RESIDENTIAL LLC** dba **WOODSPRING APARTMENTS**, <br><br> DEFENDANT. | Case No. 3:21-cv-01122-SB <br><br> **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** <br><br> **Request for Oral Argument** |

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...........................................................................................1

II.  ARGUMENT ...............................................................................................2

A.  Plaintiffs' claim depends on imposing notice requirements that do not
exist under state or federal law. ................................................................ 2

B.  The ORLTA—Not the UTPA—Covers Mission Rock's Alleged Conduct. ......... 3

1.  Plaintiffs' SAC incorporates their leases by reference. ........................... 3

2.  Plaintiffs' claims rest on "conduct covered by the" ORLTA and
thus fall outside the UTPA's scope. .......................................................4

C.  Plaintiffs Cannot State a Claim Under the UTPA. ............................................ 9

1.  Plaintiffs must plead their UTPA claim with particularity under
Rule 9(b). ........................................................................................... 9

2.  Plaintiffs fail to allege any misrepresentations that satisfy their
burden under either pleading standard. ................................................ 12

a.  Plaintiffs cannot state a claim based on their
misrepresentation-by-omission allegations. ................................ 12

b.  Plaintiffs cannot state a claim based on documents they
never saw or relied upon. .......................................................... 15

c.  Plaintiffs cannot state a claim based on statements that
were correct at the time they were stated. ................................... 17

d.  Plaintiffs cannot state a claim based on unidentified
statements from unidentified sources at unidentified times. ......... 18

3.  Plaintiffs do not state a claim under any of the cited UTPA
provisions. ......................................................................................... 20

a.  Plaintiffs fail to state a claim under ORS 646.608(1)(b). ............ 20

b.  Plaintiffs fail to state a claim under ORS 646.608(1)(e). ............ 21

c.  Plaintiffs fail to state a claim under ORS 646.608(1)(g). ............ 22

d.  Plaintiffs fail to state a claim under ORS 646.608(1)(i). ............. 23

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

            e.    Plaintiffs fail to state a claim under ORS 646.608(1)(t). ............ 24

    4.    Plaintiffs fail to adequately allege an ascertainable loss......................... 25

            a.    Plaintiffs do not allege ascertainable loss under a "refund of the purchase price" theory. .......................................................... 26

            b.    Plaintiffs do not sufficiently allege "diminished value" ascertainable loss. ....................................................................... 28

III.    CONCLUSION.................................................................................................30

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Andriesian v. Cosmetic Dermatology, Inc.*,
    2015 WL 1638729 (D. Or. Mar. 3, 2015), *report and recommendation adopted,* 2015 WL 1925944 (D. Or. Apr. 28, 2015) ........................................................23, 25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................12, 20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................12, 18, 20

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011) ........................................................................................12

*Coto Settlement v. Eisenberg*,
    593 F.3d 1031 (9th Cir. 2010) ........................................................................3

*In re iPhone 4s Consumer Litig.*,
    637 F. App'x 414 (9th Cir. 2016) ........................................................................12

*Kearney v. Equilon Enters., LLC*,
    65 F. Supp. 3d 1033 (D. Or. 2014) ........................................................................10, 11

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ........................................................................9, 11, 13

*Marolda v. Symantec Corp.*,
    672 F. Supp. 2d 992 (N.D. Cal. 2009) ........................................................................10, 13

*Martell v. Gen. Motors LLC*,
    492 F. Supp. 3d 1131 (D. Or. 2020) ........................................................................9, 11, 13

*McKie v. v. Sears Prot. Co.*,
    2011 WL 1587112 (D. Or. Feb. 22, 2011), *report and recommendation adopted*, 2011 WL 1587103 (D. Or. Apr. 26, 2011) ........................................................................11

*Silva v. Unique Beverage Co., LLC*,
    2017 WL 2642286 (D. Or. June 15, 2017) ........................................................................10, 11

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ........................................................................18

4875-9013-8382v.12 0113870-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*St. Vincent de Paul Soc'y of Lane Cnty. v. Culpepper*,
   2018 WL 279344 (D. Or. Jan. 2, 2018) ...............................................................8, 26

*Vess v. Ciba–Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ...............................................................12, 17, 19

*Vinci v. Hyundai Motor Am.*,
   2018 WL 6136828 (C. D. Cal. Apr. 10, 2018) ...............................................................10

*Vivendi SA v. T-Mobile USA Inc.*,
   586 F.3d 689 (9th Cir. 2009) ...............................................................20

*Voltage Pictures, LLC v. Revitch*,
   2015 WL 404599 (D. Or. Jan. 23, 2015) ...............................................................10, 11

*Willis v. Debt Care, USA, Inc.*,
   2011 WL 7121288 (D. Or. Oct. 24, 2011) ...............................................................11

**State Cases**

*Caldwell v. Pop's Homes, Inc.*,
   54 Or. App. 104 (1981) ...............................................................14, 21, 22, 24

*Conway v. Pacific Univ.*,
   324 Or. 231 (1996) ...............................................................14

*Gebrayel v. Transamerica Title Ins. Co.*,
   132 Or. App. 271 (1995) ...............................................................13

*Gordon v. Rosenblum*,
   361 Or. 352 (2017) ...............................................................21

*Gorzeman v. Thompson*,
   162 Or. App. 84 (1999) ...............................................................14

*Hendgen v. Forest Grove Cmty. Hosp.*,
   98 Or. App. 675 (1989) ...............................................................8

*Hoffer v. Szumski*,
   129 Or. App. 7 (1994) ...............................................................8

*Moore Excavating, Inc. v. Consol. Supply Co.*,
   186 Or. App. 324 (2003) ...............................................................14

*Nordbye v. BRCP/GM Ellington*,
   246 Or. App. 209 (2011) ...............................................................2

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax
4875-9013-8382v.12 0113870-000002

*Paul v. Providence Health Sys.-Oregon*,
    351 Or. 587 (2012)...........................................................................................................26

*Pearson v. Philip Morris, Inc.*,
    358 Or. 88 (2015) .................................................................................................. *passim*

*Scott v. Western Intern. Surplus Sales, Inc.*,
    267 Or. 512 (1973)...........................................................................................................30

*Simonsen v. Sandy River Auto, LLC*,
    290 Or. App. 80 (2018)....................................................................................................29

*Spady v. Graves*,
    307 Or. 483 (1989).....................................................................................................14, 15

*State ex rel. Rosenblum v. Johnson & Johnson*,
    275 Or. App. 23 (2015)....................................................................................................22

*Strawn v. Farmers Ins. Co. of Or.*,
    350 Or. 336 (2011), *adh'd to on recons*, 350 Or. 521 (2011)................................................10

*Weigel v. Ron Tonkin Chevrolet Co.*,
    298 Or. 127 (1984)...........................................................................................................30

**State Statutes**

Or Laws 1971, Chapter 744, § 13(5)-(6) ...........................................................................8

Or Laws 1973, Chapter 235, § 5(6) ...................................................................................8

ORS 90.320..............................................................................................................15

ORS 90.323............................................................................................................5, 6

ORS 90.323(3) ............................................................................................................5

ORS 90.323(3)(c)........................................................................................................5

ORS 90.323(8) ............................................................................................................5

ORS 90.360..............................................................................................................6

ORS 90.390(1) ............................................................................................................6

ORS 93.643............................................................................................................15

ORS 174.010............................................................................................................7

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

ORS 646.605(6)(b)(A) ....................................................................................................3

ORS 646.608(1)(i) ...................................................................................................23, 24

ORS 646.608(1)(b) ..................................................................................................20, 21

ORS 646.608(1)(e)..........................................................................................21, 22, 23, 25

ORS 646.608(1)(g) ..................................................................................................22, 23

ORS 646.608(1)(t) ...................................................................................................24, 25

ORS 646.638(1) ............................................................................................................25

ORS 646.638(7) ...........................................................................................................7, 8

ORS 659A.421 ..............................................................................................................20

ORS 659A.421(7)(a) ......................................................................................................6

ORS 659A.421(7)(b)(C) .................................................................................................6

ORS Chapter 90 ..........................................................................................................3, 7

**Rules**

Fed. R. Civ. P. 8 .....................................................................................................17, 19

Fed. R. Civ. P. 8(a)(2) ..................................................................................................12

Fed. R. Civ. P. 9(b) ............................................................................................... *passim*

**Other Authorities**

*Webster's Third New Int'l Dictionary* (unabridged ed. 1993) .......................................7

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

4875-9013-8382v.12 0113870-000002

# I.    INTRODUCTION

Plaintiffs reframe their claims in response to Mission Rock's Motion to Dismiss.  They now claim that despite Mission Rock giving ***three years of advance notice*** of the end of rent restrictions under the Low Income Housing Tax Credit ("LIHTC") program, Mission Rock somehow violated the Unlawful Trade Practices Act ("UTPA") by not providing the four to eight years' notice Plaintiffs would have preferred.  But Plaintiffs identify no source for that duty because none exists.  Mission Rock complied with every state and federal regulation, provided far more notice than any law requires, and had no duty to disclose information about future changes more than three years in advance.  In short, Plaintiffs seek to impose liability based on a non-existent notice requirement.  The same reasoning applies to Plaintiffs' "senior housing" allegations.

Plaintiffs now concede Mission Rock complied with the LIHTC program, the terms of Plaintiffs' leases, and the Oregon Residential Landlord Tenant Act ("ORLTA").  Opp. at 14, 27-28.  Their Second Amended Complaint ("SAC") likewise abandons its previous request for injunctive relief—prohibiting Mission Rock from ever raising rents—and Plaintiffs also now concede that *any* actual damages are "yet-to-be-incurred" and not presently requested.  *See id.* at 49-50, 55.

Plaintiffs concede they never saw or relied on several of the alleged representations.  Opp. at 35, 38.  More telling is Plaintiffs' studied silence as to Mission Rock's arguments that the remaining alleged statements were accurate and that it made no representations that Woodspring Apartments' age and rent restrictions would remain in perpetuity.  Plaintiffs do not deny that the details of the LIHTC program were publicly recorded, that Plaintiffs thus were on constructive notice of those details, and that each one-year lease agreement notified them that their rent could increase if they chose to enter future one-year leases.  Instead, Plaintiffs retreat to arguing that "the heart" of their claim is that Mission Rock's disclosures of yet-to-occur rent increases were insufficient.  Opp. at 38.  After these concessions and evasions, all that is left of

Page 1 - DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Plaintiffs' SAC is a claim for statutory damages based on the nondisclosure of information that Mission Rock had no duty to disclose. Plaintiffs cannot state a claim on this basis.

Plaintiffs' claim fails for additional reasons, however.

*First*, the UTPA does not apply to claims based on conduct the ORLTA covers, including the notice requirements for rent increases and the criteria for "housing for older persons."

*Second*, Rule 9(b)'s heightened standard applies to Plaintiffs' UTPA claims, but they fail to allege the "who, what, where, when, and how" of each alleged representation or omission.

*Third*, whatever the standard, Plaintiffs fail to identify any false representation or actionable omission that could establish any violation of the UTPA provisions Plaintiffs cite.

*Finally*, Plaintiffs challenge future conduct that has not caused "ascertainable losses."

## II.    ARGUMENT

### A.    Plaintiffs' claim depends on imposing notice requirements that do not exist under state or federal law.

Plaintiffs cannot state a claim based on nondisclosure of information Mission Rock had no duty to disclose. Plaintiffs improperly ask this Court to create a substantive housing policy imposing a new disclosure duty on Mission Rock. To disguise this request, Plaintiffs dismiss Mission Rock's discussion of the actual requirements under the LIHTC program and the ORLTA—which reflect the combined policy decisions of Congress, the Oregon legislature, the Internal Revenue Service, and the Oregon Department of Housing and Community Services—as "strawman arguments." Opp. at 17. It is true that Plaintiffs do not allege Mission Rock violated LIHTC regulations, because they cannot do so. If they could, Plaintiffs could avail themselves of the LIHTC program's private enforcement mechanism. *Nordbye v. BRCP/GM Ellington*, 246 Or. App. 209, 213 (2011) (tenants can enforce the LIHTC regulations in state court).

The LIHTC program is the federal program Plaintiffs admit they knew was in place in connection with Woodspring Apartments' low-income housing status. Opp. at 40 (admitting they knew "some form of government certified program" applied). The LIHTC program ensures

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Plaintiffs receive low-income housing rents until 2024 (if they renew their one-year leases).  And the LIHTC program's expiration in 2021 (effective as to rents in 2024) is what Plaintiffs say Mission Rock was obligated to disclose to them.  But nothing in the LIHTC program—or any other law—required Mission Rock to emphasize the eventual expiration of the program's restrictions (the details of which were publicly recorded) to Plaintiffs when they entered their initial one-year leases.  Plaintiffs want the Court to ignore Mission Rock's discussion because their manufactured disclosure obligation is contrary to the mandates of the LIHTC program.  Because the LIHTC already has disclosure obligations (which Mission Rock met), the Court should view any omissions-based UTPA claims through the lens of the LIHTC's requirements.

### B.     The ORLTA—Not the UTPA—Covers Mission Rock's Alleged Conduct.

Plaintiffs fail to state a claim because the UTPA does not apply to "conduct covered by [the ORLTA,] ORS chapter 90."  ORS 646.605(6)(b)(A) (excluding such conduct from the definition of "real estate" and thus from the UTPA).  This exclusion defeats Plaintiffs' age and rent restriction theories, regardless of how Plaintiffs now attempt to recharacterize them.

#### 1.     Plaintiffs' SAC incorporates their leases by reference.

Plaintiffs' SAC references Plaintiffs' leases at least five dozen times.  That is because the leases govern the landlord-tenant relationship on which Plaintiffs base their claim.  Plaintiffs allege they were induced to move to Woodspring Apartments—that is, to enter into a one-year lease—based on alleged misrepresentations about the very terms and premises the leases cover.  The SAC does not make a "mere mention" of the leases.  Opp. at 17 (quoting *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)).  *Every Plaintiff's claim* rests on allegations about a "residential property lease" that Plaintiffs allege "defendant advertised, negotiated, and sold" to each Plaintiff and then "serviced" as the property manager and that each Plaintiff signed because of what Plaintiffs allege "defendant led [them] to believe."  SAC, ¶¶ 14-25 (making those identical allegations as to each Plaintiff).

Page 3 - DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Despite this, Plaintiffs—while admitting a Complaint may incorporate documents by reference—argue the leases are not central to their claims and thus not incorporated by reference because "content of those leases is irrelevant." Opp. at 15-16. This is demonstrably untrue. If the leases said, for example, that the property participates in the LIHTC program and that the program would expire in 2021, even Plaintiffs must admit they could not claim that Mission Rock failed to disclose that information. Here, the one-year lease each Plaintiff signed provides—on a conspicuous page titled "Addendum for Units Participating in Government Regulated Affordable Housing Programs"—that "Landlord is participating in a government regulated affordable housing program." Mot. at Ex. 1, p. 13. Plaintiffs are free to argue about how that addendum and other lease content bear on their claim, but they cannot be heard to argue that the lease content is "irrelevant" when their entire SAC rests on allegations relating to inducements to enter into the very landlord-tenant relationship the leases govern. The SAC incorporates the leases by reference—including the addenda[1]—and Plaintiffs cannot avoid dismissal of their claims as covered by the ORLTA or otherwise failing to state a claim by asking the Court to ignore the foundational document on which their claims rest.

### 2. Plaintiffs' claims rest on "conduct covered by the" ORLTA and thus fall outside the UTPA's scope.

Plaintiffs cannot avoid the legislature's exclusion from the UTPA of "conduct covered by" the ORLTA by continuing to conflate their claims into a nonexistent category of "fixed-income senior housing" (the term the SAC actually uses) or "low-income senior housing" (the term Plaintiffs reintroduce in their response). Plaintiffs' claims have two parts: (1) rent, i.e., that their rent would remain subject to the LIHTC program in perpetuity (or at least until Plaintiffs

---

[1] Plaintiffs separately argue that "exhibits" to the lease are not referenced in the Complaint and thus are not incorporated by reference. Opp. at 16. First, the referenced documents are addenda to the leases, not "exhibits." Second, the addenda (and exhibits, were that an accurate description) unquestionably are part of the lease. *See, e.g.*, Mot. at Ex. 1, p 11 ("This Rental Agreement, *together with all Addendums*, constitutes the entire agreement of the parties and shall supersede and replace all prior agreements, representations, and/or warranties." (emphasis added)).

Page 4 - DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

"live[d] out their twilight years"); and (2) senior housing, i.e., that they would live out their

twilight years in a "seniors-only community."  SAC ¶¶ 14-25.  *These* claims fall squarely within

conduct the ORLTA covers, for several reasons.

First, the ORLTA governs the rent that may be charged under rental agreements,

including the amount by which landlords may increase rent and the disclosure requirements they

must follow before doing so.  In particular, ORS 90.323 caps annual rent increases and requires

90 days' notice before a landlord increases rent:

> (3) During any tenancy other than week-to-week, the landlord may not
> increase the rent:
>
> (a) During the first year after the tenancy begins.
>
> (b) At any time after the first year of the tenancy without giving the tenant
> written notice at least 90 days prior to the effective date of the rent
> increase.
>
> (c) During any 12-month period, in an amount greater than seven percent
> plus the consumer price index above the existing rent except as permitted
> under subsection (7) of this section.

ORS 90.323(3).  ORS 90.323(8) imposes significant penalties for violations of these provisions.

This statute covers the precise conduct—the disclosure of future rent increases—that

Plaintiffs challenge under their "fixed-income" theory.  Plaintiffs attempt to deny this by

claiming that the "gravamen" of the SAC "is that defendant knew for a certainty that it intended

to increase rent at the first time it was able."  Opp. at 27.  But even if a landlord entered into a

one-year lease while knowing "for a certainty" that it intended to charge a higher rent the

following year—"the first time it was able"—the landlord would still only need to provide 90

days' notice of the rent increase under the ORLTA.  Here, Mission Rock provided *three years'*

*notice* of its intent to begin charging the rent increases authorized under ORS 90.323(3)(c), far

more notice than ORS 90.323 or any other Oregon statute requires.  Mission Rock's alleged

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

conduct is "covered by" and compliant with the ORLTA. The UTPA therefore does not apply to that conduct, and Plaintiffs cannot state a claim based on these allegations.[2]

Second, Plaintiffs' "senior living" allegations fail for the same reason. Woodspring Apartments provides "housing for older persons" in compliance with ORS 90.390(1). That statute generally prohibits discrimination against tenants, but it incorporates an exception from ORS 659A.421(7)(a) that authorizes "familial status distinction, discrimination or restriction with respect to housing for older persons." For a property to qualify for this exception, "[a]t least 80 percent of the dwellings" must be "occupied by at least one person 55 years of age or older per unit[.]" ORS 659A.421(7)(b)(C). Whether characterized as "senior apartments," "seniors only," or a "55 and Better Community," SAC ¶¶ 3, 11, 14-25, the *only* way to provide "housing for older persons" in Oregon is through conduct covered by the ORLTA.

Plaintiffs dismiss the ORLTA as merely providing an affirmative defense to discrimination claims. Opp. at 27-28. This is incorrect. The ORLTA (a) authorizes the "55 and Better Community" Plaintiffs claim to seek; (b) governs Mission Rock's policies for "housing for older persons"; and (c) provides the only basis for determining whether Mission Rock delivered the "senior apartments" it allegedly advertised. Because Plaintiffs' claim challenges conduct covered by the ORLTA, that claim falls outside the scope of the UTPA.

To escape these conclusions, Plaintiffs urge the Court to rewrite the express exclusion of "conduct covered by" the ORLTA so that it excludes only "[l]andlord misconduct which would

---

[2] This would still be true even if Plaintiffs alleged conduct that violated the ORLTA (which they do not). For instance, if a landlord advertised and rented a unit at a particular rental rate but then attempted to charge more than the rental agreement permitted, Plaintiffs could assert a claim against the landlord under ORS 90.360 (tenant remedies for noncompliance with rental agreement)—but they still could not sue under the UTPA. Plaintiffs could similarly bring an ORLTA claim (but not a UTPA claim) if a landlord failed to provide 90 days' notice of rent increases or raised rents by more than the permitted amount under ORS 90.323. Here, Plaintiffs cannot allege that Mission Rock committed any of these violations, so they instead base their claim on receiving only three years' notice of changes in the potential terms of future transactions that Plaintiffs have not entered (and may never enter). This conduct is covered by the ORLTA, but it cannot support a claim under either law.

Page 6 - DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

otherwise constitute a violation of the UTPA" where "the legislature has provided a remedy for that misconduct under Chapter 90." Opp. at 24. Plaintiffs then argue the ORLTA does not provide remedies for false advertising or misrepresentations, so the exclusion does not apply to any UTPA claims alleging false advertising or misrepresentations—even if the ORLTA directly regulates the conduct referenced in the alleged false advertising or misrepresentations. Opp. at 26. Thus, even though the ORLTA requires only 90 days' notice of rent increases (and provides remedies for failing to provide that notice), Plaintiffs contend that by characterizing the failure to provide *eight years'* notice as a "misrepresentation by omission," that conduct ceases to be "covered by" the ORLTA and falls outside the UTPA exclusion. This interpretation of "covered by" has no basis in the statutory text, and it ignores the importance of what the alleged misrepresentation or "false advertising" is *about*.

When construing a statute, courts must "give effect to all" provisions and not "omit what has been inserted[.]" ORS 174.010. Doing so requires construing the exclusion to at least cover conduct directly regulated by the ORLTA. *See, e.g.*, *Webster's Third New Int'l Dictionary* 524 (unabridged ed. 2002) (defining "cover" most relevantly as "to treat or deal with" or "to have with or scope enough to include or embrace"). Even if some theoretical landlord misrepresentation about some other subject might not fall under the ORLTA, rent, rent increases (or absence of increases), and senior housing are all matters squarely "covered by" the ORLTA, and, thus, any alleged misrepresentation about those matters also must be "covered by" the ORLTA.

Plaintiffs assert that the "UTPA expressly contemplates claims by tenants against their landlords," citing ORS 646.638(7). Opp. at 24. Here too, Plaintiffs are incorrect. ORS 646.638(7) broadly permits UTPA counterclaims to be asserted after the one-year statute of limitations has run; it is not "an exemption for counterclaims brought by tenants against landlords," as Plaintiffs misleadingly claim. *Id.* In fact, when the UTPA was enacted in 1971, it applied only to goods and services. At that time, the statute provided:

Page 7 - DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

> (5) Actions brought under this section shall be commenced within one
> year . . . .
>
> (6) Notwithstanding subsection (5) of this section, in any action brought
> by a seller or lessor against a purchaser or lessee of goods or services,
> such purchaser or lessee may assert any counterclaim he has arising out of
> a violation of . . . this 1971 Act.

Or Laws 1971, ch 744, § 13(5)-(6).  Far from creating an exemption "for counterclaims brought

by tenants," this provision did not apply to real estate transactions at all.  In 1973, the UTPA was

expanded to cover certain real estate transactions, and this provision was updated to refer to "real

estate, goods or services."  Or Laws 1973, ch 235, § 5(6).  Then, in 1977, the legislature

amended the definition of "real estate" to *exclude* "conduct covered by" the ORLTA.  At no time

has ORS 646.638(7) "expressly contemplate[d] claims by tenants against their landlords," and

today this statute—like the rest of the UTPA—expressly *excludes* such claims where they arise

from conduct covered by the ORLTA.

    Nor has the Oregon Court of Appeals "adopted [Plaintiffs'] approach" as Plaintiffs claim.

Opp. at 24 (citing *Hoffer v. Szumski*, 129 Or. App. 7, 10-11 (1994)).  *Hoffer* examined only

whether the forceable entry and wrongful detainer ("FED") statutes permitted defendants to

plead counterclaims and whether UTPA claims could be asserted as counterclaims.  The court

did not consider whether defendant's counterclaim was viable under the UTPA—indeed, the

court expressly declined to consider the sufficiency of the pleading.  *Hoffer*, 129 Or. App. at 11-

12 (citing *Hendgen v. Forest Grove Cmty. Hosp.*, 98 Or. App. 675, 678 (1989) (declining to

reverse despite pleading deficiencies because courts are "reluctant to base a decision against an

appealing plaintiff on insufficiency of the pleadings, if that was not the basis for the trial court's

ruling")).  The only other case Plaintiffs cite also examined only whether counterclaims are

available in FED cases.  *St. Vincent de Paul Soc'y of Lane Cnty. v. Culpepper*, 2018 WL 279344,

at *3 (D. Or. Jan. 2, 2018).  These cases provide no support for Plaintiffs' contention that

conduct directly regulated by the ORLTA is not "covered by" that law.

DAVIS WRIGHT TREMAINE LLP
4875-9013-8382v.12 0113870-000002          1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Mission Rock has complied with the ORLTA in every transaction with every Plaintiff. Plaintiffs do not—and cannot—allege otherwise.  The UTPA does not allow conduct covered and permitted by the ORLTA to be refashioned into a UTPA claim.  Because Plaintiffs' UTPA claims challenge conduct covered by the ORLTA, they are excluded from the UTPA, and their claims fail.

### C.    Plaintiffs Cannot State a Claim Under the UTPA.

Even if Plaintiffs' claims were within the UTPA's scope, those claims would still fail. As Mission Rock previously showed:

- Plaintiffs' claims sound in fraud and are subject to Rule 9(b)'s heightened pleading standard;

- Plaintiffs fail to state their claims with particularity or allege a plausible violation of any of the cited UTPA provisions; and

- Plaintiffs fail to sufficiently allege any ascertainable loss caused by Mission Rock's alleged conduct.

In their response, Plaintiffs fail to rebut ***any*** of these arguments.

### 1.    Plaintiffs must plead their UTPA claim with particularity under Rule 9(b).

Plaintiffs' response to Mission Rock's Rule 9(b) argument misses the fundamental point that application of Rule 9(b) depends on whether the plaintiff's UTPA claim alleges a fraudulent course of conduct.  Mission Rock has never argued that Rule 9(b) applies to all UTPA claims, and it recognizes that some cases—analyzing the specific allegations before the particular court—decline to apply Rule 9(b)'s requirements.  But Rule 9(b)'s heightened pleading standard does apply to UTPA claims where, as here, plaintiffs allege "a unified course of fraudulent conduct" that includes each of the "elements of fraud."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *see also Martell v. Gen. Motors LLC*, 492 F. Supp. 3d 1131, 1145-46 (D. Or. 2020) (stating "Rule 9(b) has been applied to state law unfair trade claims," and

Page 9 - DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

4875-9013-8382v.12 0113870-000002

dismissing Oregon UTPA claim that was "too conclusory and vague to satisfy Rule 9(b)").  The elements of fraud are:

> [1] the defendant made a material misrepresentation that was false; [2] the defendant did so knowing that the representation was false; [3] the defendant intended the plaintiff to rely on the misrepresentation; [4] the plaintiff justifiably relied on the misrepresentation; and [5] the plaintiff was damaged as a result of that reliance.

*Strawn v. Farmers Ins. Co. of Or.*, 350 Or. 336, 351-52 (2011), *adh'd to on recons*, 350 Or. 521 (2011).  If the elements of fraud "are alleged with respect to an event invoked time and again in the complaint, each cause of action that rests on the factual basis of that event will become part of a unified course of fraudulent conduct."  *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1000 (N.D. Cal. 2009) (citing *Kearns*, 567 F.3d at 1126).  "If improperly pleaded, the facts allegedly constituting fraud are stripped from each cause of action that invokes them."  *Id.*

Plaintiffs allege each element of fraud in their UTPA claim, as Mission Rock previously showed.  Mot. at 17.  In response, Plaintiffs *do not deny* that they allege each of these elements (albeit insufficiently) or that their UTPA claim is based on a "unified course of fraudulent conduct."  This alone establishes that Plaintiffs' claims sound in fraud and they must plead them with particularity.  *See, e.g.*, *Kearney v. Equilon Enters., LLC*, 65 F. Supp. 3d 1033, 1042-43 (D. Or. 2014) (comparing allegations to fraud elements and concluding Rule 9(b) applied to UTPA claim); *Vinci v. Hyundai Motor Am.*, 2018 WL 6136828, *12 (C. D. Cal. Apr. 10, 2018) (holding Rule 9(b) applied to fraudulent nondisclosure UTPA claim); *Voltage Pictures, LLC v. Revitch*, 2015 WL 404599, *3 (D. Or. Jan. 23, 2015) (holding Rule 9(b) applied to UTPA claim).

Rather than respond to Mission Rock's arguments, Plaintiffs cite cases that declined to apply Rule 9(b) to UTPA claims and then urge the Court to conclude that Rule 9(b) never applies to UTPA claims because "an Oregon UTPA claim and an Oregon common law fraud claim remain distinct."  *Silva v. Unique Beverage Co., LLC*, 2017 WL 2642286, *13 (D. Or. June 15,

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

2017).[3]  But each case Plaintiffs cite addressed UTPA claims that did not sound in fraud—unlike Plaintiffs' claims here.  For example, in *McKie v. v. Sears Prot. Co.*, the court held that the UTPA theories the plaintiff asserted did not include the fraud elements of reliance or scienter. 2011 WL 1587112, at *11 (D. Or. Feb. 22, 2011), *report and recommendation adopted*, 2011 WL 1587103 (D. Or. Apr. 26, 2011); *see also Willis v. Debt Care, USA, Inc.*, 2011 WL 7121288, at *10 (D. Or. Oct. 24, 2011) (same); *Silva*, 2017 WL 2642286, at *13 (same).[4]

Here, Plaintiffs allege both scienter and reliance (as their particular UTPA claims require), along with every other element of fraud.  Specifically, Plaintiffs allege Mission Rock "knew that the property would not continue to be an apartment complex exclusively for fixed-income seniors, and defendant and the property owner intentionally omitted this information from plaintiffs…."  SAC, ¶ 27.  Plaintiffs allege Mission Rock misrepresented and omitted this information "to induce [Plaintiffs] to enter into a residential property lease at Woodspring Apartments."  *Id.*  And Plaintiffs allege that they entered their initial leases "in reliance on defendant's affirmative representations and omissions," *id.* ¶¶ 14-25, and "would not have chosen to move into Woodspring Apartments and thus would not have paid for their residential property lease at Woodspring Apartments" but for those alleged misrepresentations, *id.* ¶¶ 31-35. Each Plaintiff makes these identical allegations.  Plaintiffs allege "a unified course of fraudulent conduct," and Plaintiffs' UTPA claim sounds in fraud and is subject to Rule 9(b).

---

[3] Plaintiffs also argue this Court should follow "in-district" cases rather than the Ninth Circuit's decision in *Kearns* or the other cases Mission Rock cites.  Of course, Mission Rock also cites "in-district cases," and Plaintiffs cannot explain why the Court should ignore those.  *See, e.g.*, *Kearney*, 65 F. Supp. 3d at 1042-43; *Voltage Pictures*, 2015 WL 404599, at *3; *Martell*, 492 F. Supp. 3d at 1145-46.

[4] Plaintiffs accuse Mission Rock of misreading *Silva* because it included a UTPA claim premised on a "refund of the purchase price" theory, which requires proof of reliance.  Opp. at 33. Plaintiffs fail to mention that before addressing the applicability of Rule 9(b), the court in *Silva* dismissed that theory because the plaintiffs failed to allege reliance.  2017 WL 2642286, at *12.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

### 2. Plaintiffs fail to allege any misrepresentations that satisfy their burden under either pleading standard.

Plaintiffs' UTPA claim is "grounded in fraud" and must be dismissed if it fails to satisfy both the plausibility standard and the heightened pleading requirement of Rule 9(b). *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1102-05 (9th Cir. 2003). "In pleading fraud or misrepresentation a plaintiff 'must state with particularity the circumstances constituting fraud or mistake,'" meaning that the plaintiff "must allege the 'who, what, where, when, and how' of the misconduct and explain what is false or misleading about the statement made and why it is false." *In re iPhone 4s Consumer Litig.*, 637 F. App'x 414, 415 (9th Cir. 2016) (quoting Rule 9(b)). In addition, Rule 8(a)(2) requires a plaintiff to provide "'a short and plain statement of the claim showing that [she] is entitled to relief,' in order to 'give the defendant[s] fair notice of what the…claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must contain sufficient factual allegations, which, accepted as true, state a claim for relief "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plaintiffs fail to carry their burden under either standard.

### a. Plaintiffs cannot state a claim based on their misrepresentation-by-omission allegations.

Plaintiffs primarily rely on a misrepresentation-by-omission theory that cannot support their claim. *See, e.g.*, Opp. at 38 ("But at the heart of plaintiffs' claims . . . is what plaintiffs did not see: defendant's willful omission that Woodspring would cease to be a low-income senior living community at the first moment it was able."). Plaintiffs allege, for example, that Mission Rock "knew that the property would not continue to be an apartment complex exclusively for fixed-income seniors" and "intentionally omitted this information from plaintiffs in order to induce them to enter into a residential property lease at Woodspring Apartments." SAC ¶ 27; *see also* ¶¶ 3, 14-25, 28-29 (referring vaguely to unidentified "omissions"). Plaintiffs claim Mission

Page 12 - DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

Rock needed to disclose the remaining duration of the (publicly recorded) LIHTC program when each Plaintiff entered their *first* lease and that the failure to do so violated the UTPA.  Not so.

First, Plaintiffs fail to plead this theory with the particularity required by Rule 9(b).  *See Kearns*, 567 F.3d at 1127 (holding misrepresentation through nondisclosure "must be pleaded with particularity under Rule 9(b)" and affirming dismissal where plaintiff's "claims of nondisclosure were couched in general pleadings alleging [defendant's] intent to conceal from customers that CPO vehicles were essentially the same as ordinary used vehicles").  "[T]o plead the circumstances of omission with specificity," a plaintiff "must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information," and the plaintiff must allege these facts for each individual transaction.  *Marolda*, 672 F. Supp. 2d at 1002.  Here, Plaintiffs fall back on their omission allegations precisely because they cannot "provide representative samples of advertisements, offers, or other representations" with particularity.  Under Rule 9(b), Plaintiffs cannot use an omission theory to paper over the deficiencies of their remaining allegations.

Second, Plaintiffs fail to allege that Mission Rock had any duty to disclose information about changes that would not occur until *years* after the expiration of each Plaintiff's first one-year lease.  To state a claim for a misrepresentation through omission, "defendant must be under a duty to disclose."  *Gebrayel v. Transamerica Title Ins. Co.*, 132 Or. App. 271, 281 (1995).  This is true for both fraud and UTPA claims.  *Martell*, 492 F. Supp. 3d at 1142 (dismissing fraud and UTPA claims where plaintiff failed to allege with particularity a misrepresentation or "omission of a material fact when there is an independent duty to disclose").  "A duty to speak or disclose exists when there is a special relationship between a plaintiff and a defendant," but "[a] special relationship does not exist if the parties were merely in an 'arm's-length' commercial or business relationship where they were acting in their own economic interest."  *Id.* at 1143 (citing

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Conway v. Pacific Univ.*, 324 Or. 231, 239-41 (1996); *Moore Excavating, Inc. v. Consol. Supply Co.*, 186 Or. App. 324, 333 (2003)).

Here, Plaintiffs do not—and cannot—allege that they were in a "special relationship" with Mission Rock or that Mission Rock owed them a duty to disclose on any other basis.[5]  To the contrary, the parties engaged in "arm's-length" transactions in which neither owed the other any duty to disclose.  Plaintiffs thus cannot show that when they each entered their first one-year lease, Mission Rock owed a duty to disclose that the LIHTC rent restrictions would expire years later.  The absence of such a duty is fatal to Plaintiffs' "omission" theory.

Third, Plaintiffs' theory also fails because there was no omission. The details of Woodspring Apartments' LIHTC restrictions are a matter of public record, and Plaintiffs thus were on constructive notice of those restrictions and their expiration.  "Constructive notice is notice for which a person is held accountable even though the person did not have actual notice. By law, the person is deemed to have had notice in such case."  *Spady v. Graves*, 307 Or. 483, 488 n.2 (1989).  One form of constructive notice arises from recordation, i.e., "record notice."[6] *Id.* at 488 n.3.  Contrary to Plaintiffs' allegations that these facts were not disclosed, the past and present owners of Woodspring Apartments publicly recorded the Land Use Restrictive Covenant and other LIHTC program documents in Washington County.  Request for Judicial Notice

---

[5] For example, Plaintiffs also fail to allege any "active concealment" by Mission Rock. *Caldwell v. Pop's Homes, Inc.*, 54 Or. App. 104, 113 (1981) ("Where fraud is based on actual concealment, as opposed to simple nondisclosure, a duty to speak is not required.").  Far from actively concealing information about Woodspring Apartments' participation in the LIHTC program, Mission Rock disclosed the termination of the program more than three years before it could affect Plaintiffs' rent.  For decades, the various owners of Woodspring Apartments also publicly recorded LIHTC documents.

[6] Another form of constructive notice is "inquiry notice," which is distinct from "record notice" and results from a duty to inquire.  *Id.* at 488 n.3.  Plaintiffs make the strawman argument that they lacked *inquiry* notice without discussing the *record* notice the recorded LIHTC program documents provided.  Plaintiffs cite *Gorzeman v. Thompson* to argue that the requirements for inquiry notice are not present here, while failing to mention that *Gorzeman* considered inquiry notice only because of a defect in the title record, i.e., the absence of constructive notice via recordation.  162 Or. App. 84, 93-94 (1999).  Where, as here, properly recorded documents provide record notice, inquiry notice is not required.  *Id.*

Page 14 - DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

("RJN"), Exs. 1-4.  The world at large—including Plaintiffs—was therefore on constructive notice of the duration of the program's restrictions.  *See* ORS 93.643 (recordation gives constructive notice "to any person of the existence of the interest").

Plaintiffs' argument that tenants do not routinely conduct a record search before renting an apartment, Opp. at 21-22, is irrelevant to and does not rebut constructive notice nor the fact that, as a matter of law, they are "deemed to have had notice."  *Spady*, 307 Or. at 488 n.2. Further, it is Plaintiffs' burden to plausibly allege that Mission Rock has engaged in a course of fraudulent conduct designed to mislead Plaintiffs and other members of the public into renting units at Woodspring Apartments under false pretenses.  Plaintiffs cannot do so where the supposedly omitted facts regarding Woodspring Apartments' participation in the LIHTC program have been transparently disclosed for decades and are publicly available.

Even more damaging to Plaintiffs' omission theory, however, is that Mission Rock provided ***actual*** notice at least three years before the expiration of the LIHTC program could have affected Plaintiffs' rent.  Plaintiffs' only response to this fact is to assert—without support—that three years' notice was not enough and that Mission Rock needed to provide notice before Plaintiffs entered their first one-year leases.  But under state law, Mission Rock need only give 90 days' notice of a rent increase, ORS 90.320, and Plaintiffs cannot identify any basis for a duty to disclose future changes to the LIHTC program more than three to eight years before they occur.  Accordingly, Plaintiffs' nondisclosure allegations cannot state a claim under the UTPA.

        **b.**        **Plaintiffs cannot state a claim based on documents they never saw or relied upon.**

The SAC cites an alleged online advertisement and a 2015 letter as if they were relevant affirmative representations, but Plaintiffs now concede that they did not see, much less rely on, either document.  Opp. at 35, 38.  Plaintiffs therefore cannot plead a UTPA violation based on these documents with either particularity or plausibility.

Page 15 - DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

Paragraph 11 of the SAC cites an undated online advertisement accurately, stating that "2 Bedroom Senior Apartments" are available at Woodspring Apartments.  In its Motion, Mission Rock pointed out that this advertisement is simultaneously true—Woodspring Apartments continues to provide "housing for older persons"—and irrelevant, because Plaintiffs fail to allege they saw or relied on it.  In response, Plaintiffs admit that it was not "the actual advertisement that plaintiffs viewed before moving into Woodspring" and that they present only as (irrelevant) evidence of the types of (truthful) statements Mission Rock has made.  Opp. at 35.

Paragraph 13 similarly cites accurate but irrelevant statements, this time from a 2015 letter distributed to other tenants before *any* Plaintiff arrived at Woodspring Apartments. Plaintiffs claim this letter provided "that Woodspring Apartments was and would remain a fixed-income property."  SAC ¶ 13.  The letter actually stated, "We are still a low-income property which means the maximum rents are determined by the state, not the management company or the owner (or the property manager!)[.]  You will continue to have incremental increases each year as the state allows, just as it has been in the past."  *Id.*  This letter—which predated the end of rent restrictions by eight-and-a-half years—correctly stated that Woodspring Apartments remained a "low-income property" and informed tenants that there would continue to be "incremental increases each year as the state allows[.]"  *Id.*  And Plaintiffs now admit "it is true that plaintiffs do not allege that they viewed this letter before they moved into Woodspring[.]"  Opp. at 38.  This letter does not include an affirmative misrepresentation on which Plaintiffs could have relied.

The 2015 letter does, however, highlight a fundamental unstated premise on which Plaintiffs' claim rests but which, in fact, shows why their claim fails.  That premise is that Mission Rock had to disclose to every Woodspring Apartments tenant (when the tenant first leased an apartment) that the LIHTC program eventually would end.  Plaintiffs argue that the 2015 letter is "evidence" that "Woodspring was and was going to remain a senior housing complex with rent capped pursuant to government regulations."  Opp. at 38-39.  But that letter

Page 16 - DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

was six years before the program expired and nine years before Plaintiffs' rents fall outside the program. Yet to be "relevant evidence" as Plaintiffs posit, Plaintiffs must be arguing that Mission Rock had to affirmatively identify in the 2015 letter the LIHTC's 2021 expiration date. But if Mission Rock somehow had an affirmative obligation to inform tenants in 2015 of the 2021 LIHTC program expiration, where does the law draw the line? Was the owner of Woodspring Apartments required to make that disclosure in 2014? In 2010, 11 years before expiration? In 2000, 21 years before expiration? The answer is in the LIHTC statute itself— details of participation in the program are publicly recorded, and tenants get a three-year tail during which rent remains capped. Plaintiffs' misrepresentation by omission theory rests on a disclosure obligation that does not exist, makes no sense, and is contrary to existing federal law.

> **c.    Plaintiffs cannot state a claim based on statements that were correct at the time they were stated.**

Next, Plaintiffs allege they relied on one or more signs that referred to Woodspring Apartments' status as a provider of housing for older persons. These allegations also fail to satisfy Plaintiffs' pleading burden under either Rule 9(b) or Rule 8. Under the former, Plaintiffs fail to state the "'who, what, where, when, and how' of the misconduct charged" and explain "what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1102-06. And because Plaintiffs fail to show how the alleged representations were false or material, Plaintiffs fail to plead a plausible UTPA violation based on these signs.

Paragraphs 14 through 25 state that every plaintiff relied on "a sign . . . stating 'seniors-only' and '55 or better' on the Woodspring Apartments premises." SAC ¶ 14-25. Paragraph 3 shows a picture of a sign describing Woodspring Apartments as "A 55 And Better Community." It is unclear whether these allegations refer to the same sign or if the latter is a different sign on which Plaintiffs fail to allege they relied. Plaintiffs' response adds no clarity. Instead, Plaintiffs say the "A 55 And Better Community" sign is "one piece of the entire picture," which they then argue includes the above-referenced online advertisement and 2015 letter that no Plaintiff ever

Page 17 - DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

saw. Plaintiffs' "entire picture" identifies no representation Mission Rock made or Plaintiffs relied on other than the "A 55 And Better Community" or similar signage.

Regardless, Plaintiffs do not and cannot allege that these signs included any statements that were false when made or when Plaintiffs claim to have relied on them. To the contrary, Plaintiffs allege that Woodspring Apartments' status as a community for "fixed-income seniors" did not begin to change until January 1, 2021. Statements that are true at the time they were made are not misrepresentations. Moreover, Plaintiffs do not allege that either sign included any representations that Woodspring Apartments would provide housing for older persons *forever*. Nor do these signs make any representations regarding "fixed-income" housing. This sign is the closest Plaintiffs come to alleging representations with specificity, but they still fail to identify any actual misrepresentations. Instead, Plaintiffs argue they "held" certain "beliefs" based on inferences they apparently drew, *see, e.g.*, Opp. at 14, but Plaintiffs cannot state a claim based on their unreasonable inferences drawn from alleged omissions. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

### d. Plaintiffs cannot state a claim based on unidentified statements from unidentified sources at unidentified times.

Unable to allege specific affirmative misrepresentations, Plaintiffs offer vague and conclusory statements that Mission Rock "through its advertising, on-site signage, and through its agents, specifically represented to [each plaintiff] both in writing and verbally [sic] that Woodspring Apartments had the quality and style of being an apartment complex community exclusively for fixed-income seniors." SAC ¶ 14-25. Despite repeating this sentence verbatim in twelve consecutive paragraphs, Plaintiffs never identify any "specific[]" representations made to any of the Plaintiffs at any time, whether through "advertising," "signage," or "agents." These "formulaic recitation[s] of the elements of a cause of action" cannot satisfy Plaintiffs' burden, regardless of the applicable pleading standard. *Twombly*, 550 U.S. at 555.

Page 18 - DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

First, because Plaintiffs cannot plead the necessary allegations with particularity, they instead argue that Rule 9(b) does not require them to state: (1) which of Mission Rock's agents made the alleged misrepresentations on which all twelve Plaintiffs separately claim to have relied, (2) what those agents said, (3) when this supposedly happened, (4) which signs Plaintiffs relied on, (5) what they understood those signs to say, (6) when Plaintiffs relied on them, (7) which statements on the Woodspring Apartments' website Plaintiffs relied on, (8) or when that reliance occurred. Opp. at 35. According to Plaintiffs, Mission Rock is "already in possession" of this missing information about the conversations, observations, and mental processes of each of the twelve Plaintiffs over the course of five years. *Id.* This, of course, is absurd. Mission Rock cannot know, for example, on what claimed representations and particularly what claimed "omissions" each individual Plaintiff claims to have relied. Even after three tries, Plaintiffs fail to plead the required "'who, what, where, when, and how' of the misconduct" or to explain "what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1102-06.

Second, Plaintiffs cannot even meet Rule 8's plausibility standard. At most, Plaintiffs allege that somebody or something told each of them that Woodspring Apartments was "an apartment complex community exclusively for fixed-income seniors" before they entered their initial one-year leases. Even if that had happened, Plaintiffs' own allegations show that those representations would have been correct at the times they were stated between 2015 and 2020. Plaintiffs do not allege a single representation promising that Woodspring Apartments would remain "an apartment complex community exclusively for fixed-income seniors" forever or for the duration necessary for Plaintiffs to live out their "twilight" years. Plaintiffs attempt to overcome this defect by claiming that they were "led to believe" they would be able "live out their twilight years on a fixed income in a seniors-only community." SAC ¶¶ 14-25. Yet, Plaintiffs fail to allege a single representation regarding the future of Woodspring Apartments, much less any statements promising there would be no changes. Plaintiffs cannot simply allege

Page 19 - DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

that they were "led to believe" something without identifying the basis for that belief. *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 694 (9th Cir. 2009) ("information and belief" allegations unsupported by facts providing the basis for belief are implausible under *Twombly* and *Iqbal).*

Nor could Plaintiffs plausibly allege any such representations occurred, given that the leases they signed (and renewed) expressly contemplate periodic rent increases and rentals to students and families with children under 18. Mot., Ex. 1 at 4, 13. This is Plaintiffs' third complaint. If Plaintiffs could allege any affirmative representation that Woodspring Apartments would always be "an apartment complex community exclusively for fixed-income seniors"—the representation on which their theory depends—they were obligated to have done so by now.

### 3. Plaintiffs do not state a claim under any of the cited UTPA provisions.

Plaintiffs' failure to identify any affirmative misrepresentations or actionable omissions defeats each of the five UTPA counts they allege.

### a. Plaintiffs fail to state a claim under ORS 646.608(1)(b).

To prevail on their claim under ORS 646.608(1)(b), Plaintiffs must show Mission Rock caused a "likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of real estate, goods or services." Plaintiffs allege Mission Rock violated this provision because Woodspring Apartments "was not in fact a certified complex for fixed-income seniors." SAC ¶ 31. No such "certification" exists. Regardless, from the inception of each Plaintiff's first lease to the present, Woodspring Apartments has provided "housing for older persons" in accordance with ORS 659A.421 and has been subject to the LIHTC program's rent restrictions. Mot. at 24-25. Plaintiffs' allegations also show Mission Rock provided more than three years' notice that rent restrictions would end, thus preventing any potential confusion about the program's end long before it could affect any future transactions.

In response, Plaintiffs first limit the claim under ORS 646.608(1)(b) to "certification" under the LIHTC program—thus conceding they state no claim relating to "senior housing" under this provision. Plaintiffs explain: "In this count plaintiffs are referring to the likelihood of

Page 20 - DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

4875-9013-8382v.12 0113870-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

confusion or misunderstanding caused by defendant's failure to disclose that Woodspring was

not going to stay affordable as a result of the income and occupancy restrictions certified by the

state when they moved into Woodspring." Opp. at 40. Yet Plaintiffs admit they knew

Woodspring participated in "some form of government certified program." *Id.* This concession

is fatal. Plaintiffs' sole confusion is that they did not understand the details of the actual, known

certification, but Mission Rock did not cause that confusion. Plaintiffs once again rely on their

own inference "because they were not told otherwise," Opp. at 40, but no authority supports

Plaintiffs' novel theory that truthful statements violate this UTPA provision if Plaintiffs silently

rely on those statements to reach unreasonable and unsupported assumptions. Indeed, Plaintiffs

cite only one case, without even attempting to explain its relevance. *See* Opp. at 40 (citing

*Gordon v. Rosenblum*, 361 Or. 352, 369 (2017) (holding ORS 646.608(1)(b) applied where

defendant caused confusion as to third parties' real estate, goods, and services rather than its

own)). Plaintiffs do not allege Mission Rock made any misrepresentations regarding

Woodspring Apartments' "certification," and the Court should dismiss Plaintiffs' claim under

ORS 646.608(1)(b).

> **b.    Plaintiffs fail to state a claim under ORS 646.608(1)(e).**

Plaintiffs' claim under ORS 646.608(1)(e) fails for similar reasons. That UTPA

provision prohibits a person from "[r]epresent[ing] that real estate, goods or services have

sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the

real estate, goods or services do not have." ORS 646.608(1)(e). As shown above, to the extent

Plaintiffs actually identify any representations regarding the characteristics of the Woodspring

Apartments, those representations were true. In response, Plaintiffs offer no explanation how

these accurate (and largely irrelevant) alleged statements could state a claim under ORS

646.608(1)(e). Instead, Plaintiffs assert that this case is "comparable" to *Caldwell v. Pop's

Homes, Inc.*, 54 Or. App. 104, 106 (1981)—based solely on a one-sentence description of

Page 21 - DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Caldwell* in a later case.  Opp. at 41 (citing *State ex rel. Rosenblum v. Johnson & Johnson,* 275 Or. App. 23, 36 (2015)).

This case is not comparable to *Caldwell*.  There, the plaintiff requested to purchase "a used mobile home set up for occupancy in a residential park" from the defendant mobile home consignment dealer.  *Caldwell*, 54 Or. App. at 107.  The plaintiff selected one of the options the defendant offered and asked why it was for sale, to which the defendant responded that "it was because [the seller] was looking for a larger mobile home."  *Id.* at 107-08.  In reality, the defendant's records showed that the home was for sale only because the mobile home park had been sold and the home needed to be relocated quickly—which plaintiff discovered only after he had purchased the mobile home and was forced to hastily put it in storage at substantial cost.  *Id.* at 108.  The court there held the plaintiff sufficiently alleged both fraud and UTPA claims where there was evidence "that defendant actively concealed the reason for the sale of the mobile home and, thus, the fact that the park was being sold," and misrepresented the value and characteristics of the supposedly "set up" mobile home the plaintiff purchased.  *Id.* at 109-10, 113.

There are no comparable allegations here.  As noted above, there was no "active concealment" by Mission Rock—the alleged representations Plaintiffs cite were accurate, and Plaintiffs received exactly what they were offered:  one-year leases for "senior apartments" at below-market rates.  By citing *Caldwell* as the closest support for their claims, Plaintiffs show just how far their allegations are from a viable UTPA claim.

### c.     Plaintiffs fail to state a claim under ORS 646.608(1)(g).

Plaintiffs' third count is based on an inapplicable statute.  ORS 646.608(1)(g) applies where the defendant falsely "[r]epresents that real estate, goods or services are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model."  As Mission Rock explained, this provision prohibits misrepresentations regarding either objective standards or product design.  Mot. at 26-27.  Plaintiffs erroneously interpret "style" to mean "quality" and treat this provision as if it were identical to ORS 646.608(1)(e).

Page 22 - DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

Plaintiffs do not identify how rent and age restrictions are "a particular style," and they do not deny that this claim adds nothing to their ORS 646.608(1)(e) count. Rather, Plaintiffs cite *Andriesian v. Cosmetic Dermatology, Inc.*, for the proposition that if a valid ORS 646.608(1)(e) is stated, then the court should not dismiss a "duplicative" claim under this provision. 2015 WL 1638729, at *8 (D. Or. Mar. 3, 2015), *report and recommendation adopted,* 2015 WL 1925944 (D. Or. Apr. 28, 2015). Plaintiffs' argument concedes both that this claim is redundant and that it should fail if Plaintiffs' ORS 646.608(1)(e) claim fails. Plaintiffs' reliance on *Andriesian* is also misplaced. The plaintiff there alleged that the defendant falsely represented that its product was of an objective quality, distinguishing the claim from ORS 646.608(1)(e) and bringing it within the scope of ORS 646.608(1)(g). Plaintiffs make no attempt to make similar allegations here. For each of these reasons, the Court should dismiss this claim.

### d.    Plaintiffs fail to state a claim under ORS 646.608(1)(i).

Plaintiffs' fourth claim is for false advertising under ORS 646.608(1)(i), which prohibits "[a]dvertis[ing] real estate, goods or services with intent not to provide the real estate, goods or services as advertised, or with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity." Mission Rock pointed out that Plaintiffs identify only a single advertisement for "senior apartments," which was both accurate and never seen by Plaintiffs (and thus could not have caused an ascertainable loss). Mot. at 27-28. Further, Mission Rock provided the low-income senior apartments Plaintiffs allege were advertised, and Plaintiffs fail to identify any advertisements promising that Woodspring Apartments would remain rent- and age-restricted forever. Instead, Plaintiffs argue this claim rests on "the failure to include the pending transformation of Woodspring [effective in 2024] when it promoted Woodspring to plaintiffs before they decided to move in." Opp. at 42. Plaintiffs also contend that Mission Rock should have advertised Woodspring Apartments differently to disclose potential future changes years before they occurred. *Id.* But by its plain language, ORS 646.608(1)(i) requires an affirmative advertisement of something with the intent not to provide

Page 23 - DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

it.  Plaintiffs cannot state a claim under ORS 646.608(1)(i) by arguing Mission Rock did *not* advertise (i.e., it omitted) something it did *not* intend to provide (i.e., "fixed-income senior housing" in perpetuity).  Plaintiffs unquestionably received what Mission Rock allegedly advertised.  ORS 646.608(1)(i) prohibits *false* advertising; it does not prohibit truthful advertising that lacks Plaintiffs' endorsement.[7]

### e.    Plaintiffs fail to state a claim under ORS 646.608(1)(t).

Plaintiffs' final claim cites ORS 646.608(1)(t), which applies where "[c]oncurrent with tender or delivery of any real estate, goods or services [the defendant] fails to disclose any known material defect or material nonconformity."  At the time of delivery under every lease, Mission Rock has provided Woodspring Apartments units to Plaintiffs at agreed-upon below-market rates at a property that complies with all requirements of "housing for older persons."  There have never been any defects or nonconformities to disclose concurrent with the delivery of the leases between Mission Rock and Plaintiffs.  Further, Mission Rock provided notice of future changes at least *three years* before the possible delivery of any units affected by those changes.

In response, Plaintiffs proclaim that Mission Rock "pushes for an impermissibly limited reading of the statutory text," Opp. at 42, but they do not explain how that is so or what the statutory text means, if not what Mission Rock says (relying on plain meaning).  Instead of offering an alternative interpretation or any meaningful statutory analysis, Plaintiffs once again turn to *Caldwell* to support their theory.  And once again *Caldwell* favors Mission Rock's position, not Plaintiffs'.  In *Caldwell*, the plaintiff paid for a mobile home permanently set up in a mobile home park, but the defendant delivered a mobile home that immediately needed to be relocated and stored, and defendant failed to disclose that fact.  54 Or. App. at 107-08.  Here,

---

[7] Plaintiffs also quibble with the definition of "advertising," but they fail to address the larger problem that even if every alleged representation could be deemed "advertising," Plaintiffs still fail to show that any of those representations were false.  *See* Opp. at 42.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

every transaction between Plaintiffs and Mission Rock has contained the (one year) terms the parties agreed to, and Plaintiffs complain only of (disclosed) future changes.[8]

Plaintiffs cannot state a claim under ORS 646.608(1)(t) or any other provision of the UTPA under any pleading standard, and this Court thus should dismiss.

### 4.    Plaintiffs fail to adequately allege an ascertainable loss.

Plaintiffs' UTPA claim also fails because they do not allege any "ascertainable loss" caused by Mission Rock's alleged conduct. This "loss must be objectively verifiable, much as economic damages in civil actions must be," and "must be specifically of 'money or property, real or personal.'" *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 117 (2015) (quoting ORS 646.638(1)). The "ascertainable loss must be 'a result of' the unlawful trade practice. That is, the unlawful trade practice must have caused the ascertainable loss that the plaintiff suffered." *Id.* (quoting ORS 646.638(1)).

Plaintiffs fail to identify any objectively verifiable losses of money or property that they have suffered as a result of the alleged representations. Plaintiffs entered a series of one-year leases, allegedly in reliance on representations that Woodspring Apartments provided rent-restricted "senior apartments." And, for the entire duration of each lease, Plaintiffs received a rent-restricted senior apartment. That is, Plaintiffs paid an agreed-upon below-market rate for a unit in a property that provides "housing for older persons"—just as Mission Rock allegedly represented. Plaintiffs have received apartments with the characteristics they sought from the day they entered their first lease, through each subsequent lease, to the present. Plaintiffs' claims are based on anticipated future changes that have not occurred and have not caused any present

---

[8] *Andriesian*, which Plaintiffs also cite, also undermines this claim. There the court dismissed a claim under ORS 646.608(1)(t) "based on a misrepresentation contrary to the ingredient list," rather than a failure to disclose an actual defect in a product, "as in the sale of used goods, especially cars." 2015 WL 1638729, at *9. In other words, *Andresian* confirms that ORS 646.608(1)(t) applies to materially defective products, not where a product simply lacks qualities it was allegedly represented to have. *Cf.* ORS 646.608(1)(e) (prohibiting "[r]epresent[ing] that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have.").

Page 25 - DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

losses to Plaintiffs. *See Paul v. Providence Health Sys.-Oregon*, 351 Or. 587, 603 (2012) (holding plaintiffs' UTPA claim failed because they could only show losses "they incurred to prevent a *future* harm," and not any "present harm to plaintiffs' economic interests").[9] In short, entering leases in which Plaintiffs received what they paid for did not cause them to suffer ascertainable losses.

Unable to allege ascertainable loss caused by Mission Rock's alleged conduct, Plaintiffs attempt to shoehorn their claims into theories of ascertainable loss that have no application here.

> **a.    Plaintiffs do not allege ascertainable loss under a "refund of the purchase price" theory.**

Plaintiffs first allege that they suffered "refund of the purchase price ascertainable loss" because "but for defendant's conduct . . . plaintiffs would not have chosen to move into Woodspring Apartments and thus would not have paid for their residential property lease *at Woodspring Apartments*[.]"  SAC ¶¶ 31-35 (emphasis added).  This theory applies "when the claimed loss is the purchase price" and the purchaser is "seeking a refund based on having purchased a product believing it had a represented characteristic that it did not have." *Pearson*, 358 Or. at 126.  The link between the violation (the lack of the represented quality) and the measure of loss (the full purchase price of the product) is reliance.  "Causation is logically established if a purchaser shows that, without the misrepresentation, the purchaser would not have bought the product and thus should be entitled to a refund." *Id.*  In other words, a plaintiff must be seeking a refund (or recission) based on the theory that he would not have spent any of the purchase price but for the alleged misrepresentation.  Plaintiffs fail to sufficiently allege this theory for several reasons.

---

[9] In light of *Paul*, Plaintiffs concede that they are not seeking future "increased rental or moving costs as recoverable damages, or asserting that these costs are ascertainable losses in themselves."  Opp. at 48-49.  Plaintiffs say they "reference these potential costs as one way to show that what they received was worth less than what was represented by defendant."  Opp. at 49.  But Plaintiffs do not attempt to explain how the value of a one-year lease can differ based on what happens after that lease expires.

Page 26 - DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

First, as shown above, each Plaintiffs' lease reflected the age and rent restrictions Plaintiffs sought and therefore did not lack any represented characteristics. Plaintiffs received what they paid for in each of their transactions with Mission Rock, they enjoyed the full benefit of Mission Rock's performance of all past leases, and they are not entitled to a refund of years' worth of past rents for services they have already received.[10]

Second, Plaintiffs admit they are not actually entitled to a refund of the purchase price and suggest they may seek some lesser measure of damages. *See* Opp. at 54-55 (denying that Plaintiffs seek the purchase price as a measure of damages and stating Plaintiffs may attempt to "show that they suffered a viable 'refund' loss in some amount"). Plaintiffs appear to confuse a diminished value theory (in which Plaintiffs allege they overpaid for the value they received) with a refund theory (in which Plaintiffs allege they are entitled to damages in the amount of the full purchase price because they otherwise would not have spent that money). This "refund" theory thus fails because Plaintiffs acknowledge they are not entitled to a refund and, at most, could only seek to recover a smaller sum reflecting the allegedly diminished value received.[11]

Third, Plaintiffs erroneously contend that they have shown an ascertainable loss simply by alleging they relied on the presence of a supposedly missing characteristic. Opp. at 53. But reliance alone does not suffice. Reliance establishes the *link* between the alleged violation and the loss of the purchase price, but Plaintiffs still need to show that the purchase price is the appropriate measure of their ascertainable loss. *Pearson*, 358 Or. at 126 ("[W]hen the claimed loss is the purchase price, and when that loss must be 'as a result' of a misrepresentation, reliance is what 'connects the dots' to provide the key causal link between the misrepresentation and the loss."). Here, Plaintiffs fail to allege they have suffered an economic loss in the amount

---

[10] And nearly all of the Plaintiffs have entered new leases after the disclosure on January 1, 2021. As Mission Rock has explained, Plaintiffs cannot allege a "refund of the purchase price" theory with respect to these transactions because Plaintiffs entered them after the full disclosure of the allegedly omitted information. Mot. at 30.

[11] As discussed below, Plaintiffs also fail to adequately plead a diminished value theory.

Page 27 - DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

4875-9013-8382v.12 0113870-000002

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

of the rent they have paid.  For example, Plaintiffs do not allege that, but for Mission Rock's representations, they would not have rented *any apartment*; they allege only that they "would not have paid for their residential property lease *at Woodspring Apartments*[.]"  SAC ¶¶ 31-35 (emphasis added).  In other words, Plaintiffs cannot claim that they "would not have bought the product"—a one-year lease—they can only allege that they would have bought a different version of the product—a one-year lease *not at Woodspring Apartments*.[12]  Plaintiffs cannot state a claim under the purchase price theory without alleging they are entitled to a refund of the purchase price.  The "refund of the purchase price theory" therefore does not apply here.

### b.     Plaintiffs do not sufficiently allege "diminished value" ascertainable loss.

Plaintiffs also allege a "diminished value" theory based on the notion that Plaintiffs' past and present leases are retroactively made less valuable if Plaintiffs face increased costs in the future.  This is not a valid theory.  "The premise of [the] diminished value theory" is that if a product is misrepresented to have a particular characteristic with "economic value," then plaintiffs suffer "an economic loss at the moment of purchase because they bought a product that lacked that characteristic."  *Pearson*, 358 Or. at 119.  "[U]nder a diminished value theory, a purchaser can suffer an economic loss only in the form of having paid too much at the time of purchase."  *Id.* at 123.  There must be a price difference between the good with a particular feature and the same good without it.  *Id.* at 122.  "For a diminished value theory, the fact that the product costs the same with or without a represented characteristic defeats a logical inference that the product without the feature is worth less."  *Id.* at 122.[13]

---

[12] This is not "a new optional-consumer-goods-only limitation" as Plaintiffs contend.  Opp. at 55. As every "refund of the purchase price" case Plaintiffs cite shows, plaintiffs asserting this theory must allege that they have suffered an ascertainable loss in the amount of the purchase price and seek a refund (or statutory damages where they exceed the price of the product) or recission.  It is simple to plead and prove that a plaintiff would not have purchased a beverage but for a misrepresentation; it is more challenging to show that a plaintiff would not have purchased (or rented) a dwelling—especially where Plaintiffs fail to even make that essential allegation.

[13] Plaintiffs misleadingly claim these principles only apply to transactions involving consumable goods.  Opp. at 51.  This is incorrect.  The analysis in *Pearson* applies where the "product is one

Page 28 - DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

Here, Plaintiffs do not allege that their past leases failed to contain the age and rent restrictions they seek; rather, they allege that Mission Rock violated the UTPA by not disclosing sooner that *future* leases might not contain those same terms. In each transaction, Plaintiffs received the terms—and, as a result, the value—they expected and paid for. That those terms may change in future leases cannot diminish the value that Plaintiffs have already received in their past leases, and Plaintiffs do not allege any facts to the contrary. Because Plaintiffs fail to allege facts showing that they "paid too much at the time" they entered any of their leases with Mission Rock, they cannot show they have "suffer[ed] an economic loss" under this theory. *Pearson*, 358 Or. at 123.

Attempting to evade this fatal flaw in their theory, Plaintiffs claim that Mission Rock "falsely promised to them . . . a long-term tenancy in a senior community that they can afford on their fixed incomes[.]" Opp. at 49 (emphasis added). Plaintiffs did not, however, enter a "long-term tenancy," and no allegations in the SAC support this supposed promise. Conflating a series of one-year leases into a "long-term tenancy" also does nothing to establish that Plaintiffs have incurred an ascertainable loss since they still do not allege that they have overpaid for anything.

Plaintiffs cite multiple cases for the proposition that ascertainable losses may sometimes be inferred, but they fail to allege any factual basis on which to base such an inference here. *See*

---

that is consumed, *rather than sold on a secondary market*." *Pearson¸* 358 Or. at 123 (emphasis added). This is because even if the missing characteristic does not affect the initial sale price, it might still affect the product's *resale* price. *Id.* The leases here are not "possessory property with ongoing resale value," so *Pearson* applies with full force here. *Id.* at 123 n.20.

This distinction also helps to explain the result in *Simonsen v. Sandy River Auto, LLC*, 290 Or. App. 80 (2018), on which Plaintiffs rely, Opp. at 47. There, the court held that the plaintiff had suffered an ascertainable loss where he purchased a car for its actual market value based on misrepresentations that the car was worth *more* than he was paying for it. *Id.* at 92. By depriving the plaintiff of this "advantageous bargain," *id.*,—an asset with a value higher than plaintiff had paid for it—the defendant caused an ascertainable loss to the plaintiffs' "possessory property with ongoing resale value," *Pearson*, 358 Or. at 123 n.20. Here, Plaintiffs did not purchase an asset, and they do not allege their "purchase price" was less than the actual value of the asset, i.e., that they negotiated an "advantageous bargain." Plaintiffs received exactly what they bargained for: one-year leases containing all agreed-upon terms at agreed-upon prices.

Page 29 - DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

Opp. at 45-47 (citing *Scott v. Western Intern. Surplus Sales, Inc.*, 267 Or. 512 (1973); *Weigel v. Ron Tonkin Chevrolet Co.*, 298 Or. 127 (1984)).  Plaintiffs do not allege, for example, that the price of their *past* rent payments would have differed if the rent restrictions extended as far into the future as they expected.  Nor do they allege that they could have been paying the same or less rent for an apartment at a different property with the long-term rent and age restrictions they seek.  Plaintiffs also offer no allegations establishing that "senior apartments" have greater economic worth than age-inclusive apartments.  Plaintiffs have already amended their complaint twice, yet they still cannot allege a viable theory of ascertainable loss because they simply have not suffered any losses.  Accordingly, the Court should dismiss Plaintiffs' claims.

### III.    CONCLUSION

For the foregoing reasons and the reasons stated in Mission Rocks' Motion, the Court should dismiss Plaintiffs' Second Amended Complaint with prejudice.

DATED this 7th day of March, 2022.

DAVIS WRIGHT TREMAINE LLP

By  s/ Kevin H. Kono
**Kevin H. Kono**, OSB #023528
kevinkono@dwt.com
**Chris Swift**, OSB #154291
chrisswift@dwt.com
Telephone:  (503) 241-2300

**Frederick B. Burnside**, OSB #096617
fredburnside@dwt.com
Telephone:  (206) 757-8016

Attorneys for Defendant
Mission Rock Residential LLC

DAVIS WRIGHT TREMAINE LLP
4875-9013-8382v.12 0113870-000002          1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax